# **EXHIBIT 14**

# SETTLEMENT AGREEMENT

SETTLEMENT AGREEMENT (the "Agreement"), dated as of May 10, 2004, by and among Enron Corp. ("ENE"), as debtor and debtor in possession, Enron North America Corp. ("ENA"), as debtor and debtor in possession, Enron Power Marketing, Inc. ("EPMI"), as debtor and debtor in possession, Sequoia Financial Assets, LLC ("Sequoia"), Cheyenne Finance S.a.r.l. ("Cheyenne" and, together with ENE, ENA, EPMI and Sequoia, the "Enron Parties"), Cherokee Finance V.O.F. i.l. ("Cherokee"), Enron Finance Partners, LLC ("EFP"), JPMorgan Chase Bank, formerly known as The Chase Manhattan Bank ("JPMC"), as (a) Administrative Agent and Collateral Agent pursuant to that certain (i) Credit Agreement, dated as of May 28, 1999 (the "Credit Agreement"), by and among Choctaw Investors B.V. ("Choctaw"), the Lenders Parties thereto (collectively, the "Choctaw Lenders"), JPMC and JPMorgan Securities, Inc., as successor to Chase Securities, Inc. ("JPMS"), and (ii) Funding Agreement, dated as of November 28, 2000 (the "Funding Agreement"), by and among Zephyrus Investments, LLC ("Zephyrus"), the Lenders Party thereto (collectively, the "Zephyrus Lenders"), JPMC, Bank of America, N.A. ("BofA"), BNP Paribas ("BNP") and Fleet National Bank, as co-agents, and JPMS, (b) Collateral Agent pursuant to that certain Amended and Restated Security Agreement (the "Security Agreement"), dated as of December 22, 2000, by and among Sequoia, Cherokee, EFP and JPMC and (c) attorney-in-fact for Sequoia pursuant to the Security Agreement, and each of the undersigned (1) Choctaw Lenders (individually a "Choctaw Party" and collectively, the "Choctaw Parties") and (2) Zephyrus Lenders (individually a "Zephyrus Party" and collectively, the "Zephyrus Parties").

## RECITALS

A. Pursuant to a series of transactions (collectively, the "Choctaw Transactions") and the documents entered into in connection therewith, a schedule of which is set forth on Exhibit "A" annexed hereto (collectively, the "Choctaw Documents"), (1) the Choctaw Lenders made loans to Choctaw pursuant to the Credit Agreement (the "Choctaw Indebtedness"), (2) Choctaw purchased all of the preferred equity interests of Cherokee (the "Cherokee Preferred Interests"), (3) JPMC and the Choctaw Lenders assert that they hold a security interest in all of Choctaw's assets, including the Cherokee Preferred Interests, (4) Cheyenne acquired all of the common equity interests of Cherokee, (5) Cherokee purchased, among other investments, senior secured notes issued by Sequoia (the "Sequoia/Cherokee Notes") and (6) in order to secure Sequoia's obligations to Cherokee under the Sequoia/Cherokee Notes, Sequoia granted to JPMC, as collateral agent for the benefit of Cherokee, a lien upon and security interest in, among other things, certain receivables, commercial paper and other assets owned by Sequoia.

B. Pursuant to a series of transactions (collectively, the "Zephyrus Transactions") and the documents entered into in connection therewith, a schedule of which is set forth on Exhibit "B" annexed hereto (collectively, the "Zephyrus Documents"), (1) the Zephyrus Lenders made loans to Zephyrus pursuant to the Funding Agreement (the "Zephyrus Funding"), (2) Zephyrus purchased all of the Class C Membership interests in EFP (the "EFP Preferred Interests"), (3) JPMC and the Zephyrus Lenders assert that they hold a security interest in all of Zephyrus' assets, including the EFP Preferred Interests, (4) Enron Capital Investments Corp ("ECIC") made a capital contribution as a Class B member of EFP by assigning to EFP a

promissory note of ENE, payable to ECIC, in the original principal amount of One Hundred Twenty-Five Million Dollars ($125,000,000.00) (the "ENE/EFP Note"), (5) EFP purchased, among other investments, senior secured notes issued by Sequoia (the "Sequoia/EFP Notes"), and (6) in order to secure Sequoia's obligations to EFP under the Sequoia/EFP Notes, Sequoia granted to JPMC, as collateral agent for the benefit of EFP, a lien upon and security interest in, among other things, certain receivables, commercial paper and other assets owned by Sequoia, which security interest ranks pari passu with the security interest granted to JPMC as collateral agent for the benefit of Cherokee.

        C.     Pursuant to that certain Sale and Servicing Agreement, dated May 28, 1999, as amended and restated, Sequoia agreed to purchase certain indebtedness issued by ENA to ENE, such indebtedness evidenced by an Intercompany Note, dated May 28, 1999 (the "ENA/Sequoia Note") and ENE guaranteed the payment of certain indebtedness issued by ENA to ENE and simultaneously purchased by Sequoia thereunder (the "ENE/Sequoia Guaranty").

        D.     On or about November 1, 2001, (1) ENA executed and delivered a promissory note to Cherokee (the "ENA/Cherokee Note") in the original principal amount of Eight Hundred Twenty Million Dollars ($820,000,000.00), (2) by confirmation letter, ENE guaranteed the payment and performance of ENA pursuant to the ENA/Cherokee Note (the "ENE/Cherokee Guaranty"), and (3) ENA executed and delivered a promissory note to EFP (the "ENA/EFP Note") in the original principal amount of Five Hundred Eight Million Dollars ($508,000,000.00). JPMC and the Zephyrus Parties assert, and ENE disputes, that ENE issued, or was required to issue, a guarantee in connection with the ENA/EFP Note (the "ENE/EFP Guaranty", and, together with the ENE/Cherokee Guaranty, the "ENE Guaranties").

        E.     Commencing on December 2, 2001 (the "Petition Date"), and periodically thereafter, ENE and certain of its related entities (collectively, the "Debtors"), including ENA and EPMI, each filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

        F.     As of the date hereof, the Debtors continue to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.

        G.     On the Petition Date, and in connection with the Choctaw Transactions and the Zephyrus Transactions, (1) ENE maintained a receivable in the amount of One Billion Three Hundred Ten Million Dollars ($1,310,000,000.00) from Sequoia (the "Sequoia/ENE Receivable"), (2) Sequoia held the ENA/Sequoia Note with an outstanding principal balance of Six Hundred Seventy-Six Million Dollars ($676,000,000.00), (3) ENE had guaranteed the obligation of ENA to Sequoia in accordance with the ENA/Sequoia Note pursuant to the ENE/Sequoia Guaranty, and (4) Sequoia maintained a receivable in the amount of One Billion Three Hundred Ten Million Dollars ($1,310,000,000.00) from ENA (the "ENA/Sequoia Receivable").

