# **EXHIBIT 16**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                            :
In re:                                      :       Chapter 11
                                            :
ENRON CORP., *et al.*,                      :       Case No. 01-16034 (AJG)
                                            :
              Debtors.                      :       Jointly Administered
---------------------------------------------------------x

SUPPLEMENTAL MODIFIED FIFTH AMENDED JOINT PLAN OF
AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF
THE UNITED STATES BANKRUPTCY CODE

 

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000
       – and –
700 Louisiana
Houston, Texas  77002
(713) 546-5000
Attorneys for Debtors and
   Debtors in Possession

Dated: July 2, 2004

on the Ballot and be received by the Debtors on or prior to the Ballot Date. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is expressly waived, in writing, by the Debtors; provided, however, that, under no circumstances, may such waiver by the Debtor occur on or after the Effective Date.

7.8 **Election of TOPRS Holders to Receive Additional Cash Distributions in Lieu of Partial Plan Securities**: Notwithstanding the provisions of Section 7.1 of the Plan, pursuant to the compromise and settlement set forth herein and in the TOPRS Stipulation, each holder of TOPRS may elect to receive additional distributions of Cash in lieu of distributions of CrossCountry Common Equity, PGE Common Stock and Prisma Common Stock to which such holder is entitled to receive derivatively on account of the Allowed ETS Debenture Claims held by EPF I and EPF II. To the extent elected, ENE shall be deemed to have purchased from EPF I and EPF II the shares of CrossCountry Common Equity, PGE Common Stock and Prisma Common Stock otherwise distributed at a price equal to the per share value determined by the Bankruptcy Court at the Confirmation Hearing. Such election must be made on the Ballot tendered by the ETS Indenture Trustee with respect to the ETS Debenture Claims and be received by the Debtors on or prior to the Ballot Date; provided, however, that, in the event that the holders of Allowed ETS Debenture Claims do not vote to accept the Plan such that, if the ETS Debenture Claims were deemed to be a separate Class of Claims, such Class would be deemed to have rejected the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, any such election shall be deemed null and void and the provisions of this Section 7.8 shall have no force or effect. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is expressly waived, in writing, by the Debtors; provided, however, that, under no circumstances, may such waiver by the Debtors occur on or after the Effective Date.

7.9 **Dabhol Debtors Removal**: Pursuant to the Bankruptcy Court's order, dated April 8, 2004, and the notice, dated May 17, 2004 in connection therewith, (a) a majority of the equity interests of Enron Mauritius Company, Enron India Holdings Ltd. and Offshore Power Production C.V. were sold, (b) such entities were, among other things, removed as Debtors and Proponents of the Plan and (c) Classes 58, 59 and 60 of the Plan have been rendered inoperative.

## ARTICLE VIII

## PROVISION FOR TREATMENT OF ENRON SUBORDINATED DEBENTURE CLAIMS (CLASS 183)

8.1 **Treatment of Allowed Enron Subordinated Debenture Claims (Class 183)**: Commencing on the Effective Date, each holder of an Allowed Enron Subordinated Debenture Claim shall be entitled to receive on account of such Allowed Enron Subordinated Debenture Claim distributions in an aggregate amount equal to such holder's Pro Rata Share of the Distributive Assets and Distributive Interests attributable to ENE; provided, however, that, notwithstanding the foregoing, the contractual subordination rights, if any, of holders of "Senior Indebtedness" or any similar term under the Enron Subordinated Indentures shall be preserved and enforced hereunder pursuant to section 510(a) of the Bankruptcy Code and, in the event such rights are determined to be enforceable, any such distributions shall be distributed to holders of Allowed Claims that constitute "Senior Indebtedness", as identified on Exhibit "L" hereto, until

such time as such holder's Claims have been satisfied in accordance with the terms and provisions of the Enron Subordinated Indentures.