        H.     On the Petition Date, and in connection with the Choctaw Transactions, among other assets, (1) Cherokee held Sequoia/Cherokee Notes in the original principal amount

of Six Hundred Eleven Million Dollars ($611,000,000.00), (2) Cherokee held the ENA/Cherokee Note and (3) Cherokee held and was the beneficiary of the ENE/Cherokee Guaranty.

    I.  On the Petition Date, and in connection with the Zephyrus Transactions, among other assets, (1) EFP held Sequoia/EFP Notes in the original principal amount of Six Million Dollars ($6,000,000.00), (2) EFP held the ENA/EFP Note, (3) EFP held the ENE/EFP Note and (4) JPMC and the Zephyrus Parties assert, and ENE disputes, that EFP held and was the beneficiary of the ENE/EFP Guaranty.

    J.  On December 11, 2001, JPMC filed a complaint and commenced an action against certain of the Debtors, styled <u>JPMorgan Chase Bank, as Administrative Agent</u> v. <u>Enron Corp., Enron North America Corp. and Enron Power Marketing, Inc.</u>, Adversary Proceeding No. 01-3637 (AJG) (the "JPMC Action"), in the Bankruptcy Court seeking, among other relief, a turnover of property, an accounting and certain injunctive relief with respect to the Choctaw Transactions and the Zephyrus Transactions.

    K.  On October 29, 2002, ENE filed a complaint and commenced an action against BofA, styled <u>Enron Corp.</u> v. <u>Bank of America, N.A.</u>, Adversary Proceeding No. 02-3436 (AJG) (the "BofA Action"), in the Bankruptcy Court seeking, among other relief, the turnover of ENE property allegedly improperly seized by BofA, together with any interest accrued from and after the date of seizure.

    L.  By motion, dated May 9, 2003 (the "Intervention Motion"), JPMC sought to intervene as a plaintiff in the BofA Action on the basis that, among other things, certain of the proceeds seized by BofA were proceeds of receivables associated with the Choctaw Transactions and/or the Zephyrus Transactions.

    M.  Pursuant to that certain Stipulation and Order Resolving Motion of JPMorgan Chase Bank to Intervene in Adversary Proceeding, dated August 7, 2003 (the "BofA Action Stipulation"), (1) the Intervention Motion was withdrawn without prejudice and (2) ENE agreed that the first Fifteen Million Dollars ($15,000,000.00) that ENE recovers in connection with the BofA Action or a compromise and settlement thereof shall be retained by ENE and disbursed (i) upon entry of a final judgment or final order in the JPMC Action or (ii) if the JPMC Action is dismissed without the entry of such final order, upon the agreement of the Debtors and the statutory committee of unsecured creditors appointed in the Debtors' chapter 11 cases or as otherwise ordered by the Bankruptcy Court.

    N.  On December 1, 2003, ENE filed a complaint and commenced an action, styled <u>Enron Corp.</u> v. <u>Cherokee Finance V.O.F., et al.</u>, Adversary Proceeding No. 03-93602 (AJG) (the "ENE Guaranty Action"), in the Bankruptcy Court, seeking, among other relief, the avoidance of the ENE Guaranties in accordance with section 548(a) of the Bankruptcy Code.

    O.  The Debtors have filed that certain Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated January 9, 2004 (the "Plan"). By order, dated January 9, 2004, the Bankruptcy Court approved the adequacy of the information contained in the disclosure statement (the "Disclosure Statement") accompanying the Plan and authorized the solicitation of acceptances and rejections with respect

thereto. The hearing to consider confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code is scheduled to commence on June 3, 2004.

P.  By order, dated August 1, 2002 (the "Bar Date Order"), the Bankruptcy Court established a protocol for the setting of times and dates by which all proofs of claim against the Debtors and their chapter 11 estates must be filed with the Bankruptcy Court (the "Bar Date"), including, without limitation, the establishment of 5:00 p.m. (Eastern Time) on October 15, 2002 as the Bar Date for the initially-filed Debtors.

Q.  Prior to the appropriate Bar Date, JPMC, on behalf of itself and the Choctaw Lenders and the Zephyrus Lenders, asserts that it exercised certain rights to appoint persons to the respective boards of Cherokee and EFP.

R.  JPMC, certain of the Choctaw Parties, certain of the Zephyrus Parties, Cherokee and EFP have filed proofs of claim (each a "Claim" and collectively, the "Claims") in connection with the Choctaw Transactions and the Zephyrus Transactions as follows:

| Claim No. | Claimant | Debtor | Amount |
|---|---|---|---|
| 11125 | JPMC, as Collateral Agent on behalf of Sequoia | ENA | $1,986,020,410.00 plus |
| 11126 | EFP | ENE | $1,339,140,987.00 plus |
| 11127 | EFP | ENA | $508,000,000.00 plus |
| 11128 | EFP | Smith Street Land Company | Unliquidated |
| 11129 | JPMC, as Collateral Agent on behalf of Zephyrus | ENE | Unliquidated |
| 11130 | JPMC, as Collateral Agent on behalf of Zephyrus | Smith Street Land Company | Unliquidated |
| 11131 | JPMC, as Administrative Agent | ENE | $481,725,000.00 plus |
| 11132 | Cherokee | ENE | $1,480,726,659.00 plus |
| 11133 | Cherokee | ENA | $820,000,000.00 plus |

| Claim No. | Claimant | Debtor | Amount |
|---|---|---|---|
| 11134 | JPMC, as Collateral Agent on behalf of Choctaw | ENE | Unliquidated |
| 11135 | JPMC, as Administrative Agent | ENE | $485,000,000.00 plus |
| 11156 | JPMC, as Collateral Agent on behalf of Sequoia | ENE | $1,988,698,523.00 plus |
| 13295 | ABN AMRO | ENE and ENA | Unliquidated |
| 13849 | BNP | ENA | $45,348,687.50 plus |
| 13856 | BNP | ENE | $45,348,687.50 plus |
| 14089 | ABN AMRO | ENE and ENA | Unliquidated |
| 18517 | BNP | ENA | $50,599.984.44 plus |
| 18518 | BNP | ENE | $50,599.984.44 plus |

S.     In March 2003, Choctaw notified JPMC that, pursuant to the Choctaw Documents, Choctaw transferred the claim in respect of the Cherokee Preferred Interests to JPMC as agent for the Choctaw Lenders.  In March 2004, pursuant to the Zephyrus Documents, Zephyrus transferred the EFP Preferred Interests to JPMC as agent for the Zephyrus Lenders.