    8.2    **Contingent Distribution/Limitation on Recovery**: Notwithstanding anything contained herein to the contrary, in the event that (a) distributions of Plan Currency and Trust Interests are deemed redistributed to a holder of an Allowed Enron Subordinated Debenture Claim in accordance with the provisions of Section 7.5 hereof and (b) the sum of the distributions of Plan Currency and Trust Interests to be distributed to a holder of an Allowed Enron Subordinated Debenture Claim are equal to or in excess of one hundred percent (100%) of such holder's Allowed Enron Subordinated Debenture Claim, then, the Plan Currency and Trust Interests remaining to be distributed to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of Allowed Claims and Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims and Disputed Equity Interest and accordingly shall be distributed in accordance with the provisions of the documents, instruments and agreements governing such Claims and Equity Interests, including, without limitation, the contractual subordination provisions set forth therein, and the Bankruptcy Code.

# ARTICLE IX

## PROVISION FOR TREATMENT OF
## ENRON TOPRS DEBENTURE CLAIMS (CLASS 184)

    9.1    **Treatment of Allowed Enron TOPRS Debenture Claims (Class 184)**: Commencing on the Effective Date, each holder of an Allowed Enron TOPRS Debenture Claim shall be entitled to receive on account of such Allowed Enron TOPRS Debenture Claim distributions in an aggregate amount equal to such holder's Pro Rata Share of the Distributive Assets and Distributive Interests attributable to ENE; provided, however, that, notwithstanding the foregoing, the contractual subordination rights, if any, of holders of "Senior Indebtedness" or any similar term under the Enron TOPRS Indentures shall be preserved and enforced hereunder pursuant to section 510(a) of the Bankruptcy Code and, in the event such rights are determined to be enforceable, any such distributions shall be distributed, subject to Bankruptcy Rule 3021 and subject to the lien or priority rights of the Enron TOPRS Indenture Trustee, to holders of Allowed Claims that constitute "Senior Indebtedness", as identified on Exhibit "L" hereto, in the manner and to the extent set forth in the Enron TOPRS Indentures until such time as such holder's Claims have been satisfied in accordance with the terms and provisions of the Enron TOPRS Indentures.

    9.2    **Contingent Distribution/Limitation on Recovery**: Notwithstanding anything contained herein to the contrary, in the event that (a) distributions of Plan Currency and Trust Interests are deemed redistributed to a holder of an Allowed Enron TOPRS Debenture Claim in accordance with the provisions of Section 7.5 hereof and (b) the sum of the distributions of Plan Currency and Trust Interests are equal to or in excess of one hundred percent (100%) of such holder's Allowed Enron TOPRS Debenture Claim, then, the Plan Currency and Trust Interests remaining to be distributed to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of Allowed Claims and Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims and Disputed Equity Interest and accordingly shall be distributed in accordance with the provisions of the documents, instruments and

agreements governing such Claims and Equity Interests, including, without limitation, the contractual subordination provisions set forth therein, and the Bankruptcy Code.

## ARTICLE X

## PROVISIONS FOR TREATMENT OF
## ENRON GUARANTY CLAIMS (CLASS 185)

10.1 **Treatment of Enron Guaranty Claims (Class 185)**: Commencing on the Effective Date and subject to the provisions of Section 10.2 hereof, each holder of an Allowed Enron Guaranty Claim shall be entitled to receive on account of such Allowed Enron Guaranty Claim distributions in an aggregate amount equal to such holder's Pro Rata Share of the Enron Guaranty Distributive Assets and the Enron Guaranty Distributive Interests; provided, however, that, to the extent that a holder of an Allowed Enron Guaranty Claim shall be entitled to receive a distribution on account of a recovery with respect to a Litigation Trust Claim or a Special Litigation Claim, as the case may be, such distribution shall be allocated (i) eighty percent (80%) to the holder of such Allowed Enron Guaranty Claim and (ii) twenty percent (20%) to the holders of Allowed General Unsecured Claims against the primary obligor relating to such Allowed Enron Guaranty Claims; and, provided, further, that, for purposes of calculation and distribution of such twenty percent (20%) allocation, any holder of an Allowed General Unsecured Claim against such primary obligor to the extent such holder holds an Allowed Enron Guaranty Claim corresponding to such Allowed General Unsecured Claim shall be excluded; and, provided, further, that, under no circumstances, shall a holder of an Allowed Enron Guaranty Claim receive aggregate distributions in accordance with the provisions of Articles VII and X of the Plan in excess of one hundred percent (100%) of such holder's corresponding Allowed General Unsecured Claim; and, provided, further, that, notwithstanding the foregoing, the contractual subordination rights, if any, of holders of "Senior Indebtedness" or any similar term under the Enron MIPS Agreements and the guarantee agreements executed in connection therewith shall be preserved and enforced hereunder pursuant to section 510(a) of the Bankruptcy Code and, in the event such rights are determined to be enforceable, any such distributions shall be distributed to holders of Allowed Claims that constitute "Senior Indebtedness", as identified on Exhibit "L" hereto, until such time as such holder's Claims have been satisfied in accordance with the terms and provisions of the Enron MIPS Agreements and such related agreements.