T.     The parties hereto agree that the Choctaw Transactions, the Zephyrus Transactions, the JPMC Action, the ENE Guarantee Action, the BofA Action Stipulation and the Claims raise complex legal and factual issues.

U.     The Debtors have concluded that, because of the substantial expense of litigating the issues associated with the Choctaw Transactions, the Zephyrus Transactions, the JPMC Action, the ENE Guaranty Action, the BofA Action Stipulation and the Claims, the length of time necessary to resolve the issues presented therein, the inconvenience involved and the concomitant disruption to their efforts to consummate the transactions contemplated by the Plan, the settlement provided herein is fair and reasonable, and in the best interests of the Debtors and the Debtors' creditors.

V.     JPMC, the Choctaw Parties and the Zephyrus Parties, respectively, have conducted a thorough study and investigation of the law and facts relating to the Claims, the

Choctaw Transactions, the Zephyrus Transactions, the JPMC Action, the BofA Action Stipulation and the ENE Guaranty Action and have concluded that the compromise and settlement provided herein is fair and reasonable and in the best interests of JPMC, the Choctaw Parties and the Zephyrus Parties.

   W. As used in this Agreement, and unless otherwise explicitly stated, "JPMC" refers to JPMorgan Chase Bank solely in its capacity as agent with respect to the Credit Agreement, the Funding Agreement, and the Security Agreement and attorney-in-fact for Sequoia pursuant to the Security Agreement, and shall in no way be deemed to refer to JPMorgan Chase Bank in its individual capacity as a Choctaw Lender or a Zephyrus Lender.

   NOW, THEREFORE, IT IS HEREBY AGREED, by and among the undersigned, as follows:

**AGREEMENT**

ARTICLE I

RECITALS/DEFINITIONS

 Section 1.1 <u>Recitals</u>. The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

 Section 1.2 <u>Definitions</u>. Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan.

   (a) "Agreement Termination Event" shall mean any of the following:

    (i) The Debtors publicly announce their intention not to pursue confirmation of the Plan;

    (ii) The Debtors file a plan, or solicit votes on a chapter 11 plan which contains terms that are not materially consistent with the terms set forth in the Plan;

    (iii) The Debtors' chapter 11 bankruptcy cases are converted to cases under chapter 7 of the Bankruptcy Code; or

    (iv) The Debtors breach or repudiate their obligations pursuant to Section 4.3(a) of this Agreement to pursue approval of the compromise and settlement contemplated by this Agreement.

   (b) "Approval Order" shall mean the order of the Bankruptcy Court approving the compromise and settlement set forth in this Agreement and authorizing and directing the consummation of the transactions contemplated herein, including, without limitation, a determination by the Bankruptcy Court that (i) this Agreement is not a "Future Settlement" (as defined in that certain

Settlement Agreement and Mutual Release, dated as of March 10, 2004, by and among ENE, ENA, certain of their affiliates and certain financial institutions (the "Rawhide Agreement")) settling the type of issues addressed in Section 3.1 of the Rawhide Agreement and (ii) nothing contained in this Agreement or the Approval Order shall trigger or be deemed to trigger any rights in favor of the Rawhide Releasing Parties, as defined in the Rawhide Agreement, in accordance with Section 3.3(b) of the Rawhide Agreement and otherwise reasonably satisfactory in form and substance to counsel to the Debtors, JPMC and the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases.

(c) "Assigned Claims" shall mean the Allowed Claims, as defined below, to be assigned to Cherokee and EFP pursuant to the security interests asserted by Cherokee and EFP, respectively, in accordance with the terms and provisions of this Agreement.

(d) "Effective Date" shall mean the earlier to occur of (i) the eleventh (11th) day following the entry of the Approval Order and (ii) such other date as the Parties hereto, in their joint and absolute discretion, designate.

(e) "Recovery Action" shall mean that certain adversary proceeding styled <u>Enron Corp. and Enron North America Corp.</u> v. <u>Citigroup Inc., et al.</u>, Adversary Proceeding No. 03-9266 (AJG), pending in the Bankruptcy Court.

(f) "Recovery Action Defendant" shall mean (i) with respect to any Choctaw Party or Zephyrus Party that is not named as a defendant in the Recovery Action, Citibank, N.A., JPMorgan Chase Bank, Barclays Bank PLC, Deutsche Bank AG, Canadian Imperial Bank of Commerce, Merrill Lynch & Co., Inc., Credit Suisse First Boston, Inc., The Toronto-Dominion Bank, The Royal Bank of Scotland or Royal Bank of Canada and each of their respective subsidiaries and affiliates named as a defendant in the Recovery Action and (ii) with respect to any Choctaw Party or Zephyrus Party that is named as a defendant in the Recovery Action, any entity named as a defendant in the Recovery Action.

(g) "Recovery Action Indebtedness" shall mean any Choctaw Indebtedness or Zephyrus Funding that was held, as of the Petition Date, by a Recovery Action Defendant.

ARTICLE II

REPRESENTATIONS AND WARRANTIES

Section 2.1  <u>Ownership of Indebtedness by JPMC, the Choctaw Parties and the Zephyrus Parties</u>.  Contemporaneously herewith, JPMC, as agent for itself and the Choctaw Lenders and the Zephyrus Lenders, has provided to ENE, and each of the Choctaw Parties and the Zephyrus Parties have independently and separately confirmed in writing, schedules (collectively, the "Indebtedness Schedules") setting forth (a) the name as of the date hereof of each Choctaw Lender or Zephyrus Lender, as the case may be, (b) the amount, as of the date

hereof, of Choctaw Indebtedness or Zephyrus Funding, as the case may be, held by such Choctaw Lender or Zephyrus Lender, and (c) to the extent that a Choctaw Lender or Zephyrus Lender holds, as of the date hereof, any Choctaw Indebtedness or Zephyrus Funding, respectively, that such party did not hold as of the Petition Date, a provenance of such Choctaw Indebtedness or Zephyrus Funding, as the case may be, including, without limitation, the record and beneficial holders thereof, for the period from the Petition Date up to and including the date hereof. JPMC represents and warrants that the Indebtedness Schedules accurately set forth the information in its records as agent for the Choctaw Lenders and the Zephyrus Lenders as of the date hereof. Each of JPMC, the Choctaw Parties and the Zephyrus Parties hereby represents that, as of the date hereof, and except as set forth on Schedule 2.2(a) hereof with respect to a pending sale of Choctaw Indebtedness or Zephyrus Funding by a Choctaw Party or a Zephyrus Party, it is (y) the sole beneficial owner of the amount of the Choctaw Indebtedness and the Zephyrus Funding indicated by its name in the Indebtedness Schedules, and/or (z) the investment advisor or manager for the beneficial owners of such Choctaw Indebtedness and/or Zephyrus Funding, having the power to vote and dispose of such Choctaw Indebtedness and/or Zephyrus Funding on behalf of such beneficial owners.