10.2 **Allowed Claims of Fifty Thousand Dollars or More/Election to be Treated as a Convenience Claim**: Notwithstanding the provisions of Section 10.1 of the Plan, any holder of an Allowed Enron Guaranty Claim whose Allowed Enron Guaranty Claim is more than Fifty Thousand Dollars ($50,000.00), and who elects to reduce the amount of such Allowed Claim to Fifty Thousand Dollars ($50,000.00), shall, at such holder's option, be entitled to receive, based on such Allowed Claim as so reduced, distributions pursuant to Article XVI hereof; provided, however, that, under no circumstances, shall a holder of an Allowed Enron Guaranty Claim receive aggregate distributions in accordance with the provisions of Articles VII and X of the Plan in excess of one hundred percent (100%) of such holder's corresponding Allowed General Unsecured Claim. Such election must be made on the Ballot and be received by the Debtors on or prior to the Ballot Date. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is expressly waived, in writing, by the Debtors; provided,

## EXHIBIT L

## SENIOR INDEBTEDNESS
(Excerpts of Relevant Documentation)

I.  **Enron Subordinated Debentures:**

"Senior Indebtedness" shall mean the principal of, and premium, if any, and interest on, any indebtedness of [ENE] (other than the Securities and Exchangeable Subordinated Debentures issued and to be issued pursuant to the indenture, dated as of June 1, 1983, between [ENE] and Morgan Guaranty Trust Company of New York, as Trustee, as the same has been or may be amended from time to time) outstanding at any time, whether unsecured or secured by any mortgage, deed of trust, pledge, security interest or other lien, except indebtedness which by its terms is not superior in right of payment to the Securities. Notwithstanding anything herein to the contrary, "Senior Indebtedness" (x) shall include all Senior Bank Debt (including all Obligations which constitute Senior Bank Debt) and (y) shall not include (a) indebtedness of or monies owed by [ENE] for compensation to employees or for goods or material purchased in the ordinary course of business or for services or (b) indebtedness of [ENE] to a Subsidiary for money borrowed or advanced from such Subsidiary.

"Indebtedness," as applied to [ENE] or any Subsidiary, shall mean bonds, debentures, notes and other instruments representing obligations created or assumed by any such corporation for the repayment of money borrowed (other than unamortized debt discount or premium). All indebtedness secured by a lien upon property owned by [ENE] or any Subsidiary and upon which indebtedness any such corporation customarily pays interest, although any such corporation has not assumed or become liable for the payment of such indebtedness, shall for all purposes hereof be deemed to be indebtedness of any such corporation. All indebtedness for money borrowed incurred by other persons which is directly guaranteed as to payment of principal by [ENE] or any Subsidiary shall for all purposes hereof be deemed to be indebtedness of any such corporation, but no other contingent obligation of any such corporation in respect of indebtedness incurred by other persons shall for any purpose be deemed indebtedness of such corporation. Indebtedness of [ENE] or any Subsidiary shall not include (i) amounts which are payable only out of all or a portion of the oil, gas, natural gas, helium, coal, metals, minerals, steam, timber or other natural resources produced, derived or extracted from properties owned or developed by such corporation; (ii) any amount representing capitalized lease obligations; (iii) any indebtedness incurred to finance oil, gas, natural gas, helium, coal, metal, mineral, steam, timber, hydrocarbons, or geothermal or other natural resource or synthetic fuel exploration or development, payable, with respect to principal and interest, solely out of the proceeds of oil, gas, natural gas, helium, coal, metals, minerals, steam, timber, hydrocarbons, or geothermal or other natural resources or synthetic fuel to be produced, sold, and/or delivered by [ENE] or any Subsidiary; (iv) indirect guarantees or other contingent obligations in connection with the indebtedness of others, including agreements, contingent or otherwise, with such other persons or with third persons with respect to, or to permit or ensure the payment of, obligations of such other persons, including, without limitation, agreements to purchase or repurchase obligations of