Section 2.2     Representation and Warranties of JPMC, the Choctaw Parties and the Zephyrus Parties. Each of JPMC, the Choctaw Parties and the Zephyrus Parties hereby represents and warrants for itself that: (a) as of the date hereof, and except as set forth on Schedule 2.2(a) hereof with respect to a pending sale of Choctaw Indebtedness or Zephyrus Funding by a Choctaw Party or a Zephyrus Party, respectively, it has not assigned, sold, participated, granted, conveyed, or otherwise transferred, in whole or in part, the Choctaw Indebtedness or Zephyrus Funding indicated by its name on the Indebtedness Schedules, and, as of the date hereof, it is not a party to any agreement to assign, sell, participate, grant, convey or otherwise transfer, and has not entered into any other agreement to assign, sell, participate, grant or otherwise transfer, in whole or in part, any portion of its right, title or interests in such Choctaw Indebtedness and/or Zephyrus Funding, and it has good title thereto, free and clear of all liens, security interests and other encumbrances of any kind (except to the extent that any of the relevant Choctaw Indebtedness and/or Zephyrus Funding is pledged or hypothecated as of the date hereof); provided, however, that, in the event that a Choctaw Party or a Zephyrus Party has listed a pending sale of Choctaw Indebtedness or Zephyrus Indebtedness on Scheduled 2.2(a) hereof, the purchaser thereof has agreed to be bound by the terms and conditions hereof in accordance with the provisions of Section 4.1(c) hereof; (b) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (c) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any agreements specifically applicable to it; (d) it has reviewed the Disclosure Statement and understands the treatment of claims pursuant to the Plan; (e) it does not have knowledge of any proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body that is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; (f) it has not commenced any litigation, as of the date hereof, with respect to the Choctaw Transactions or the Zephyrus Transactions

other than the JPMC Action; (g) it has not filed a proof of claim against any of the Debtors in connection with the Choctaw Transactions or the Zephyrus Transactions other than the Claims set forth in Recital R hereof; and (h) solely with respect to JPMC, the schedule provided in accordance with Section 3.9(b) of this Agreement is true and complete.

Section 2.3    Representation and Warranties of the Enron Parties.  Each of the Enron Parties hereby represents and warrants that: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) subject to entry of the Approval Order, it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organization documents or any material agreement specifically applicable to it; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) it has not commenced litigation, as of the date hereof, with respect to the Choctaw Transactions or the Zephyrus Transactions other than the BofA Action and the ENE Guaranty Action.

Section 2.4    Representations and Warranties of Cherokee and EFP.  Cherokee hereby represents and warrants that it is a Dutch partnership in liquidation duly represented by JPMC, as holder of the claim in respect to the Cherokee Preferred Interests in its capacity as agent for the Choctaw Lenders, and Cheyenne.  EFP hereby represents and warrants that it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby.  Each of Cherokee and EFP hereby represents and warrants that: (a) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organization documents or any material agreement specifically applicable to it; (b) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (c) it has not commenced litigation, as of the date hereof, with respect to the Choctaw Transactions or the Zephyrus Transactions.

ARTICLE III

COMPROMISE AND SETTLEMENT

Section 3.1    Allowance of Claims.  On the Effective Date, (a) Claim Nos. 11125, 11126, 11127, 11132 and 11133 shall be allowed as general unsecured claims against the respective Debtors in the following amounts: (i) Claim No. 11125, as a Class 5 Claim against ENA, in the amount of One Billion Nine Hundred Eighty-Six Million Twenty Thousand Four

Hundred Ten Dollars ($1,986,020,410.00); (ii) Claim No. 11126 in the amount of Four Hundred Fifteen Million Five Hundred Thousand Dollars ($415,500,000.00), bifurcated into a Class 4 Claim against ENE under the Plan in the amount of One Hundred Thirty-Five Million Dollars ($135,000,000.00) and an Allowed ENE Guaranty Claim, Class 185 under the Plan, in the amount of Two Hundred Eighty Million Five Hundred Thousand Dollars ($280,500,000.00); (iii) Claim No. 11127, as a Class 5 Claim against ENA, in the amount of Five Hundred Ten Million Dollars ($510,000,000.00); (iv) Claim No. 11132, as a Class 185 Allowed ENE Guaranty Claim under the Plan, in the amount of Seven Hundred Ninety-Six Million Five Hundred Thousand Dollars ($796,500,000.00); and (v) Claim No. 11133, as a Class 5 Claim against ENA, in the amount of Eight Hundred Twenty-Two Million Dollars ($822,000,000.00) (each an "Allowed Claim" and collectively, the "Allowed Claims"), and (b) Claim Nos. 11128, 11129, 11130, 11131, 11134, 11135, 11156, 13295 (to the extent of the Choctaw Transactions and the Zephyrus Transactions), 13849, 13856, 14089 (to the extent of the Choctaw Transactions and the Zephyrus Transactions), 18517 and 18518, together with any other proofs of claim filed by any of the Choctaw Lenders or the Zephyrus Lenders with respect to the Choctaw Transactions and the Zephyrus Transactions, respectively, shall be disallowed and expunged, and (c) the Debtors shall take such action as is appropriate, and each of JPMC, the Choctaw Parties and the Zephyrus Parties consent, to cause the allowance and disallowance thereof to be reflected on the claims docket of the Debtors' chapter 11 cases.

      Section 3.2    <u>Assignment of Claims</u>.

          (a)    On the Effective Date, and except to the extent provided in Sections 3.6 and 4.4 of this Agreement, in full and complete satisfaction of any other claims, causes of action, damages, obligations, rights and interests which may be outstanding pursuant to the Choctaw Transactions, the Choctaw Documents, the Zephyrus Transactions and the Zephyrus Documents, the Allowed Claims shall be assigned as follows:

> (i)    Pursuant to the Choctaw Transactions and the Choctaw Documents and subject to the limitations set forth in the provisions of Section 3.4 hereof and the Cherokee Liquidation Agreement, in full and complete satisfaction of any and all claims that Cherokee, JPMC, as agent, and the Choctaw Lenders may have against Sequoia and the Enron Parties (except with respect to making distributions on account of the Allowed Claims pursuant to the Plan) in connection with the Choctaw Transactions and the Choctaw Documents, Allowed Claim No. 11125, solely to the extent of One Billion Nine Hundred Sixty-Eight Million Twenty Thousand Four Hundred Ten Dollars ($1,968,020,410.00), shall be assigned by Sequoia to Cherokee and a portion thereof, together with Allowed Claim No. 11132 and Allowed Claim No. 11133, shall be assigned by Cherokee to JPMC as agent for the Choctaw Lenders.