L-1

such other persons, agreements to advance or supply funds to or to invest in such other persons, or agreements to pay for property, products, or services of such other persons (whether or not conferred, delivered or rendered), and any demand charge, throughput, take-or-pay, keep-well, make-whole, cash deficiency, maintenance of working capital or earnings or similar agreements; and (v) any guarantees with respect to lease or other similar periodic payments to be made by other persons.

"Obligations" means any principal, interest, penalties, fees and other liabilities payable under the documentation governing any indebtedness, excluding fees and expenses payable to the Trustee.

"Senior Bank Debt" means any amounts outstanding from time to time under (i) the Loan Agreement dated as of November 19, 1986 among [ENE], the banks named therein, and Bankers Trust Company and Citibank, N.A., as Co-Agents, as the same may be from time to time amended, (ii) the Revolving Credit Agreement dated as of November 19, 1986 among [ENE], the banks named therein and Bankers Trust Company and Citibank, N.A., as Co-Agents, as the same may be from time to time amended, and (iii) the Credit Agreement dated as of November 19, 1986 among [ENE], the banks named therein and Bankers Trust Company and Citibank, N.A., as Co-Agents, as the same may be from time to time amended; provided that after each of the credit facilities listed in clauses (i) through (iii) have terminated and all amounts owing thereunder paid in full, the term "Senior Bank Debt" shall include any indebtedness of [ENE] incurred to refinance (including successive refinancings) such Senior Bank Debt unless under the terms of the agreements providing for any such refinancing it is provided that the indebtedness represented thereby shall not constitute Senior Bank Debt hereunder, and in any event Senior Bank Debt shall include any principal, interest, penalties, fees and other liabilities payable under any agreement described in clauses (i) through (iii) above or constituting Senior Bank Debt by virtue of the proceeding proviso.

"Subsidiary" means a corporation all of the voting shares (that is, shares entitled to vote for the election of directors, but excluding shares entitled so to vote only upon the happening of some contingency unless such contingency shall have occurred) of which shall be owned by [ENE] or by one or more Subsidiaries or by [ENE] and one or more Subsidiaries.

## II.    Enron TOPRS Debentures:

"Senior Indebtedness" means the principal of, premium, if any, interest on and any other payment due pursuant to any of the following, whether outstanding at the date hereof or hereafter incurred, created or assumed: (i) all indebtedness of [ENE] (other than any obligations to trade creditors) evidenced by notes, debentures, bonds or other securities sold by [ENE] for money borrowed and capitalized lease obligations; (ii) all indebtedness of others of the kinds described in the preceding clause (i) assumed or guaranteed in any manner by [ENE] or in effect guaranteed by [ENE]; and (iii) all renewals, extensions or refundings of indebtedness of the kinds described in either of the preceding clauses (i) or (ii), unless, in the case of any particular indebtedness, capitalized lease obligation, guarantee, renewal, extension or refunding, the instrument creating or evidencing the same or the assumption or guarantee of the same expressly

provides that such indebtedness, renewal, extension or refunding is subordinated to or is pari passu with the Securities.