> (ii)    Pursuant to the Zephyrus Transactions and the Zephyrus Documents and subject to the limitations set forth in the provisions of Section 3.5 hereof and the EFP Redemption Agreement, in full

and complete satisfaction of any and all claims that EFP, JPMC, as agent, and the Zephyrus Lenders may have against Sequoia and the Enron Parties (except with respect to making distributions on account of the Allowed Claims pursuant to the Plan) in connection with the Zephyrus Transactions and the Zephyrus Documents Allowed Claim No. 11125, solely to the extent of Eighteen Million Dollars ($18,000,000.00), shall be assigned to EFP, and such claim, together with Allowed Claim No. 11126 and Allowed Claim No. 11127 shall be assigned by EFP to JPMC as agent for the Zephyrus Lenders.

(b)     Pursuant to the terms of the Cherokee Liquidation Agreement and the EFP Redemption Agreement, (i) each holder of Choctaw Indebtedness or Zephyrus Funding shall be entitled to receive its pro rata share of distributions pursuant to the Plan on account of the Allowed Claims distributed pursuant to the Cherokee Liquidation Agreement or the EFP Redemption Agreement, as the case may be, including, without limitation, the Assigned Claims, except to the extent that such holder holds Recovery Action Indebtedness, in which case, distributions on account of Allowed Claims, including, without limitation, the Assigned Claims, corresponding to such Recovery Action Indebtedness which otherwise would be made in accordance with the terms and the provisions of the Plan on account of the Allowed Claims, including, without limitation, the Assigned Claims, shall be placed into the Disputed Claims Reserve in accordance with the terms and conditions of Section 21.3 of the Plan and (ii) the holder of such Recovery Action Indebtedness shall receive no distributions on account of the Allowed Claims, including, without limitation, the Assigned Claims, corresponding to such Recovery Action Indebtedness until the earliest to occur of (1) entry of a final order or final judgment in the Recovery Action dismissing the claims and causes of action asserted against such Recovery Action Defendant, in which case, any distributions so reserved shall be released to JPMC, as agent for the holder of such Recovery Action Indebtedness, (2) entry of a final order or final judgment granting the relief requested in the Recovery Action, in which case, any distributions so reserved shall be released to ENE or, in the event that the Litigation Trust has been created and Litigation Trust Claims are assigned thereto, to the Litigation Trust, as the case may be, and (3) entry of a final order of the Bankruptcy Court compromising and settling the claims and causes of action asserted against such Recovery Action Defendant in the Recovery Action, in which case, any distributions so reserved shall be released to the party entitled thereto in connection with such compromise and settlement.

Section 3.3    Dismissal of Litigation.  On the Effective Date, but in no event later than ten (10) business days thereafter, each of the JPMC Action and the ENE Guaranty Action shall be dismissed with prejudice and the parties thereto shall be released from any obligation to produce materials in accordance with any outstanding discovery requests therein and any such obligation to produce materials shall be stayed from the date hereof through the Effective Date.

Section 3.4    Liquidation of Cherokee.  Contemporaneously herewith, Cherokee and JPMC, as holder of the claim in respect to the Cherokee Preferred Interests in its capacity as agent for the Choctaw Lenders, have entered into that certain Cherokee Finance V.O.F. i.l. Liquidation Agreement, dated as of May 5, 2004 (the "Cherokee Liquidation Agreement"), a copy of which is annexed hereto as Exhibit "C", pursuant to which Cheyenne, as holder of the

common interests in Cherokee, and JPMC, as holder of the claim in respect of the Cherokee Preferred Interests in its capacity as agent for the Choctaw Lenders, have agreed to the terms on which, on the Effective Date, the assets of Cherokee, including, without limitation, the Allowed Claims as set forth in Sections 3.1 and 3.2 hereof, will be distributed in full settlement of the claims of Cheyenne and JPMC, as agent for the Choctaw Lenders, in respect of such common interests and Cherokee Preferred Interests, the GPA, as defined in the Cherokee Liquidation Agreement, and the Choctaw Indebtedness; provided, however, that, in the event that the Allowed Claims, in whole or in part, are distributed to the Choctaw Lenders in accordance with the Cherokee Liquidation Agreement, such distributions shall not limit the rights of the Enron Releasors, as defined below, or any other party-in-interest in accordance with section 502(d) of the Bankruptcy Code to the extent that the holder of the Choctaw Indebtedness holds Recovery Action Indebtedness.

Section 3.5   Redemption of EFP Preferred Interests by EFP. Contemporaneously herewith, the members of EFP have entered into the Redemption Agreement, dated as of May 5, 2004 (the "EFP Redemption Agreement"), a copy of which is annexed hereto as Exhibit "D", pursuant to which the members have agreed to the terms on which, on the Effective Date, the Allowed Claims described in Sections 3.1 and 3.2 hereof will be distributed to JPMC as agent for the Zephyrus Lenders in redemption of the EFP Preferred Interests and in full satisfaction of the claims of JPMC, as agent for the Zephyrus Lenders, in respect of the EFP Preferred Interests, the LLC Agreement, as defined in the EFP Redemption Agreement, and the Zephyrus Funding; provided, however, that, in the event that the Allowed Claims, in whole or in part, are distributed to the Zephyrus Lenders in accordance with the EFP Redemption Agreement, such distributions shall not limit the rights of the Enron Releasors or any other party-in-interest in accordance with section 502(d) of the Bankruptcy Code to the extent that the holder of the Zephyrus Funding holds Recovery Action Indebtedness.