### III.   Enron Capital Resources, L.P., 9% Cumulative Preferred Securities, Series A (MIPS)

Loan Agreement

Section 4.01. Subordination. [ENE] and Resources covenant and agree, and the holders of the Series A Preferred Securities (and any trustee appointed by such holders) by their acceptance of such Series A Preferred Securities likewise agree, that the Loan is subordinate and junior in right of payment to all Senior Indebtedness as provided herein. The term "Senior Indebtedness" shall mean the principal, premium, if any, and interest on (i) all indebtedness of [ENE], whether outstanding on the date hereof or hereafter created, incurred or assumed, which is for money borrowed, or evidenced by a note or similar instrument given in connection with the acquisition of any business, properties or assets, including securities, (ii) any indebtedness of others of the kinds described in the preceding clause (i) for the payment of which [ENE] is responsible or liable (directly or indirectly, contingently or otherwise) as guarantor or otherwise, (iii) any indebtedness secured by a lien upon property owned by [ENE] and upon which indebtedness [ENE] customarily pays interest, even though [ENE] has not assumed or become liable for the payment of such indebtedness and (iv) amendments, renewals, extensions and refundings of any such indebtedness, unless in any instrument or instruments evidencing or securing such indebtedness or pursuant to which the same is outstanding, or in any such amendment, renewal, extension or refunding, it is expressly provided that such indebtedness is not superior in right of payment to the Loan and except that Senior Indebtedness shall not include the indebtedness pursuant to the Loan Agreement dated as of November 15, 1993 between [ENE] and Enron Capital LLC and any extensions or refundings thereof (the "Pari Passu Debt"). Senior Indebtedness shall continue to be Senior Indebtedness and entitled to the benefits of these subordination provisions irrespective of (i) any amendment, modification or waiver of any term of the Senior Indebtedness or extension or renewal of the Senior Indebtedness, (ii) any exchange or release of, or non-perfection of any lien on or security interest in, any collateral, or any release from, amendment or waiver of or consent to departure from any guaranty, for all or any of the Senior Indebtedness, (iii) any other circumstance which might otherwise constitute a defense available to or discharge of Resources to the holders of the Series A Preferred Securities (or any trustee appointed by such holders) in respect of the provisions of this Section 4.01, or (iv) any act or failure to act on the part of Enron or by any act or failure to act, in good faith, by any holder of Senior Indebtedness, or by any noncompliance by [ENE] with the terms of this Agreement, regardless of any knowledge thereof which any person may have or be otherwise charged with. (Remainder of section omitted).

### IV.   Enron Capital LLC, 8% Cumulative Preferred Securities (MIPS)

Loan Agreement

Section 4.01. Subordination. [ENE] and Capital covenant and agree, and the holders of the Preferred Shares (and any trustee appointed by such holders) by their acceptance of such

Preferred Shares likewise agree, that the Loans are subordinate and junior in right of payment to all Senior Indebtedness as provided herein. The term "Senior Indebtedness" shall mean the principal, premium, if any, and interest on (i) all indebtedness of [ENE], whether outstanding on the date hereof or hereafter created, incurred or assumed, which is for money borrowed, or evidenced by a note or similar instrument given in connection with the acquisition of any business, properties or assets, including securities, (ii) any indebtedness of others of the kinds described in the preceding clause (i) for the payment of which [ENE] is responsible or liable (directly or indirectly, contingently or non-contingently) as guarantor or otherwise, (iii) any indebtedness secured by a lien upon property owned by [ENE] and upon which indebtedness [ENE] customarily pays interest, even though [ENE] has not assumed or become liable for the payment of such indebtedness and (iv) amendments, renewals, extensions and refundings of any such indebtedness, unless in any instrument or instruments evidencing or securing such indebtedness or pursuant to which the same is outstanding, or in any such amendment, renewal, extension or refunding, it is expressly provided that such indebtedness is not superior in right of payment to the Loans. Senior Indebtedness shall continue to be Senior Indebtedness and entitled to the benefits of these subordination provisions irrespective of (i) any amendment, modification or waiver of any term of the Senior Indebtedness or extension or renewal of the Senior Indebtedness, (ii) any exchange or release of, or non-perfection of any lien on or security interest in, any collateral, or any release from, amendment or waiver of or consent to departure from any guaranty, for all or any of the Senior Indebtedness, (iii) any other circumstance which might otherwise constitute a defense available to or discharge of Capital to the holders of the Preferred Shares (or any trustee appointed by such holders) in respect of the provisions of this Section 4.01, or (iv) any act or failure to act, in good faith, by any holder of Senior Indebtedness, or by any noncompliance by [ENE] with the terms of this Agreement, regardless of any knowledge thereof which any person may have or be otherwise charged with. (Remainder of section omitted).