Section 3.6   Release of Cherokee and EFP. On the Effective Date, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, except as expressly provided in this Agreement, the Cherokee Liquidation Agreement or the EFP Redemption Agreement, (a) the Enron Parties, for and on behalf of themselves and each of their officers, employees and agents (collectively, the "Enron Releasors") and (b) JPMC, each of the Choctaw Parties and the Zephyrus Parties (collectively, the "Choctaw/Zephyrus Releasors") and their respective successors and assigns and each of their affiliates, officers, employees and agents, hereby irrevocably and unconditionally forever release, acquit and forever discharge Cherokee, EFP, Sequoia, Cheyenne, EBS Ventures, LLC, Enron Capital Ventures, LLC, Enron Netherlands Holdings BV, Seminole Capital LLC, Enron Finance Management, LLC, Smith Street Land Company, Enron Global Exploration & Production Inc., Boreas Holding Corp., Enron Caribbean Basin, LLC, Enron Capital Investments Corp., Enron Intermediate Holdings, LLC and Enron Asset Holdings, LLC, and each of their respective past and present officers and directors and employees (collectively, the "Cherokee/EFP Releasees") from any and all claims, demands, liabilities and causes of action of any and every kind, character or nature whatsoever, in law or in equity, whether asserted or unasserted, which the Enron Releasors, the Choctaw/Zephyrus Releasors, or any of them, have or may have or claim to have, now or in the future, against any Cherokee/EFP Releasee to the extent arising under, relating to, or connected with the Choctaw Transactions, the Choctaw Documents, the Zephyrus Transactions, the Zephyrus Documents or any act of commission or omission under or in respect

of the Choctaw Transactions, the Choctaw Documents, the Zephyrus Transactions or the Zephyrus Documents. Notwithstanding anything contained herein or elsewhere to the contrary, the foregoing is not intended to nor shall it have the effect of: (1) releasing any claim or cause of action of the Enron Releasors or the Choctaw/Zephyrus Releasors under or in respect of the Allowed Claims or precluding any of the Cherokee/EFP Releasees from offering into evidence the existence of this release, this Agreement, the Cherokee Liquidation Agreement, the EFP Redemption Agreement or the Approval Order in connection with any action to enforce the same, (2) releasing the Cherokee/EFP Releasees from the performance of their obligations in accordance with this Agreement and the terms of the Approval Order, (3) releasing the Cherokee/EFP Releasees from the performance of their obligations in accordance with the Cherokee Liquidation Agreement or the EFP Redemption Agreement, (4) releasing any claim or cause of action of the Choctaw/Zephyrus Releasors or the Enron Releasors arising under this Agreement, the Cherokee Liquidation Agreement, the EFP Redemption Agreement or under the Approval Order, (5) releasing any claim or cause of action in any action, suit or proceeding permitted pursuant to the provisions of Section 4.4 of this Agreement or (6) releasing any claim or cause of action of any Choctaw/Zephyrus Releasor against any other Choctaw/Zephyrus Releasor.

Section 3.7    Resignation of Management Appointees. On the Effective Date, (a) each of the persons appointed by JPMC, on behalf of itself, the Choctaw Lenders and the Zephyrus Lenders, shall, without the need for further action or order of the Bankruptcy Court, be deemed to have resigned from the board of Cherokee and EFP, respectively, and (b) JPMC shall provide a schedule of all actions taken by Cherokee and EFP while such persons appointed by JPMC, on behalf of itself, the Choctaw Lenders and the Zephyrus Lenders, served as directors of Cherokee or EFP, as the case may be.

Section 3.8    Release of Collateral. On the Effective Date, but in no event later than ten (10) business days thereafter, JPMC shall take any additional action as requested by the Enron Parties that is necessary to release any liens upon and security interests in the assets of Sequoia remaining after giving effect to the assignment of the Allowed Claims, including, without limitation, the execution and delivery of UCC-3 financing statements in accordance with Section 5.11 of the Security Agreement.

Section 3.9    BofA Litigation. On the Effective Date, the Debtors shall have been deemed to have satisfied all obligations with respect to the BofA Action Stipulation, including, without limitation, those set forth in decretal paragraph 2 thereof, and JPMC, all of the Choctaw Lenders and all of the Zephyrus Lenders shall, without the need for further action or order of the Bankruptcy Court, be deemed to have waived, released and discharged any claim, lien, security interest or other interest, with respect to the Choctaw Transactions and/or the Zephyrus Transactions, in the monies seized by BofA and that are the subject of the BofA Action.

Section 3.10   ENE/ENA Intercompany Claims. Nothing contained herein shall, nor shall it be construed to, affect the Intercompany Claims, as defined in the Plan, between ENE and ENA and as verified as of the date of the approval of the Disclosure Statement.

Section 3.11    Recovery Action Indebtedness. The parties hereto agree that (a) a Recovery Action Defendant's act of acquiring Choctaw Indebtedness or Zephyrus Funding, as the case may be, during the period following the Petition Date shall not form the basis of any (i) claims that might be premised, in part, upon the knowledge of, duty of, or course of conduct by counterparties in connection with transactions with or among the Debtors, the Enron Parties, ENE officers, and/or related entities arising from or relating to the period prior to the Petition Date (the "Course of Conduct Claims") or (ii) any claim by any party-in-interest seeking to subordinate, disallow or seek the waiver of any claim of such Recovery Action Defendant relating to such Choctaw Indebtedness or Zephyrus Funding, if such Recovery Action Defendant did not hold Recovery Action Indebtedness and/or did not have or hold any direct or indirect rights, obligations, interests or claims of any kind or nature whatsoever in any of the Choctaw Transactions or the Zephyrus Transactions or under the Choctaw Documents or Zephyrus Documents prior to or as of the Petition Date, and (b) Course of Conduct Claims shall not be used to withhold or challenge any distributions to be made to any Choctaw Party or Zephyrus Party on account of Allowed Claims, pursuant to this Agreement, the Cherokee Liquidation Agreement or the EFP Redemption Agreement, except to the extent that the interest of such Choctaw Party or Zephyrus Party, as the case may be, in such Allowed Claim constitutes Recovery Action Indebtedness.

ARTICLE IV

COVENANTS

Section 4.1    Covenants of JPMC, Choctaw Parties and the Zephyrus Parties. Each of JPMC, the Choctaw Parties and the Zephyrus Parties agrees and covenants as follows:

(a)    In connection with the solicitation of ballots with respect to the Plan, JPMC (i) as holder of the claim in respect of the Cherokee Preferred Interests in its capacity as agent for the Choctaw Lenders and (ii) as agent for the Zephyrus Lenders, in their respective capacities as asserted holders of the Cherokee Preferred Interests and the EFP Preferred Interests, shall, upon entry of a scheduling order with respect to the Approval Motion, as defined below, direct Cherokee and EFP, as the case may be, to vote each of the Allowed Claim Nos. 11126, 11127, 11132, 11133 and the portion of 11125 allocable to the Choctaw Lenders and the Zephyrus Lenders in accordance with the provisions of the Cherokee Liquidation Agreement and the EFP Redemption Agreement in favor of the Plan by delivering its duly executed and completed ballot in favor of the Plan and will not change or withdraw (or cause to be changed or withdrawn) such vote(s);

(b)    JPMC and each of the Choctaw Parties and Zephyrus Parties, solely in their capacity as a Choctaw Lender or a Zephyrus Lender, shall not, and shall not cause Cherokee or EFP to, at any time prior to the termination of this Agreement vote (or cause to be voted), in favor of, or otherwise propose, file, or solicit, directly or indirectly, any workout, restructuring, plan of reorganization or plan of liquidation concerning the Debtors other than the Plan;

(c) JPMC and each of the Choctaw Parties and Zephyrus Parties will not sell, transfer, pledge, hypothecate or assign any of the relevant Choctaw Indebtedness or Zephyrus Funding or any voting or participation or other interest therein during the term of such Agreement except to a purchaser or other entity who agrees prior to such transfer to be bound by all of the terms of this Agreement with respect to the relevant Choctaw Indebtedness or Zephyrus Funding being transferred to such purchaser, which agreement shall be confirmed in writing (which writing may include a trade confirmation issued by a broker or dealer, acting as principal or as agent for the purchaser, stating that such agreement is a term of such transfer), in which event the Debtors shall be deemed to have acknowledged that their respective obligations to the Choctaw Parties and the Zephyrus Parties hereunder shall be deemed to constitute obligations in favor of such purchaser or other entity, and the Debtors shall confirm promptly that acknowledgement in writing if requested;

(d) Solely in their capacity as a Choctaw Lender or a Zephyrus Lender, each of the Choctaw Parties and the Zephyrus Parties will not (i) object to, delay, impede or take any action to interfere, directly or indirectly, with the acceptance or implementation of the Plan, or (ii) solicit in any fashion any person or entity to do any of the foregoing;

(e) None of the Choctaw Parties and the Zephyrus Parties shall file any additional claims or proofs of claim with the Bankruptcy Court against any of the Debtors with respect to, arising from or relating to the Choctaw Transactions or the Zephyrus Transactions, including, without limitation, against any of the Debtors' affiliates that may subsequently commence, or have commenced against it, a case under the Bankruptcy Code; and

(f) On the Effective Date, JPMC and each of the Choctaw Parties and the Zephyrus Parties, or their successors in interest in accordance with the provisions of Section 4.1(c) of this Agreement, as the case may be, shall provide the Enron Parties with a certificate to the effect that each of the representations and warranties set forth in Sections 2.1 and 2.2 of this Agreement are true and correct as of the Effective Date.

Section 4.2  Further Acquisition of Indebtedness.  Notwithstanding the provisions set forth in Section 4.1 hereof, nothing contained herein is intended, nor shall it be construed, to preclude the Choctaw Parties or the Zephyrus Parties from acquiring additional Choctaw Indebtedness or Zephyrus Funding; provided, however, that any such additional Choctaw Indebtedness or Zephyrus Funding so acquired shall automatically be deemed to be subject to all of the terms of this Agreement.  This Agreement shall in no way be construed to preclude the Choctaw Parties or the Zephyrus Parties from acquiring any other securities or claims against the Debtors.

Section 4.3  Covenants of the Enron Parties.  Each of the Enron Parties hereby covenants and agrees, subject to its fiduciary duties, as follows:

(a) The Debtors shall file a motion as soon as practicable, but in no event later than the tenth (10) Business Day following the date hereof, seeking approval of the compromise and settlement set forth in this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Approval Motion") and to have a hearing to consider such motion in accordance with applicable orders entered in the Debtors' chapter 11 cases;

(b) On the Effective Date, each of the Enron Parties shall take such action as is necessary to cause the voting of the Assigned Claims in accordance with the terms and provisions of Section 4.1 hereof, including, without limitation, the preparation, execution and delivery of an appropriate voting stipulation and service of the Plan and Disclosure Statement upon JPMC, the Choctaw Lenders and the Zephyrus Lenders; and

(c) Unless otherwise required by applicable law, including, without limitation, an order of the Bankruptcy Court or such other court of competent jurisdiction, each of the Enron Parties shall keep confidential the Indebtedness Schedules and the independent and separate written confirmations provided in accordance with the provisions of Section 2.1 of this Agreement.

Section 4.4    Covenant Not to Sue.  To the fullest extent permitted by law, each of (a) the Choctaw Parties and the Zephyrus Parties (collectively, the "Choctaw/Zephyrus Grantors") and (b) Cherokee and EFP (collectively, the "Cherokee/EFP Grantors") agrees that it shall not initiate, commence or continue or cause to be initiated, commenced or continued (or encourage or aid in the initiation of) any arbitration, action, suit, litigation or other proceeding against any of the Enron Parties, and each of their respective officers and directors, partners, principals, subsidiaries, affiliates, parent companies and employees, including, without limitation, the Debtors, Sequoia, Cheyenne, EBS Ventures, LLC, Enron Capital Ventures, LLC, Enron Netherlands Holdings BV, Seminole Capital LLC, Enron Finance Management, LLC, Smith Street Land Company, Enron Global Exploration & Production Inc., Boreas Holding Corp., Enron Caribbean Basin, LLC, Enron Capital Investments Corp., Enron Intermediate Holdings, LLC and Enron Asset Holdings, LLC, (collectively, the "Covenant Beneficiaries") before any court, administrative agency or other tribunal with respect to any claim, demand, liability and cause of action of any and every kind, character or nature whatsoever, in law or in equity, which the Choctaw/Zephyrus Grantors, the Cherokee/EFP Grantors, or any of them, have or may have or claim to have, now or in the future, against any Covenant Beneficiary to the extent arising under, relating to, or connected with the Choctaw Transactions, the Choctaw Documents, the Zephyrus Transactions or the Zephyrus Documents, including, without limitation, the filing of a claim or proof of claim with the Bankruptcy Court in connection with the Debtors' chapter 11 cases; provided, however, that nothing contained in this Section 4.4 is intended to preclude (y) the Choctaw/Zephyrus Grantors or the Cherokee/EFP Grantors from (i) initiating, commencing or continuing any action, suit or other proceeding to enforce the provisions of this Agreement, the Cherokee Liquidation Agreement, the EFP Redemption Agreement or the Approval Order and the performance of obligations hereunder and thereunder, (ii) initiating, commencing or continuing any action, suit or other proceeding against principals, officers, directors or employees of the Covenant Beneficiaries in the event that one or more of the Covenant Beneficiaries or any other third party or entity commences or has commenced an action, suit or

other proceeding against the Choctaw/Zephyrus Grantors or the Cherokee/EFP Grantors, as the case may be, which involves, is predicated upon, relates to, respecting, or refers to, in whole or in part, the Choctaw Transactions, the Choctaw Documents, the Zephyrus Transactions or the Zephyrus Documents; provided, however, that, in the event that (1) any of the Choctaw/Zephyrus Grantors or the Cherokee/EFP Grantors initiates, commences or continues an action, suit or other proceeding against a principal, officer, director or employee of the Covenant Beneficiaries, (2) any such action, suit or other proceeding gives rise to or results in a judgment or final order requiring the payment of monies to the plaintiff therein (the "Judgment Amount") and (3) with respect to the claims and causes of action giving rise to the Judgment Amount, the defendant in such action, suit or other proceeding has a claim for contribution, indemnification or reimbursement or has incurred costs and expenses which gives rise to an enforceable claim against any of the Debtors or the Enron Parties and a final judgment or final order requiring the payment thereof by any of the Debtors or the Enron Parties is entered by a court of competent jurisdiction (the aggregate amount of all such rights, claims, costs and expenses that the Debtors or the Enron Parties are required to pay pursuant to such final judgment or order being referred to herein as the "Indemnified/Contribution Amount"), then (A) (i) the Choctaw/Zephyrus Grantors and the Cherokee/EFP Grantors shall reduce the Judgment Amount to the extent of the Indemnified/Contribution Amount or (ii) if reduction of the Judgment Amount will not reduce the Indemnified/Contribution Amount to zero, then, to the extent that the Debtors or the Enron Parties make payments in respect of the Indemnified/Contribution Amount and the Choctaw/Zephyrus Grantors or the Cherokee/EFP Grantors receive payment of the Judgment Amount inclusive of an amount equal to the payment of the Indemnified/Contribution Amount, the applicable Choctaw/Zephyrus Grantor or Cherokee/EFP Grantor, as the case may be, receiving such payment shall pay the amount thereof attributable to the Indemnified/Contribution Amount to the applicable Debtor or Enron Party, (B) none of the Choctaw/Zephyrus Grantors or the Cherokee/EFP Grantors shall be entitled to assert a claim against any of the Debtors or the Enron Parties with respect to the Indemnified/Contribution Amount and (C) none of the Debtors or the Enron Parties shall have any liability with respect to the Indemnified/Contribution Amount, or (iii) asserting and establishing any defense or apportionment in connection with a litigation against them or any of them, including, without limitation, in connection with the Recovery Action and other presently pending actions, or (z) the Cherokee/EFP Grantors from commencing any action, suit or other proceeding against Enron Netherlands Holdings B.V. arising from or relating to any and all outstanding promissory notes and accounts payable of Enron Netherlands Holdings B.V. issued or currently for the benefit of either of the Cherokee/EFP Grantors. This Covenant Not to Sue shall be a complete defense to any arbitration, suit, action, litigation or other proceeding brought in violation of this Covenant Not to Sue.

ARTICLE V

EFFECTIVENESS AND TERMINATION OF AGREEMENT

Section 5.1    Effectiveness of Agreement.  Except with regard to the covenant of the Enron Parties set forth in Section 4.3(a) hereof, the terms and provisions of this Agreement are expressly subject to the approval of the Bankruptcy Court and entry of the Approval Order.

Section 5.2    Termination of Agreement. The obligations of JPMC, the Choctaw Parties and the Zephyrus Parties hereunder shall terminate upon the occurrence of any Agreement Termination Event, unless the occurrence of such Agreement Termination Event is waived in writing by such party. If any Agreement Termination Event occurs (and has not been waived) at a time when court permission shall be required to change or withdraw (or cause to be changed or withdrawn) the vote(s) in favor of the Plan on account of the Assigned Claims, the Debtors and the other parties to this Agreement shall not, subject to its fiduciary duties, if any, in connection therewith, oppose any attempt by such party to change or withdraw (or cause to be changed or withdrawn) such vote(s) at such time.

## ARTICLE VI

## MISCELLANEOUS

Section 6.1    Amendments. This Agreement may not be modified, amended or supplemented except by a written agreement executed by each party to be affected by such modification, amendment or supplement.

Section 6.2    Disclosure of Individual Holdings. Unless otherwise required by applicable law or regulation (including, without limitation, the Bankruptcy Code and the United States securities laws and any rules or regulations of the Securities and Exchange Commission) or court order, which law, regulation or order may require disclosure of the following, the Debtors shall not disclose any Choctaw Party's or Zephyrus Party's individual holdings of relevant Choctaw Indebtedness or Zephyrus Funding, respectively, without the prior written consent of the Choctaw Party or Zephyrus Party whose individual holdings are to be disclosed. The foregoing shall not prohibit the Debtors from disclosing the approximate aggregate amount of Choctaw Indebtedness or Zephyrus Funding held by the Choctaw Parties or Zephyrus Parties, each as a group, as the case may be, whether or not such disclosure is required by law, regulation or court order.

Section 6.3    No Admission of Liability. Except with regard to the allowance of the Claims, nothing contained herein shall constitute an admission of liability or otherwise by any party and may not be offered or received in evidence or requested in discovery in the Debtors' chapter 11 cases or any other action or proceeding involving any party thereto except in an action to enforce the terms hereof.

Section 6.4    Governing Law; Jurisdiction; Service of Process. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to any principles of conflicts of law. By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may be brought in the Bankruptcy Court for that purpose only, and, by execution and delivery of this Agreement, each of the Parties hereby irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding. In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of

process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 6.11 hereof, unless another address has been designated by such Party in a notice given to the other Parties in accordance with Section 6.11 hereof.

Section 6.5    Specific Performance. It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach.

Section 6.6    Fees and Expenses. If any Party brings an action against any other Party based upon a breach by the other Party of its obligations under this Agreement, the prevailing Party shall be entitled to all reasonable expenses incurred, including reasonable attorneys' fees and expenses.

Section 6.7    Headings. The headings of the Sections, paragraphs and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

Section 6.8    Binding Agreement Successors and Assigns; Joint and Several Obligations. This Agreement shall be binding upon the Parties only upon the execution and delivery of this Agreement by the Parties listed on the signature pages hereto. This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, constituents and representatives. The agreements, representations and obligations of the Choctaw Parties and the Zephyrus Parties under this Agreement are several only and not joint in any respects.

Section 6.9    Entire Agreement. This Agreement, together with the Cherokee Liquidation Agreement and the EFP Redemption Agreement, constitutes the full and entire agreement among the parties with regard to the subject hereof, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any party with respect to the subject matter hereof. No party has entered into this Agreement in reliance on any other party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Agreement.

Section 6.10    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

Section 6.11    Notices. All demands, notices, requests, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given when personally delivered by courier service, messenger, or telecopy at, or three (3) days after being duly deposited in the mail, by certified or registered mail, postage prepaid-return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties;