**Case Nos. 07-7757(CM) and 07-7941(CM)**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

*In re:* ENRON CREDITORS RECOVERY CORP., f/k/a Enron Corp., *et al.*

*Debtors.*

---

JPMORGAN CHASE BANK, N.A., CREDIT SUISSE FIRST BOSTON, DEUTSCHEBANK TRUST COMPANY AMERICAS, FARALLON CAPITAL MANAGEMENT, LLC, KING STREET CAPITAL L.P., REDWOOD PARTNERS, SILVER POINT CAPITAL L.P.,

*Appellants,*

-against-

THE BAUPOST GROUP, LLC, ABRAMS CAPITAL, LLC, ENRON CREDITORS RECOVERY CORP., f/k/a Enron Corp., *et al.,*

*Appellees.*

---

*Appeal from the United States Bankruptcy Court for the Southern District of New York, Case No. 01-16034 (Jointly Administered)*

---

**APPELLEES' OPENING BRIEF**

---

STUTMAN TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars
12th Floor
Los Angeles, CA  90067
(310) 228-5600
Isaac M. Pachulski, Esq. (admitted *pro hac vice*)
Eric D. Winston, Esq. (admitted *pro hac vice*)
Nathan A. Schultz, Esq.

*Counsel for Appellees
The Baupost Group, LLC and Abrams Capital, LLC*

# TABLE OF CONTENTS

**Page(s)**

I. STATEMENT OF JURISDICTION, ISSUES ON APPEAL, and STANDARD OF REVIEW ................................................................................................. 1

II. PRELIMINARY STATEMENT ................................................................... 1

III. STATEMENT OF THE CASE .................................................................... 4

IV. ARGUMENT ............................................................................................... 6

    A.    Applicable State Law Controls The Interpretation Of The Subordination Provisions In The TOPRS Indentures And The 1987 Indenture. ............................................................................................ 6

    B.    The Cherokee Claim And The EFP Claims Do Not Qualify As "Senior Indebtedness" Under The TOPRS Indentures. ........................... 6

        1.    The "Last Antecedent Rule" Does Not Appear To Apply To Disputes Under New York Law Regarding Contractual Subordination Provisions. ................................................ 7

        2.    Even If The Last Antecedent Rule Has Any Applicability To Contracts Governed By New York Law, It Does Not Apply Here. .......................................................................... 9

        3.    The Appellants' "Absurdity" Argument Is Meritless. ................. 16

            a.    The Bankruptcy Court's Interpretation Of The TOPRS Indentures Does Not Lead To Commercially Absurd Results. ..................................... 16

            b.    The Appellants' "Bank Debt" Argument Lacks Any Support In Law Or Fact. ................................................ 18

            c.    The Appellees' Proposed Limitation Of The "Sold" Requirement To Only "Other Securities" Results In An Anomalous And Unjustified Distinction Between "Other Securities" Which Evidence Indebtedness And Notes, Bonds, And Debentures. ........................ 20

    C.    The EFP Claims Do Not Qualify As "Senior Indebtedness" Under The 1987 Indenture. ................................................................ 21

        1.    Section 1303 Of The 1987 Indenture Governs Any Right To Subordinate Payments Made Pursuant To A Chapter 11 Plan. ............................................................................ 21

            a.    Section 1303 Limits The Benefits Of Subordination To Parties That Hold Senior Indebtedness At The Time Of Asset Distribution. ................................. 23

        2.    Section 1302(b) Does Not Permanently Vest A Party With Subordination Rights Upon The Occurrence Of A Payment

Default...................................................................................................24

3.    The 1987 Indenture Definition Of Corporation Includes
      Limited Liability Companies Such As EFP.......................................28

V. CONCLUSION.................................................................................................31

465885v3

## **TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Ford Motor Co.,*
    303 F. Supp. 2d 1253 (W.D. Okla. 2004) ............................................................ 9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    305 F.3d 120 (2d Cir. 2002) .............................................................................. 30

*Bankers Life Co. v. Manufacturers Hanover Trust Co. (In re Kingsboro Mortg.*
    *Corp.),*
    514 F.2d 400 (2d Cir. 1975) ................................................................................ 8

*Barnhart v. Thomas,*
    540 U.S. 20 (2003), 92 S.Ct. 515 ............................................................ 9, 13, 14

*In re Best Prods. Co.,*
    168 B.R. 35 (Bankr. S.D.N.Y. 1994) .................................................................. 6

*Dole v. United Steelworkers of Am.,*
    494 U.S. 26 (1990) ............................................................................................ 10

*In re Envirodyne Indus., Inc.,*
    29 F.3d 301 (7th Cir. 1994) ........................................................................... 9, 11

*Falley's, Inc. v. Burke Fin. Corp.,*
    763 P.2d 18, 1987 Kan. App. LEXIS 1247 (1987) ............................................ 7

*Federal Trade Comm'n v. Mandel Bros., Inc.,*
    359 U.S. 385 (1959), 79 S.Ct. 818 ............................................................. 12, 13

*Forbau v. Aetna Life Ins. Co.,*
    876 S.W.2d 132 (Tex. 1994) ............................................................................. 22

*In re Green,*
    252 B.R. 769 (B.A.P. 8th Cir. 2000) ................................................................ 19

*Groupo Condumex v. SPX Corp.,*
    163 F. Supp. 2d 857 (N.D. Ohio 2001) .............................................................. 6

*Hibbs v. Brown,*
    28 Bedell 167, 82 N.E. 1108 (N.Y. 1907) ....................................................... 29

*Houston Bank & Trust Co. v. Lansdowne,*
    201 S.W.2d 834 (Tex. App. 1947) ............................................................. 28, 29

*International Ribbon Mills, Ltd. V. Arjan Ribbons, Inc.,*
    36 N.Y.2d 121, 325 N.E.2d 137 (1975) ........................................................... 31

*Kenilworth Realty Trust v. Bankers Trust Co.,*
    447 N.Y.S.2d 210 (1982) .................................................................................. 16

*Kucher v. DaimlerChrysler Corp.,*
    802 N.Y.S.2d 298, 2005 N.Y. Misc. LEXIS 1343 (2005) ................................. 8

*Marriott Family Restaurants, Inc. v. Lunan Family Restaurants (In re Lunan Family Restaurants),*194 B.R. 429 (Bankr. N.D. Ill. 1996)................................................ 8

*Metropolitan Life Ins. Co. v. Noble Lowndes Int'l,*
  84 N.Y.2d 430 (1994) ........................................................................... 10

*Nobelman v. American Sav. Bank,*
  508 U.S. 324 (1993), 113 S.Ct. 2106....................................... 9, 15, 16

*Norton v. Southern Utah Wilderness Alliance,*
  542 U.S. 55 (2004), 124 S.Ct. 2373...................................................... 10

*PPM Finance, Inc. v. Norandal USA, Inc.,*
  297 F. Supp. 2d 1072 (N.D. Ill. 2004) .................................................. 9

*Philadelphia Indemnity Ins. Co. v. Maryland Yacht Club, Inc.,*
  129 Md. App. 455, 742 A.2d 79 (1999)................................................. 7

*Pilot Life Ins. Co. v. Dedeaux,*
  481 U.S. 41 (1987).................................................................................. 9

*Porto Rico Railway, Light & Power Co. v. Mor,*
  253 U.S. 345 (1920)............................................................................... 15

*Resolution Trust Co. v. BVS Dev., Inc.,*
  42 F.3d 1206 (9th Cir. 1994) ................................................................. 8

*San Antonio v. Heath & Stich, Inc.,*
  567 S.W.2d 56 (Tex. App. 1978)........................................................... 22

*Septembertide Pub., B.V. v. Stein & Day, Inc.,*
  884 F.2d 675 (2d Cir. 1989).................................................................. 31

*Smith v. Whitney,*
  273 N.Y.S. 822, 1934 N.Y. Misc. LEXIS 1561 (1934)....................... 8

*State Bank & Trust Co. v. Insurance Co.,*
  132 F.3d 203 (5th Cir. 1997) ................................................................ 30

*Sumitomo Trust & Banking Co. v. Holly's Inc. (In re Holly's Inc.),*
  140 B.R. 643 (Bankr. W.D. Mich. 1992)............................................... 25

*Taylor v. Prudential Life Ins. Co.,*
  253 N.Y.S. 55, 1931 N.Y. Misc. LEXIS 1762 (1931)......................... 8

*Texas Sav. & Community Bankers Ass'n v. Federal Housing Finance Bd.,*
  1998 U.S. Dist. LEXIS 13470 (W.D.Tex. 1998) ................................ 11

*UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.,*
  793 F. Supp. 448 (S.D.N.Y. 1992) .................................................. 27, 28

*United States v. Bass,*
  404 U.S. 336 (1971), 92 S.Ct. 515............................................ 9, 14, 15, 16

*United States v. Ron Pair Enters., Inc.,*

iv

465885v3

489 U.S. 236 (1989), 109 S.Ct. 1026 ................................................................. 11

*Willow Wood Rifle & Pistol Club, Inc. v. Town of Carmel Zoning Bd. Of Appeals,*
   115 A.D.2d 742, 744 N.Y.S.2d 548 (A.D. 2 Dept. 1985) ................................. 28

*Wojchowski v. Daines,*
   498 F.3d 99 (2d Cir. 2007) ............................................................................. 10

*Kabayan v. Yepremian (In re Yepremian),*
   116 F.3d 1295 (9th Cir. 1997) ........................................................................ 19

## STATUTES

11 U.S.C. § 506(b) ............................................................................................... 11

11 U.S.C. § 510(a) ................................................................................................. 6

Tex. Rev. Civ. Stat. Ann. art. 1528n (West 1991) ......................................... 29, 30

## OTHER AUTHORITIES

American Bar Foundation Corporate Debt Financing Project, *Commentaries on*
   *Model Debenture Indenture Provisions* (1971) .......................................... 8, 18

Norman J. Singer, *Statutes and Statutory Construction* at § 47.33 (6th ed. 2000) ........................... 9

465885v3

The Baupost Group, LLC and Abrams Capital, LLC (collectively, the "Appellees"), appellees in the above-captioned appeal, respectfully submit this brief, in accordance with Rule 8010 of the Federal Rules of Bankruptcy Procedure ("FRBP")[1] and in response to the Opening Brief (the "Appellants' Brief") submitted by appellants JPMorgan Chase Bank, N.A. ("JPMC") and certain holders of claims arising out of the so-called Choctaw/Zephyrus Transactions (the "Choctaw/Zephyrus Appellants" and, with JPMC, the "Appellants").[2]

## I.

## STATEMENT OF JURISDICTION, ISSUES ON APPEAL, AND STANDARD OF REVIEW

The Appellees agree with the Appellants' statement of jurisdiction. The Appellees do not present any additional issues on appeal. The Appellees agree with the Appellants that issues of contract interpretation are issues of law subject to *de novo* review by this Court.

## II.

## PRELIMINARY STATEMENT

The Appellants seek the reversal of the Order so that the Cherokee Claim and the EFP Claims can benefit from the subordination provisions of the TOPRS Indenture and the 1987 Indenture and thereby dilute distributions to creditors who, unlike the Appellants, do hold claims that constitute "Senior Indebtedness" under those Indentures. The benefit the Appellants improperly sought below is the diversion of millions of dollars that would otherwise go to all holders of "Senior Indebtedness", including the Appellees.

The Bankruptcy Court, in its carefully considered, 44-page Opinion (*see* AA Tab 2), concluded that, as a matter of contract, the Appellants' claims were not entitled to benefit from subordination under the TOPRS Indentures because such claims did not constitute "Senior

---

[1]    To the extent that section 2.C of the Individual Practices of this Court applies to appellate briefs otherwise governed by FRBP 8010, the Appellees respectfully request leave to exceed the 25-page limit set forth in section 2.C.

[2]    All terms not otherwise defined herein have the same meanings as those defined in the Appellants' Brief.

1

Indebtedness" as that term is defined in the TOPRS Indentures. Specifically, the Bankruptcy Court held that the indebtedness relating to the Cherokee Claim and the EFP Claims did not constitute such "Senior Indebtedness," because the underlying notes had not been sold by Enron and, under the TOPRS Indentures, "notes," as well as "bonds," "debentures," and "other securities" had to be "sold by" Enron in order to qualify as "Senior Indebtedness." *See* AA Tab 2 at 24-25.

The Bankruptcy Court further held that that the EFP Claims did not qualify as "Senior Indebtedness" under the 1987 Indenture because on the relevant date EFP was a "Subsidiary" of Enron as that term is defined in the 1987 Indenture. AA Tab 2 at 22. In support of its conclusion the Bankruptcy Court determined that limited liability companies were included within the definition of "corporation" as defined in the 1987 Indenture. *Id.* at 19.

The Appellants argue that the Bankruptcy Court erred in interpreting the language of the TOPRS Indentures because of the so-called "last antecedent rule" and because the Bankruptcy Court's interpretation purportedly leads to an "absurd" result. The Appellants' arguments are, however, untenable. <u>First</u>, as illustrated by the very cases cited by the Appellants, that "rule" is a canon of ***statutory construction*** which, with the exception of a single, 65-year old trial court decision, has not, to Appellees' knowledge, ever been applied by a court applying New York law (which governs the TOPRS Indentures) to the interpretation of a ***contract***; and the Appellants fail to show that the "last antecedent rule" even applies under New York law regarding contractual subordination provisions.

Even if the "last antecedent rule" applies to the interpretation of contracts under New York law (a questionable proposition), the "rule" does not apply to the TOPRS Indentures, because the natural reading of the definition of "Senior Indebtedness" is to apply the qualifying term "sold" to "notes, bonds, debentures and other securities", and not just to "other securities." The two Supreme Court cases cited by the Appellants involved statutes with materially different sentence structures; unlike the applicable provisions in those cases, there is no word or comma between the "last antecedent" phrase – "or other securities" and "notes," "bonds," and "debentures." In contrast, faced with language which, like that here, contained no separating

2

word or punctuation other than an "or" before the last phrase, the Supreme Court in *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515 (1971), declined to apply "last antecedent rule."

<u>Second</u>, the Appellants' "absurdity" argument has it backwards – the plain language of the TOPRS Indentures requires that "notes" be "sold for money borrowed"; and it is the Appellees who argue for a commercially unreasonable result by advocating an artificial distinction between "notes," "bonds" and "debentures," on the one hand, and "other securities" (which also must constitute "indebtedness"), on the other, for which they can offer no plausible justification that makes any sense. There is nothing commercially unreasonable or absurd about limiting the categories of debt instruments that will benefit from a contractual subordination provision. In fact, the various Enron subordination agreements contain wildly different definitions of "Senior Indebtedness," which shows that the plain language of the TOPRS Indentures themselves do not and cannot lead to "absurd results."

The Appellants also argue that the Bankruptcy Court erred in holding that EFP was a "Subsidiary" under the 1987 Indenture because Enron and/or its affiliates did not have voting control of EFP as of the Petition Date, and because the 1987 Indenture does not expressly list limited liability companies as one of the organizational structures that qualify under the definition of "corporation."

The Appellants' first argument looks to the wrong section of the 1987 Indenture, erroneously relying upon Section 1302(b), when it is Section 1303 that governs any right to subordinate a payment made under the Enron Plan. Section 1303 of the 1987 Indenture clearly and unequivocally provides that the date of <u>asset distribution</u> in a reorganization proceeding is the relevant date for determining subordination rights with respect thereto, which is precisely what the Bankruptcy Court concluded. *See* AA Tab 2 at 21; *see also* AA Tab 7 at 80-82. The Appellants' overreaching reliance on Section 1302(b) insinuates that the occurrence of a payment default could permanently vest a party with subordination rights, <u>regardless of subsequent events</u>. The express terms of the 1987 Indenture directly contradict this acquisitive reading of Section 1302(b).

3

465885v3

The Appellants' second argument ranges even further afield, stringing together faulty logic and inapplicable New York law in an attempt to manufacture meaning from the absence of the term "limited liability company" in the 1987 Indenture definition of "corporation." The 1987 Indenture does not mention limited liability companies because <u>Texas (and New York) did not enact statutes recognizing limited liability companies until years after the 1987 Indenture was drafted</u>.  This simple truth validates the Bankruptcy Court's conclusion that the 1987 Indenture definition of corporation includes limited liability companies such as EFP.

## III.

## <u>STATEMENT OF THE CASE</u>

The Appellees generally agree with the Appellants' statement of the case.  *See* Appellants' Brief at 5-13.  There are, however, several important undisputed facts that the Appellants neglected to bring to this Court's attention that have relevance to the issues on appeal.

<u>First</u>, even though this appeal concerns the issues whether the Appellants' claims constitute "Senior Indebtedness" under the TOPRS Indentures and the 1987 Indenture, the dispute before the Bankruptcy Court also addressed a third set of subordinated loan agreements – the "Loan Agreement", dated November 15, 1993, between Enron and Enron Capital LLC (the "<u>1993 Loan Agreement</u>"), and the "Loan Agreement", dated August 3, 1994, between Enron and Enron Capital Resources, L.P. (the "<u>1994 Loan Agreement</u>").[3]  The definition of "Senior Indebtedness" in the 1993 Loan Agreements and the 1994 Loan Agreements is substantially different from, and broader than, the definitions of "Senior Indebtedness" set forth in the TOPRS Indentures and the 1987 Indenture.  Specifically, the 1993 Loan Agreement and the 1994 Loan Agreement contain the following (effectively identical) definitions of "Senior Indebtedness":

> Enron and [counterparty] covenant and agree, and the holders of the Preferred Shares (and any trustee appointed by such holders) by their acceptance of such Preferred Shares likewise agree, that the Loans are subordinate and junior in right of payment to all Senior Indebtedness as provided herein.  The term "Senior Indebtedness" shall mean the principal, premium, if any, and interest on (i) all indebtedness of Enron, whether outstanding on

---

[3]  The 1993 Loan Agreement is attached at Tab A of the Appellees' Appendix ("<u>AX</u>") and the 1994 Loan Agreement is attached at Tab B of the AX.

the date hereof or hereafter created, incurred or assumed, which is for money borrowed, or evidenced by a note or similar instrument given in connection with the acquisition of any business, properties, or assets, including securities, (ii) any indebtedness of others of the kinds described in the preceding clause (i) for the payment of which Enron is responsible or liable (directly or indirectly, contingently or non-contingently) as guarantor or otherwise, (iii) any indebtedness secured by a lien upon property owned by Enron and upon which indebtedness Enron customarily pays interest, even though Enron has not assumed or become liable for the payment of such indebtedness and (iv) amendments, renewals, extensions and refundings of any such indebtedness, unless in any instrument or instruments evidencing or securing such indebtedness or pursuant to which the same is outstanding, or in any such amendment, renewal, extension or refunding, it is expressly provided that such indebtedness is not superior in right of payment to the Loans.

AX Tab A at 5-6; AX Tab B at 4-5.

The Bankruptcy Court held that the plain language of the subordination provisions of the 1993 Loan Agreement and the 1994 Loan Agreement was sufficiently broad that certain claims not qualifying as "Senior Indebtedness" under the TOPRS Indentures and the 1987 Indenture, including claims held by the Appellants, were "Senior Indebtedness". *See* AA Tab 2 at 30-31. The broadly worded definition would mean that even claims held by affiliates or directors and officers could constitute "Senior Indebtedness". *See id.* at 31 n.10. Importantly, this broad language contrasts markedly with the narrow definition of "Senior Indebtedness" in the TOPRS Indentures and the 1987 Indenture.

Second, the Appellants did not appeal from the Order as it related to those LOC Claims they held (as that term is defined in the Opinion, *see* AA Tab 2 at 5).[4] Pursuant to the Order, the Bankruptcy Court concluded that the LOC Claims did not constitutes "Senior Indebtedness" under the TOPRS Indentures on the same grounds that the Bankruptcy Court concluded that the Cherokee Claim and the EFP Claims did not constitute "Senior Indebtedness" under the TOPRS Indenture. *See* AA Tab 2 at 42-43.[5] Thus, to reverse the Order as to the

---

[4]   Even though the Appellants did not appeal from the Order as it related to the LOC Claims, JMPC filed a response to the Appellees' objections to the inclusion of LOC Claims on Schedule S. *See* AX Tab 3.

[5]   As noted in note 18 of the Opinion, the Bankruptcy Court did not believe it needed to address additional arguments for removing the LOC Claims from Schedule S that had been raised by the Appellees. *See* AA Tab 2 at 43 n.18.

treatment of the Cherokee Claim and the EFP Claims under the TOPRS Indenture would create an inconsistency with respect to the treatment of the LOC Claims.

Third, the Appellants do not attempt to argue that the Cherokee Claim or the EFP Claims reflect indebtedness "sold" by Enron. This failure on the part of the Appellants is relevant to the issue whether the Cherokee Claim or the EFP Claims constitute "Senior Indebtedness" under the TOPRS Indentures.

Fourth, the Appellants do not argue on appeal that the provisions of the TOPRS Indentures or the 1987 Indenture are ambiguous.

## IV.

## ARGUMENT

**A.     Applicable State Law Controls The Interpretation Of The Subordination Provisions In The TOPRS Indentures And The 1987 Indenture.**

The issues on appeal concern the interpretation of contractual subordination provisions. Under section 510(a) of the Bankruptcy Code, a "subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a). Contract law is the "applicable nonbankruptcy law" under Bankruptcy Code section 510(a). *See, e.g., In re Best Prods. Co.*, 168 B.R. 35, 69 (Bankr. S.D.N.Y. 1994). The "contract law" that controls the TOPRS Indentures is New York contract law. *See* AA Tab 5 at 11; AA Tab 6 at 11. The "contract law" that controls the 1987 Indenture is Texas law. *See* AA Tab 7 at 13.

**B.     The Cherokee Claim And The EFP Claims Do Not Qualify As "Senior Indebtedness" Under The TOPRS Indentures.**

The Appellants' lead argument in support of their challenge to the Bankruptcy Court ruling that the Cherokee Claim and the EFP Claims are not "Senior Indebtedness" under the TOPRS Indentures is that the Bankruptcy Court failed to apply the so-called "last antecedent rule" argument. *See* Appellants' Brief at 15-18.[6] However, they cite no case applying New York

---

[6]     The Appellants hardly addressed the "last antecedent rule" issue below – JPMC mentioned the argument in one line in its brief filed with the Bankruptcy Court without any case citations, and the Choctaw/Zephyrus Appellants failed to mention it in their joinder. *See* AX Tabs C and D. Even during oral argument, the only case brought to the Bankruptcy Court's attention regarding that "rule" was *Groupo Condumex v. SPX Corp.*, 163 F.Supp.2d 857

6

law which has applied this "rule" to interpret a contract. As demonstrated below, it is likely that New York law does not even apply the "last antecedent rule" in contractual subordination disputes but, even if New York applied the "rule" to contract interpretation, it is clear that the "rule" has no application here.

The Appellants' backup argument is a threadbare assertion that the Bankruptcy Court's plain meaning analysis would lead to "absurd results." *See* Appellants' Brief at 18-20. As demonstrated below, the Bankruptcy Court's interpretation is commercially reasonable, is fully consistent with the rule strictly construing contractual subordination provisions, and avoids the artificial distinction in the treatment of different types of debt securities for purposes of determining "Senior Indebtedness" that would result from the Appellants' position. Further, the Appellants' attempted "absurdity" argument requires this Court examine documents that are outside the record of this appeal and were never presented to the Bankruptcy Court.

1.    **The "Last Antecedent Rule" Does Not Appear To Apply To Disputes Under New York Law Regarding Contractual Subordination Provisions.**

The first flaw in the Appellants' argument is the total failure to discuss New York law and, specifically, whether under New York law the "last antecedent rule" even applies to contract interpretation questions. Even though the Appellants recognize that the issue here is one of contract interpretation, not a single case cited by the Appellants on this point involves the interpretation of a contract, much less New York contract law.

Not all jurisdictions apply the "last antecedent rule". Some states, like Maryland, have not adopted that rule. *See Philadelphia Indemnity Ins. Co. v. Maryland Yacht Club, Inc.*, 129 Md. App. 455, 742 A.2d 79, 92 (1999) ("Maryland never adopted this [last antecedent] rule of construction."). Other states, such as Kansas, have expressly stated that the rule may be used solely as a tool of statutory construction, and not a tool to aid contract interpretation. *See Falley's, Inc. v. Burke Fin. Corp.*, 763 P.2d 18, 1987 Kan. App. LEXIS 1247 *1, *4-*5(1987)

---

(N.D. Ohio 2001), *see* AX Tab E at 58, a decision that was not cited in the Appellants' Brief. In fact, every "last antecedent rule" case cited in the Appellants' Brief was not mentioned by either Appellant below.

("We know of no Kansas case authority applying the [last antecedent] rule to contract or other non-statutory interpretation or construction.").

Courts applying New York law generally have used the "last antecedent rule" only with respect to statutory construction cases. *See Kucher v. DaimlerChrysler Corp.*, 802 N.Y.S.2d 298, 9 Misc.3d 45, 2005 N.Y. Misc. LEXIS 1343 (2005) (applying rule to New York "lemon law" statute); *Smith v. Whitney*, 273 N.Y.S. 822, 152 Misc. 538, 1934 N.Y. Misc. LEXIS 1561 (1934) (applying rule to New York statute). There appears to be no case under New York law extending the rule to the interpretation of contractual subordination provisions, and only a lone, 65-year old trial court decision applying the rule to a contract – which recognized that the rule was not absolute.[7] There is little reason to believe that New York law would apply the "last antecedent rule" to interpretations of contractual subordination provisions in a manner that broadens the universe of debt obligations benefiting from contractual subordination. It is a well settled principle of contract law that contractual subordination provisions are *strictly construed against* the beneficiary of subordination. *See, e.g., Resolution Trust Co. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) ("the law is well settled that rights of priority under [a subordination agreement] extend to and are limited strictly by the express terms and conditions of the agreement.") (citations omitted); *Marriott Family Restaurants, Inc. v. Lunan Family Restaurants (In re Lunan Family Restaurants)*, 194 B.R. 429, 445 (Bankr. N.D. Ill. 1996); *cf. Bankers Life Co. v. Manufacturers Hanover Trust Co. (In re Kingsboro Mortg. Corp.)*, 514 F.2d 400 (2d Cir. 1975); *see also* American Bar Foundation Corporate Debt Financing Project, *Commentaries on Model Debenture Indenture Provisions* ("ABA Commentaries") at 567 (1971) ("[A] careful analysis of what is or is not included in the definition of 'Senior Debt' is of paramount importance to any potential lender, senior or junior. The exact wording of the

---

[7]   The only case thus far located applying the "last antecedent rule" to interpretation of a contract under New York is *Taylor v. Prudential Life Ins. Co.*, 253 N.Y.S. 55, 142 Misc. 94, 1931 N.Y. Misc. LEXIS 1762 (1931), a trial court case involving interpretation of an insurance policy's exclusion. No court has cited *Taylor* for the proposition that the "last antecedent rule" extends to contract interpretation. But even if *Taylor* correctly states New York law, it recognizes that the "last antecedent rule" is not absolute. *See id.*, 1931 N.Y. Misc. LEXIS at *10-*11.

definition will determine the type and amount of senior debt which will be entitled to the benefits of the subordination.").

Because the Appellants have failed to identify any cases applying New York law extending the "last antecedent rule" to a contractual subordination dispute, this Court should reject their attempt to extend that rule to the interpretation of such a provision under New York law.

### 2.    Even If The Last Antecedent Rule Has Any Applicability To Contracts Governed By New York Law, It Does Not Apply Here.

Assuming arguendo that the "last antecedent rule" extends to interpretation of the subordination provisions of the TOPRS Indentures, the Bankruptcy Court did not err in concluding that the phrase "sold by [Enron] for money borrowed" applies to "notes, bonds, debentures or other securities" as set forth in the TOPRS Indentures.

It is well settled that the "last antecedent rule," if applicable at all, is not an absolute; it is merely used as "an aid to discover the intent or meaning of a statute and not as a dispositive tool."  *Anderson v. Ford Motor Co.*, 303 F. Supp. 2d 1253, 1256 (W.D. Okla. 2004) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987) and Norman J. Singer, *Statutes and Statutory Construction* at § 47.33 (6th ed. 2000)); *see also Nobelman v. American Sav. Bank*, 508 U.S. 324, 330-31, 113 S.Ct. 2106, 2111 (1993) (even though applying "last antecedent rule" is sensible as a matter of grammar, "it is not compelled" and was not applicable to the statute at issue).

Courts will not apply the "last antecedent rule" if the meaning of the entire section indicates that the qualifying phrase is intended to apply to several preceding terms or phrases. *See United States v. Bass*, 404 U.S. 336, 339-40, 92 S.Ct. 515, 518 (1971); *Anderson*, 303 F. Supp. 2d at 1256; *PPM Finance, Inc. v. Norandal USA, Inc.*, 297 F. Supp. 2d 1072, 1083 (N.D. Ill. 2004).  In *Barnhart v. Thomas*, 540 U.S. 20, 124 S.Ct. 376 (2003), a case heavily relied upon by the Appellants, the Supreme Court expressly recognized that the "this rule is not absolute and can assuredly be overcome by other indicia of meaning . . . ." *Id.*, 540 U.S. at 26; *see also In re Envirodyne Indus., Inc.*, 29 F.3d 301, 305 (7th Cir. 1994) (interpreting subordination provision,

9

court stated: "It is commonplace to set off a series with commas and have a phrase *at the end qualifying the entire series rather than just the last entry in it.*") (emphasis added).

Here, the entire definition of "Senior Indebtedness",[8] read in the context of several well-settled rules of contract interpretation, supports the Bankruptcy Court's conclusions. That definition qualifies the term "indebtedness" with the operative phrase "evidenced by notes, bonds, debentures or other securities". "Bonds" and "debentures" are typically viewed as debt securities that are sold by a debtor, usually to public investors. While a "note" may or may not be a debt security depending on the context, the phrase "[n]otes, bonds, debentures or other securities" as used in the TOPRS Indentures strongly suggests that the term "notes" was intended to mean a type of debt security similar in nature to a bond or debenture.

The next question is whether the term "notes," as used in this provision, is similar in nature to the term "other securities." The interpretation principles of *ejusdem generis* and *noscitur a sociis* apply with full force here. *Ejusdem generis* states that general words are construed to embrace only objects similar in nature to those enumerated by the preceding specific words. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63, 124 S.Ct. 2373, 2379 (2004) ("the interpretative canon of *ejusdem generis* would attribute to the last item the same characteristic of discreteness shared by all the preceding items."); *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 438 (1994) (applying *ejusdem generis* to determine meaning of "willful acts" in insurance contract). *Noscitur a sociis* dictates that words "'grouped in a list should be given related meaning.'" *Wojchowski v. Daines*, 498 F.3d 99, 108 n.8 (2d Cir. 2007) (quoting *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990)).

Treating "notes" as similar to "other securities" is buttressed by the fact that "capitalized lease obligations" are treated as "Senior Indebtedness" but are expressly <u>separated</u>

---

[8]  The relevant portion of the definition of "Senior Indebtedness" is: "The principal of, premium, if any, interest on and any other payment due pursuant to any of the following, whether outstanding at the date hereof or hereafter incurred, created or assumed: (i) all indebtedness of the Company (other than any obligations to trade creditors) evidenced by notes, debentures, bonds or other securities sold by the Company for money borrowed and capitalized lease obligations . . . ."
AA Tab 5 at 6; AA Tab 6 at 6

10

from "notes", "bonds", "debentures", and "other securities" "sold by" Enron "for money borrowed". *See* AA Tab 5 at 6; AA Tab 6 at 6. The fact that "capitalized lease obligations" can qualify as "Senior Indebtedness" but are <u>not</u> required to be "sold by" Enron, suggests that everything before the "sold" qualifier is similar in nature and is required to be "sold" in order to fall within the definition of "Senior Indebtedness."

Then the question is whether "sold" qualifies "notes, bonds, debentures or other securities" rather than qualifying only the term "other securities." The answer must be yes. The phrase "or other securities" is connected to the prior terms without being interrupted by a word or punctuation mark. In *United States v. Ron Pair Enters., Inc.*, 489 U.S. 236, 109 S.Ct. 1026 (1989), the Supreme Court held that a comma in 11 U.S.C. § 506(b) separating "interest on such claim" from "fees, costs, or charges" meant that the qualifying phrase "provided for under an agreement" did not apply to "interest on such claim." *Id.*, 489 U.S. at 241-42.[9] Here, in contrast, there is <u>no</u> comma separating "other securities" from "notes," "bonds", and "debentures."

Moreover, reading the entire "evidenced by" qualification as a whole, it is logical to require the "indebtedness" evidenced by "notes," "bond," "debentures" or "other securities" to be "sold by" Enron. The Appellants concede that at least "other securities" must be "sold" by Enron. As noted above, "bonds" and "debentures" typically are sold. Applying the doctrine of *ejusdem generis*, the only rational reading of the clause is to treat "notes" as a subset of "other securities" "sold by" Enron; *see also Envirodyne Indus., Inc.*, 29 F.3d at 305.

The decision in *Texas Sav. & Community Bankers Ass'n v. Federal Housing Finance Bd.*, 1998 U.S. Dist. LEXIS 13470 (W.D.Tex. 1998), is instructive. In *Texas Sav.*, the district court examined a statute that used the phrase "mortgages, obligations, or other securities .

---

[9]    Section 506(b) the Court in *Ron Pair* considered read as follows: "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges, provided for under the agreement under which such claim arose." *Ron Pair*, 489 U.S. at 241 (quoting 11 U.S.C. § 506(b)).

Though the *Ron Pair* Court did not expressly address the "last antecedent rule," the Court necessarily concluded the rule did not apply because the qualifying phrase " provided for under the agreement under which such claim arose" *did apply* to "fees, costs, or charges," and not just "charges." *Id.* Had the "last antecedent rule" applied as advocated by the Appellants, the qualifying phrase would have applied only to "charges."

. . ." *Id.* at *20. The court concluded that, as used in the statute, "mortgages" and "obligations", were subsets of "other securities" because they were the most common form of securities sold by Freddie Mac. *See id.* at *23. Here, "notes", "bonds", and "debentures" are obviously common forms of debt securities which are "sold."

Even though, pursuant to the *ejusdem generis* and *noscitur a sociis* doctrines, the term "notes" must be similar in nature to "bonds", "debentures", or "other securities", the Appellants necessarily seek to treat "notes" in a manner that they need not be "sold" to qualify as "Senior Indebtedness". Had the TOPRS Indentures been intended to operate in such a manner, one would have reasonably expected the term "notes," like the term "capitalized lease obligations," to *follow* the qualifying term "sold." Further, the word "other" preceding "securities" would be entirely superfluous. *See* AA Tab 2 at 24, 28 n.8.

The Appellants argue that two United States Supreme Court decisions construing statutes support their attempted to require application of the "last antecedent rule" to this contract dispute. *See* Appellants' Brief at 16-18. Because of the material differences in the relevant language and sentence structure, however, each of those cited cases is distinguishable and inapposite. In *Federal Trade Comm'n v. Mandel Bros., Inc.*, 359 U.S. 385, 79 S.Ct. 818 (1959), the petitioner charged that respondent violated the Fur Products Labeling Act. One of the alleged violations related to respondent's invoices. The statute defined "invoice" to mean:

> A written account, memorandum, list, or catalog, which is issued in connection with any commercial dealing in fur products or furs, and describes the particulars of any fur products or furs, transported or delivered to a purchaser, consignee, factor, bailee, correspondent, or agent, or any other person who is engaged in dealing commercially in fur products or furs.

*Id.*, 359 U.S. at 386. The Court in *Mandel Bros.* examined whether the phrase "engaged in dealing commercially in fur products or furs" modified only "any other person" or modified the preceding terms, including "purchaser." *Id.*, 359 U.S. at 389. Acknowledging it was a "possible construction" that the phrase modified the term "purchaser," the Court nonetheless limited the phrase to "any other person." *Id.*

12

Importantly, the statutory language in *Mandel Bros* was constructed in a materially different way that (a) is not present in the TOPRS Indentures and (b) by separating the "last antecedent" phrase from prior terms, supported application of the "last antecedent rule." In *Mandel Bros*, there were <u>two</u> "ors," not one (as here); further, unlike the language here, a comma set off the phrase "or any other person who is engaged in dealing commercially with fur products or furs" from the preceding language. As quoted above, the definition of "invoice" included the following language after the term "purchase":

> purchaser, consignee, factor, bailee, correspondent, *or* agent, *or* any other person who is engaged in dealing commercially in fur products or furs.

*Id.*, 359 U.S. at 386 (emphasis added). By placing an "or" before "agent" <u>and</u> before "any other person who is engaged in dealing . . ." the statute's natural reading is to separate "any other person" from "purchaser, consignee, factor, bailee, correspondent, or agent", which means that the qualifying phrase would apply only to "any other person." Otherwise, the first "or" would be superfluous. Such a sentence structure is absent in the TOPRS Indentures.[10] Had the sentence structure in *Mandel Bros.* been present in the TOPRS Indentures, the definition of the "Senior Indebtedness" would have read as follows (added language bracketed, bolded and italicized): "all indebtedness of the Company (other than any obligations to trade creditors) evidenced by notes, debentures, *[or]* bonds[,] or other securities sold by the Company for money borrowed and capitalized lease obligations".

The Appellants' reliance on *Barnhart* is equally misplaced. In *Barnhart*, the plaintiff sued the Social Security Administration, claiming eligibility for disability benefits. The

---

[10] Further, the actual issue in *Mandel Bros.* was whether the "invoice" definition was inapplicable to "retail sales." *Id.*, 359 U.S. at 390. It was this issue – not the issue whether the "last antecedent rule" applied – that led the Court to state: "We think it would be a partial mutilation of this Act to construe it so that the 'invoice' provisions were inapplicable to retail sales.'" *Id.*, 359 U.S. at 389-90. The Court correctly explained that would make little sense to extend the phrase "engaged in dealing commercially in fur products or furs" to "purchasers" because it would result in construing "invoices" to be excluded from the definition of "retail sales", a result that made little sense. *Id.*, 359 U.S. at 390. "If we held that Congress, in spite of its desire to protect consumers, withheld from them the benefits of reliable invoices, we would have to read the clauses of § 3 distributively, making only some of them applicable to retail sales." *Id.*

13

statute at issue provided that an individual was deemed to be eligible for benefits "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do so his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 540 U.S. at 378. The plaintiff argued that the phrase "which exists in the national economy" qualified "unable to do his previous work"; the government argued that the phrase qualified only "any other kind of substantial gainful work." Not surprisingly, the Supreme Court held that the phrase "which exists in the national economy" qualified only "any other kind of substantial gainful work" and not "previous work." *Id.*, 540 U.S. at 381.

The language and sentence structure in *Barnhart* was radically different from that contained in the provision of the TOPRS Indenture at issue here. Among other differences, the qualifying language in *Barnhart* was placed after a "but", which is entirely absent from the TOPRS Indentures. The chart below shows the distinctions. The underlined language shows the qualifying language at issue. The bolded language shows what is being modified:

| *Barnhart* Statute | TOPRS Indentures |
|---|---|
| "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do so his previous work **but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work** which exists in the national economy" | "all indebtedness of the Company (other than any obligations to trade creditors) **evidenced by notes, debentures, bonds or other securities** sold by the Company for money borrowed and capitalized lease obligations" |

As is plainly evident, the use of the word "but" in the statute at issue in *Barhart* necessarily separated the phrase "any other kind of substantial gainful work" from "previous work." There is nothing remotely similar in the TOPRS Indenture.

The Supreme Court has had little trouble refusing to apply the "last antecedent rule" where, as here, the operative language does not support the application of that non-absolute "rule." The Supreme Court's decision in *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515 (1971), is instructive. In *Bass*, the defendant was convicted of violating a statute that provided that any one of five classes of individuals "who receives, possesses, or transports in commerce or

affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both." *Bass*, 404 U.S. at 337 (ellipses in original). The government did not show that the defendant had possessed a firearm "in commerce or affecting commerce." *Id.*, 404 U.S. at 338. The defendant argued that the phrase "in commerce or affecting commerce" applied to "receives", "possesses", and "transports." The government, asserting the "last antecedent rule", argued that the phrase qualified only "transports."

      The Supreme Court rejected the government's contention, and refused to apply the "last antecedent rule." First, the Court stated:

> While the statute does not read well under either view, the "natural construction of the language" suggests that the clause "in commerce or affecting commerce" qualifies all three antecedents in the list. *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920). Since "in commerce or affecting commerce" undeniably applies to at least one antecedent, and since it makes sense with all three, the more plausible construction here is that it in fact applies to all three.

*Id.*, 404 U.S. at 339-40. The Court further explained that it favored the defendant's position because the government's position would make it easier for a person to incur criminal liability. *Id.*, 404 U.S. at 347. The Supreme Court has in other circumstances had little trouble rejecting application of the "last antecedent rule" even though it would be "quite sensible as a matter of grammar." *Nobelman v. American Sav. Bank*, 508 U.S. 324, 330, 113 S.Ct. 2106 (1993).

      Applying the rationale of *Bass* to the facts here, it is clear that the Bankruptcy Court correctly declined to apply the "last antecedent rule." Similar to the statute in *Bass*, it is a natural reading of the language in the TOPRS Indentures that the consecutive terms "notes", "bonds", "debentures" and "other securities" each be qualified by "sold," especially when: (a) the four items are similar in nature; (b) at least one of which must be qualified by "sold"; and (c) all four items are separate from capitalized lease obligations, which expressly are not subject to the "sold" requirement but still qualify as "Senior Indebtedness."[11] Had the TOPRS Indentures been intended <u>not</u> to require "notes" to be "sold by", the natural placement of the term "notes" would

---

[11]  In fact, the word "other" present in the TOPRS Indentures, which is not present in the *Bass* statute, is even further evidence that the *Bass* conclusion applies here.

have been after the "sold" clause, as in the case of capitalized lease obligations. Further, the strict construction of contractual subordination provisions is analogous to interpreting criminal statutes in favor of the defendant, as in *Bass*.

### 3. The Appellants' "Absurdity" Argument Is Meritless.

The Appellants' second argument with respect to the TOPRS Indentures is that the Bankruptcy Court's conclusions leads to an "unusual result." Appellants' Brief at 18. The Appellants argue that the definition of "Senior Indebtedness" is not ordinary, *see id.* at 19, and would lead to the exclusion "of virtually all bank debt and other debt that is 'issued' rather than 'sold' . . . ." *Id.* It is, of course, exceptionally rare for a court to disregard the plain meaning of a contract (especially when negotiated between sophisticated parties) on "absurdity" or "unusualness" grounds. *See Kenilworth Realty Trust v. Bankers Trust Co.*, 447 N.Y.S.2d 210, 212, 112 Misc.2d 523 (1982) (court rejected plaintiff's interpretation of unambiguous lease provision where accepting plaintiff's position would be contrary to 25 years of "of history of practical construction to the contrary."). The Appellants' arguments that this is such an exceptional case because the Bankruptcy Court's interpretation will lead to an absurdity, an injustice, or an unusual result, are without merit, for three reasons.

### a. The Bankruptcy Court's Interpretation Of The TOPRS Indentures Does Not Lead To Commercially Absurd Results.

The fact that the definition of "Senior Indebtedness" in the TOPRS Indentures may result in a more restrictive definition of "Senior Indebtedness" than may be typical, does not make the Bankruptcy Court's interpretation of that unique language commercially unreasonable and creates no injustice whatsoever; moreover, the language itself does not lead to an absurd result. To begin with, as stated above, subordination provisions are strictly construed *against* beneficiaries of subordination. Thus, the Bankruptcy Court's interpretation is entirely consistent with principles of interpretation of contractual subordination provisions.

Moreover, an examination and comparison of the three sets of subordination provisions presented to the Bankruptcy Court demonstrates that the TOPRS Indentures' definition of "Senior Indebtedness", while in some ways more restrictive, is not unreasonable or

465885v3

absurd. The chart below summarizes the three sets of subordination provisions:

| Provision | 1987 Indenture (AA Tab 7) | TOPRS Indentures (AA Tabs 5 and 6) | 1993 Loan Agreement<br><br>1994 Loan Agreement<br>(AX Tabs A and B) |
|---|---|---|---|
| Definition of "Senior Indebtedness" | Bonds, debentures, notes and "other instruments" representing obligations created or assumed by any such corporation for the repayment of money borrowed<br><br>Express inclusion of "Senior Bank Debt" | Notes, debentures, bonds or "other securities" "sold" by Enron for "money borrowed";<br><br>Capitalized lease obligations;<br><br>Guarantees of indebtedness that fall into the prior categories; and<br><br>Renewals, extensions or refundings of the preceding | Indebtedness created/incurred assumed for money borrowed<br><br>Indebtedness created/incurred assumed evidenced by note or similar instrument for acquisition of assets/securities<br><br>Any guarantees or contingent obligations similar to the foregoing<br><br>Secured debt in which Enron customarily pays interest |
| Express Exclusions | 8 express categories, including:<br>• Employee compensation<br>• Ordinary course obligations<br>• "Indebtedness" owed to a "Subsidiary"<br>• Capital lease obligations | Trade creditor claims | No express exclusions |
| Separate definition of "indebtedness" | Yes | No | No |

Thus, the Loan Agreements have an unusually broad definition of "Senior Indebtedness" – there are no express exclusions, and, according to the Bankruptcy Court, the definition even includes obligations owed to insiders and trade creditors. The language in the

Loan Agreements is unusual by favoring *more* types of obligations qualifying as "Senior Indebtedness."

The 1987 Indenture's definition of "Senior Indebtedness" has express exclusions, some of which are different than the express provisions of the TOPRS Indentures. For example, capitalized lease obligations are expressly *included* in the definition of "Senior Indebtedness" in the TOPRS Indentures but are expressly *excluded* from the definition of "Senior Indebtedness" in the 1987 Indenture.

The Appellants cannot legitimately argue that the more restrictive definition of "Senior Indebtedness" is commercially unreasonable in the face of the materially different definitions used in the various Enron subordination provisions. *See* ABA Commentaries at 565 ("A review of currently outstanding indentures will reveal *wide variations* among such definitions [of Senior Debt.]"). It is not surprising that the Appellants are not able cite a single case where a court applying New York contract law departed from the plain meaning of a contractual subordination provision on absurdity grounds, and there is no such case remotely close to the facts here that supports the Appellants' position.

### b.   The Appellants' "Bank Debt" Argument Lacks Any Support In Law Or Fact.

The Appellants contend that the Bankruptcy Court's interpretation would result in the exclusion of bank debt from the applicable subordination provision. The Appellants make this argument even as they concede that no bank debt was excluded from Schedule S as it relates to the TOPRS Indentures. *See* Appellants' Brief at 19 n.11.

There are several fatal flaws with the Appellants' argument. <u>One</u>, it is based on pure speculation regarding the treatment of Enron's "bank debt" under the TOPRS Indentures. None of the documents relating to such "bank debt" was ever presented to the Bankruptcy Court, and none of the relevant "bank debt" documents is part of the record in this Appeal.[12] Thus, it is

---

[12]   The Appellees did not believe that the "bank debt" could be excluded from the TOPRS Indentures, and, in response to the clarification motion filed by Enron (*see* Appellants' Brief at 19 n.11), the Appellees indicated that they reserved any rights to object to any attempted exclusion of bank debt.

inappropriate for the Appellants to ask this Court to engage in speculation about documents and transactions that are not before it. *See Kabayan v. Yepremian (In re Yepremian)*, 116 F.3d 1295, 1297 (9th Cir. 1997) (depositions taken after grant of summary judgment were not before the trial court when it ruled on the motion for summary judgment and are not part of the record on appeal); *In re Green*, 252 B.R. 769 (B.A.P. 8th Cir. 2000) (documents not presented to the bankruptcy court for its determination may not be included in the record on appeal).

Two, the Appellants grossly overstate the purported "unusualness" that results from the Bankruptcy Court's conclusion: in the vast majority of cases, the types of obligations that typically are "Senior Indebtedness" – notes, bonds and debentures held by banks, insurance companies, other financial institutions, and public debt investors (*see* Appellants' Brief at 19) – were "sold" by Enron and correctly included on Schedule S. In fact, the few claims based on notes that were excluded from Schedule S, such as those held by the Appellants, are not the types of claims typically held by a wide array of financial institutions. The Choctaw and Zephyrus Transactions, though "enormously complex" (Appellants' Brief at 7 n.7), generally involved only Enron, certain affiliates of Enron, and a limited number of other entities. The claims held by the Appellants do not appear to be claims that were even "issued" to financial institutions.[13]

Three, the Appellants certainly knew the difference between a note "sold" by Enron and a note merely "issued" by Enron. As explained by the Bankruptcy Court, in certain transactions related to the Choctaw and Zephyrus Transactions (the so-called Sequoia Transactions), the subject notes expressly stated that they were "sold" by Enron. *See* Opinion at 26. The parties who hold such notes include JPMC. Thus, the Bankruptcy Court stated: "Chase recognized the distinction in the terminology and, at the time it became involved with EFP, it should have considered the import of the language in the TOPRS Indentures and its potential impact on whether any indebtedness for money borrowed or advanced would benefit from subordination." Opinion at 26. The Appellants offer, and have, no response.

---

[13]  The Appellants do not contend that the notes underlying the claims were "sold by" Enron. The documents attached to AA Tab 9, Tab 12, Tab 13, and Tab 14 provide some of the background facts relating to the Choctaw and Zephyrus Transactions.

Four, the inclusion or exclusion of "bank debt" as "Senior Indebtedness" can vary. For example, while the TOPRS Indentures contain no express inclusion of "bank debt", the 1987 Indenture does contain an express inclusion of such debt by name independent of other forms of "Senior Indebtedness." If it is commercially absurd to exclude bank debt from "Senior Indebtedness" (as apparently posited by the Appellants), why would there ever be a need to expressly include bank debt in the definition of "Senior Indebtedness"?

Five, to accept the Appellants' position would create inconsistencies in the implementation of the Order. As explained above, JPMC also holds LOC Claims that were excluded because they were not "sold" by Enron. *See* Opinion at 42-43. The Appellants did not appeal from the Order as it relates to the LOC Claims. The Order is now final and nonappealable as it relates to the LOC Claims. Reversing the Order on the grounds that the term "sold" applies only to "other securities" would create the very absurd result the Appellants claim needs to be reversed.

   c.    **The Appellees' Proposed Limitation Of The "Sold" Requirement To Only "Other Securities" Results In An Anomalous And Unjustified Distinction Between "Other Securities" Which Evidence Indebtedness And Notes, Bonds, And Debentures.**

The Appellants argue that the Bankruptcy Court was required to adopt an interpretation of "Senior Indebtedness" that would not impose the "sold" requirement to notes, bonds, or debentures that evidence "indebtedness," but would impose that requirement on "other securities" that evidence indebtedness. Such a distinction simply makes no sense: the Appellants offer no commercially supportable justification for applying the "sold" requirement to some instruments that evidence indebtedness, but not others.

The Appellants attempt to manufacture such a justification by arguing that it was necessary to add the "sold for money borrowed" qualifier to the phrase "other securities" in order to exclude from "Senior Indebtedness" "indebtedness" arising in connection with other securities, such as equity securities (*e.g.*, obligations to pay dividends on preferred stock and repurchase obligations). *See* Appellants' Brief at 17-18. The fundamental flaw in this theory is that the "sold" qualifier was in no way necessary to ensure that only other debt securities were included

in the definition of "Senior Indebtedness." The Appellants' rationale would render the inclusion "sold" superfluous.

**C.    The EFP Claims Do Not Qualify As "Senior Indebtedness" Under The 1987 Indenture.**

The Appellants contend that the Bankruptcy Court erred in determining that the EFP Claims are indebtedness of Enron to a "Subsidiary" for two reasons. First, the Appellants argue that, pursuant to Section 1302(b) of the 1987 Indenture, the relevant date for determining "Subsidiary" status is the date of a payment default under the ENA Note and the ECIC Demand Note. *See* Appellants' Brief at 20-23. In so doing, the Appellants ignore that Section 1303 of the 1987 Indenture, not Section 1302, governs any subordination right in the event of a dissolution, winding up, liquidation or reorganization of Enron. AA Tab 7 at 80-81 (1987 Indenture at § 1303). Thus, Section 1303 applies to any subordination of payments made pursuant the Plan, and Section 1303 clearly provides that the relevant date for determining subordination rights is the date of any asset distribution.

Second, the Appellants argue that the EFP Claims were not held by a "Subsidiary" because EFP was not a "corporation" for purposes of the 1987 Indenture. *See* Appellants' Brief at 24-25. In so doing, the Appellants cite to inapplicable New York law in an attempt to distort the 1987 Indenture definitions of "corporation" and "Subsidiary." Properly considering the plain meaning of these definitions in conjunction with Texas contract law (which governs the 1987 Indenture) confirms that the Bankruptcy Court correctly found EFP to be a "Subsidiary" under the 1987 Indenture.

**1.    Section 1303 Of The 1987 Indenture Governs Any Right To Subordinate Payments Made Pursuant To A Chapter 11 Plan.**

The payments under the 1987 Indenture that the Appellants are seeking to subordinate are payments to be made pursuant to the Plan. Section 1303 of the 1987 Indenture expressly governs subordination rights "in any dissolution, winding up, liquidation or reorganization for the benefit of creditors of [Enron] (whether in bankruptcy, insolvency or receivership proceedings or upon an assignment for the benefit of creditors or others)." *See* AA

21

465885v3

Tab 7 at 80. Thus, Section 1303 governs any right under the 1987 Indenture to subordinate payments made pursuant to a chapter 11 plan of reorganization (such as the Plan).[14]

Notwithstanding that Section 1303 expressly governs subordination rights under the 1987 Indenture in the event of an insolvency proceeding, the Appellants seek to invoke Section 1302(b), which governs subordination rights in the event of a payment default under the terms of Senior Indebtedness. *Id.* at 79 (1987 Indenture at § 1302(b)). The Appellants claim that Section 1302(b) controls their attempt to benefit from the subordination provisions of the 1987 Indenture because payment defaults occurred under the ENA Note and the ECIC Demand Note shortly before, and on, the Petition Date, respectively. This argument must fail because the specific provisions of Section 1303 control over the general provisions of Section 1302(b).

Texas contract law honors the maxim that, when a contract contains both general and specific provisions dealing with the same subject, the specific provision will control. *See San Antonio v. Heath & Stich, Inc.*, 567 S.W.2d 56, 60 (Tex. App. 1978) (citing authorities). *See also Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-134 (Tex. 1994). In *San Antonio*, the Texas appellate court affirmed a trial court ruling that, under a contract containing separate payment provisions for "Street Excavation" and "Concrete Removal," the appellee contractor was entitled to be paid under the more specific "Concrete Removal" provision rather than the general "Street Excavation" provision. 567 S.W.2d at 60.

The same holds true with respect to the 1987 Indenture. Section 1302(b) generally governs subordination rights in the event of a continuing Senior Indebtedness default. Section 1303 specifically governs subordination rights in the event of an insolvency proceeding. Therefore, Texas contract law requires that any right under the 1987 Indenture to subordinate distributions made pursuant to the Plan must be controlled by the specific provisions of Section 1303.

---

[14] The Appellants acknowledge that Section 1303 (not Section 1302) provides any right to receive distributions under the Plan that otherwise would be paid to the 1987 Indenture noteholders but for the subordination provisions of Article XIII. *See* Appellants' Brief at 23 (citing Section 1303).

a.  **Section 1303 Limits The Benefits Of Subordination To Parties That Hold Senior Indebtedness At The Time Of Asset Distribution.**

Section 1303 begins with a preamble, and is followed by three conjunctive subsections ((a) through (c)) that specifically describe the mechanics of subordination rights available under the 1987 Indenture in the event of an insolvency proceeding. *See* AA Tab 7 at 80-81. The preamble in Section 1303 provides that any subordination of payments made in connection with an insolvency proceeding is to occur "[u]pon any distribution of assets." *See id.* at 80. Thus, the first five words of Section 1303 define and limit the subordination rights set forth in each of the succeeding subsections.

The three operative subsections of Section 1303 provide that, in the event of an insolvency proceeding: (a) holders of Senior Indebtedness are entitled to receive payment in full before subordinated noteholders are entitled to receive any payment under the 1987 Indenture, *see id.* (1987 Indenture at § 1303(a)); (b) any payment or distribution of assets to which subordinated noteholders otherwise would be entitled shall be made directly to holders of Senior Indebtedness to the extent necessary to make payment in full of all Senior Indebtedness remaining unpaid, *see id.* at 81 (1987 Indenture at § 1303(b)); and (c) in the event that any payment or distribution of assets is received by subordinated noteholders before all Senior Indebtedness is paid in full, such payment or distribution shall be held in trust and paid over to holders of Senior Indebtedness remaining unpaid, *see id.* (1987 Indenture at § 1303(c)).

Pursuant to Subsections 1303 (a) through (c), holders of Senior Indebtedness are the only parties entitled to benefit from subordination of payments under the 1987 Indenture made in connection with an insolvency proceeding. The preamble to Section 1303 conclusively establishes that the identity of any such holders of Senior Indebtedness is to be determined "upon any distribution of assets of [Enron]." *See id.* at 80. Therefore, in the event of an insolvency proceeding, a party seeking to benefit from subordination under the 1987 Indenture must be a holder of Senior Indebtedness <u>at the time of asset distribution</u>.

The earliest time that any asset distribution under the 1987 Indenture could have occurred pursuant to the Plan would be on the Plan's effective date. *See* AA Tab 17 at ¶ 13

23

(Order Confirming Supplemental Modified First Amended Joint Plan Of Affiliated Debtors
[. . .]). Accordingly, in order for a party to benefit under the 1987 Indenture from subordination
of payments made pursuant to the Plan, such party must have been a holder of Senior
Indebtedness at least as of the effective date of the Plan. This is exactly the conclusion reached
by the Bankruptcy Court:

> The Court agrees that the date upon which to determine the status
> of an entity as a Subsidiary is the date the right to payment of
> holders of notes under the 1987 Indenture is fixed under the Plan.
> *The Court enforces the subordination agreement under state law*
> ***as of the date of distribution*** *because, pursuant to the terms of the*
> *agreement itself, the subordinated entities' obligation arises at that*
> *time.*

AA Tab 2 at 21. The Appellants admit that, as of the Plan's effective date, all of the voting
shares of EFP were held by Enron and/or its affiliates. *See* Appellants' Brief at 12. Therefore,
EFP was a Subsidiary as of the Plan's effective date, and the EFP Claims do not qualify as
"Senior Indebtedness" entitled to the benefit of subordination under Section 1303 of the 1987
Indenture upon any distribution of assets under the Plan.

**2.    Section 1302(b) Does Not Permanently Vest A Party With
Subordination Rights Upon The Occurrence Of A Payment Default.**

In addition to ignoring the express applicability of Section 1303, the Appellants
grossly inflate the scope of Section 1302(b) by improperly reading it to permanently vest a party
with subordination rights upon the occurrence of a payment default. In order to understand the
proper application of Section 1302(b), and the erroneous reading thereof that the Appellants
attempt to foist upon the Court, it is helpful to break down the subordination provisions of
Section 1302(b) into three elements:

- "What" is subject to the subordination right?
- "Who" are entitled to enforce the subordination right?
- "When" are these parties entitled to enforce the subordination right?

Under Section 1302(b), "any payment . . . on account of any Obligations on the Securities" (the
"What") is subject to subordination; holders of "Senior Indebtedness" (the "Who") are entitled to

enforce the subordination right; and holders of Senior Indebtedness are entitled to enforce the subordination right "[u]pon the happening of any default in payment of any Senior Indebtedness . . . unless and until such default shall have been cured or waived or shall have ceased to exist" (the "When"). *See* AA Tab 7 at 79 (1987 Indenture at § 1302(b)).

Each of these required elements must be present in order for a subordination right to be enforceable— there must be something to subordinate, there must be someone entitled to subordination, and (because Article XIII is an inchoate subordination agreement) the contingency triggering the subordination right must be in effect.[15] Thus, even if the EFP Claims constituted Senior Indebtedness as of the Petition Date (a valid "Who"), and even if there were continuing payment defaults as of that time (a valid "When"), any future right to subordinate payments under the 1987 Indenture made pursuant to the Plan (a necessary "What") was not yet enforceable. The Appellants cannot dispute that, at or before the Petition Date, no distributions under the Plan existed for them to seek to subordinate – the Plan had not yet been proposed, much less confirmed. Only on the effective date did the Plan offer a distribution to the 1987 Indenture noteholders as to which holders of Senior Indebtedness could assert an enforceable subordination right.

The Appellants do not dispute that, well before the effective date of the Plan, voting control of EFP was returned to Enron, rendering it a "Subsidiary" under the 1987 Indenture and thereby excluding the EFP Claims from Senior Indebtedness status. In an attempt to circumvent this fatal deficiency in their purported subordination rights, the Appellants read section 1302(b) to **permanently** vest a party with subordination rights upon the occurrence of a payment default, regardless of the effect of any subsequent events. The Appellants' argument would require a court to find that, as long as the EFP Claims qualified as Senior Indebtedness on the date of a past payment default, the holders of the EFP Claims are entitled to enforce

---

[15]  In contrast, a "complete" subordination agreement does not have a "When" requirement—the subordination is immediately effective and not subject to any contingencies. *See Sumitomo Trust & Banking Co. v. Holly's Inc. (In re Holly's Inc.)*, 140 B.R. 643, 669 (Bankr. W.D. Mich. 1992).

subordination rights under the 1987 Indenture at any future time, regardless of whether the EFP Claims continue to qualify as Senior Indebtedness.

This brazen expansion of the scope of section 1302(b) is directly contrary to the express provisions of Article XIII and the definition of "Subsidiary" under the 1987 Indenture. As noted above, Section 1302(b) provides that holders of Senior Indebtedness are entitled to enforce their subordination rights under the 1987 Indenture "[u]pon the happening of any default in payment of Senior Indebtedness . . . unless and until such default shall have been cured or waived or shall have ceased to exist." AA Tab 7 at 79 (1987 Indenture at § 1302(b)) (emphasis added). Thus, under Section 1302(b), the occurrence of a payment default does not **permanently** vest a holder of Senior Indebtedness with enforceable subordination rights. Instead, Section 1302(b) expressly provides for a holder of Senior Indebtedness to have enforceable subordination rights upon the occurrence of a payment default, but then to lose the ability to enforce its subordination rights based upon a subsequent waiver, cure or other elimination of such payment default.

Similarly, the 1987 Indenture expressly provides for a party's status as a holder of Senior Indebtedness to change based upon the occurrence of subsequent events. "Subsidiary" status (which excludes a party from being a holder of Senior Indebtedness) occurs when all of the voting shares of an entity are owned by Enron and/or its affiliates. *See* AA Tab 7 at 9 (1987 Indenture at § 101). The 1987 Indenture carefully explains that, for purposes of determining "Subsidiary" status, "voting shares" are "shares entitled to vote for the election of directors, but excluding shares entitled so to vote only upon the happening of some contingency unless such contingency shall have occurred." *See id.* (emphasis added). Indeed, the Appellants must rely on the mutability of Senior Indebtedness status in order to assert any claim that the EFP Claims qualify as Senior Indebtedness because, as acknowledged by the Appellants, Enron and/or its affiliates had full voting control of EFP prior to the pre-petition downgrades of Enron's credit ratings. *See* Appellants' Brief at 8. Therefore, the Appellants cannot dispute that the definition of "Subsidiary" requires subsequent events to be taken into account in order to determine a party's status as a holder of Senior Indebtedness.

26

In effect, by relying on Section 1302 to assert a right to subordinate distributions under the Plan, the Appellants seek to marry the restriction on "When" the subordination right of Section 1302(b) becomes enforceable (i.e. during a continuing payment default) to "What" is subject to the subordination right under Section 1303 (i.e. payments made pursuant to a chapter 11 plan). This muddling of two completely separate sections of Article XIII distorts the clear purpose of Sections 1302(b) and 1303. Section 1302(b) defines the scope of subordination rights in the event of a continuing payment default outside an insolvency proceeding of the type covered by section 1303. This section allows holders of Senior Indebtedness to assert the subordination rights offered thereunder prior to commencement of an insolvency proceeding, but does not provide holders of Senior Indebtedness with any rights to subordinate distributions made in connection with an insolvency proceeding. Instead, Section 1303 defines the full scope of subordination rights in the event of an insolvency proceeding. *See* § IV(C)(1) *supra*. Thus, Section 1302(b) does not modify subordination rights in the event of an insolvency proceeding, it merely provides additional (and more limited)[16] subordination rights that can be enforced outside the context of an insolvency proceeding.

Finally, the Appellants' reliance on *UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*, 793 F. Supp. 448 (S.D.N.Y. 1992), is misplaced. In the first instance, *UPIC* did not involve an attempt to enforce subordination rights with respect to distributions under a plan of reorganization, as is the case here. Indeed, the obligor under the indenture in *UPIC* was not involved in any kind of insolvency proceeding. *See id.* Moreover, the issue before the court in *UPIC* did not turn on the vesting of a party's right to benefit from subordination, but instead on whether a subordinated noteholder has a valid claim to enforce its own payment rights under an indenture as against the obligor, notwithstanding that the indenture's subordination provisions have been triggered due to a Senior Indebtedness payment default. *See id.* at 457-460. The

---

[16] Notably, Section 1302(b) merely bars the 1987 Indenture noteholders from receiving any payments during the continuance of a Senior Indebtedness payment default, whereas Section 1303(b) affirmatively requires any payment or distribution of assets to which such noteholders would be entitled in an insolvency proceeding to be paid over to holders of Senior Indebtedness. *Compare* AA Tab 7 at 79 (1987 Indenture § 1302(b)) and AA Tab 7 at 81 (1987 Indenture § 1303(b)).

portion of the *UPIC* opinion quoted by the Appellants does nothing more than summarize the subordination provisions from the indenture at issue in that case; it does nothing to further the Appellants' attempts to twist the plain meaning of the 1987 Indenture to suit their purpose.

### 3. The 1987 Indenture Definition Of Corporation Includes Limited Liability Companies Such As EFP.

The Appellants' last-ditch argument that the EFP Claims were not held by a "Subsidiary" because EFP was not a "corporation" for purposes of the 1987 Indenture also fails by ignoring the plain meaning of the 1987 Indenture. The Bankruptcy Court devoted four pages of its opinion to a careful analysis of this issue, and properly concluded that a limited liability corporation such as EFP qualifies as a corporation. *See* AA Tab 2 at 15-19. In doing so, the Bankruptcy Court first noted that the 1987 Indenture's definition of "corporation" includes a wide variety of organizational structures, several of which "are not corporations but may have attributes of a corporation." *See id.* at 18. Recognizing that limited liability companies also have been found to have attributes of corporations, the Bankruptcy Court concluded that including LLCs within the definition of corporation was consistent with the definition's use of the word "includes", which illustrates but does not limit the scope of the organizational forms listed. *See id.* (citing *Willow Wood Rifle & Pistol Club, Inc. v. Town of Carmel Zoning Bd. Of Appeals*, 115 A.D.2d 742, 744 N.Y.S.2d 548, 551 (A.D. 2 Dept. 1985)). *See also Houston Bank & Trust Co. v. Lansdowne*, 201 S.W.2d 834, 838 (Tex. App. 1947) (recognizing that the word "includes" generally is used as "a term of enlargement and not a term of limitation, or of enumeration").[17]

In response, the Appellants trumpet the fact that the 1987 Indenture definition of corporation does not include partnerships, and contend that, because LLCs also may share attributes with partnerships, the definition of corporation should be read to exclude LLCs as entities with attributes similar to partnerships. *See* Appellants' Brief at 24-25. What the

---

[17] The court in *Houston Bank & Trust Co.* also distinguished the illustrative use of the word "includes" from the exclusionary use of the word "means." *See* 201 S.W.2d at 838. The definitions in the 1987 Indenture employ both words, providing further confirmation that the use of "includes" in the definition of corporation is illustrative. *Compare* AA Tab 7 at 3 (illustrative use of "includes in definition of "corporation") and *id.* at 5 (exclusionary use of "means" in definition of "Obligations").

465885v3

Appellants fail to recognize is that the entire focus of the 1987 Indenture definition is on corporations and organizational structures with corporate attributes. The definition of corporation is inclusive by its very terms – its function is not to exclude organizational structures that have attributes similar to partnerships, but instead to include organizational structures with attributes similar to corporations. Moreover, the definition of corporation expressly includes joint-stock companies, which organizational structure the Bankruptcy Court found to be "a partnership with some of the powers of a corporation." *See id.* at 17 (citing *Hibbs v. Brown*, 28 Bedell 167, 82 N.E. 1108 (N.Y. 1907)). Therefore, limited liability companies cannot be excluded from the definition of corporations simply because they share attributes with partnerships.

The only other support offered by the Appellants for their position is the New York Limited Liability statute that refers to an LLC as an "unincorporated organization," which is a term that does not appear in the definition of corporation. *See* Appellants' Brief at 25. Once again, Appellants fail to recognize that at least two other organizational structures listed in the definition of corporation, voluntary associations and a joint-stock companies, can be described as "unincorporated organizations." *See id.* at 16-17 (citing authorities). If the omission of the term "unincorporated organization" from the definition of corporation was intended to exclude all unincorporated organizations, then voluntary associations and joint-stock companies would not have been expressly included in the definition.[18]

The Appellants may attempt to argue that, if the 1987 Indenture definition of corporation were intended to include LLCs, then it should have done so expressly. However, Texas did not enact its limited liability company statute until 1991, which follows the drafting of the 1987 Indenture by several years.[19] *See* Tex. Rev. Civ. Stat. Ann. art. 1528n (West 1991). Therefore, it makes perfect sense that the drafters of the 1987 Indenture would not have

---

[18]  Moreover, the New York Limited Liability statute is not applicable to the 1987 Indenture, the interpretation of which is governed by Texas law. *See* § IV(A) *supra*.

[19]  The Bankruptcy Court also noted this fact with respect to New York law. *See id.* at 18 n.3.

465885v3

expressly included in the definition of corporation an organizational structure that did not yet exist under the operative law governing the indenture.

When the 1987 Indenture definitions of Subsidiary and corporation are read in conjunction, it is clear that the plain meaning of these provisions is to define a Subsidiary concept that broadly includes any entity with corporate attributes that is wholly-owned by Enron and/or its wholly-owned affiliates.  Nothing in the definition of Subsidiary or corporation suggests that LLCs should be excluded from this concept.  Indeed, as the Bankruptcy Court recognized, Enron routinely used LLCs in its corporate structure in a manner similar to corporations—i.e. as a mechanism to raise funds.  *See id.* at 19.  Excluding LLCs from the definition of corporation would tear a gaping hole in the definition of Subsidiary (and thereby in the exclusion of Subsidiary indebtedness from the definition of Senior Indebtedness).  This potential dismemberment of the 1987 Indenture cannot be justified by the mere absence of the term "limited liability company" from the definition of corporation, particularly given that the indenture was drafted before LLCs were recognized under governing Texas law.  Therefore, the Appellants' arguments must fail and the Bankruptcy Court's finding that a limited liability company (like EFP) qualifies as a corporation under the 1987 Indenture definition should be upheld.

Finally, nowhere in the Appellants' Brief do they address the fact, raised by Appellees below and acknowledged but not reached by the Bankruptcy Court, that the payee for the ECIC Note (upon which the EFP Class 4 Claim is based) is ECIC, which is and was at all times a corporation wholly-owned by Enron and its affiliates.  *See id.* at 22 n.4.  As long as an issue was raised in the lower court, it is reviewable on appeal even if the lower court did not reach the issue in its decision.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 n.5 (2d Cir. 2002).

Notwithstanding the assignment of the ECIC Note to EFP, the ECIC Note continues to be indebtedness of Enron to a Subsidiary.  *See generally*, *State Bank & Trust Co. v. Insurance Co.*, 132 F.3d 203, 207 n.12 (5th Cir. 1997) (citing Texas authorities for the proposition that "an assignee … acquires no greater right than was possessed by his assignor, and

30

simply stands in the shoes of the latter"); *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 682 (2d Cir. 1989) (the assignee of rights under a contract stands in the shoes of the assignor and has no greater rights against the account debtor than did the assignor); *International Ribbon Mills, Ltd. V. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126, 325 N.E.2d 137 (1975) ("It is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned because he receives no more . . . than his assignor. "). Therefore, even if EFP itself were not a Subsidiary (which it is), the EFP Class 4 Claim must be excluded from the benefits of subordination under the 1987 Indenture because no one disputes that ECIC is a Subsidiary.

V.

**CONCLUSION**

Based on the arguments set forth herein and the record of this Appeal, the Appellees respectfully request that this Court affirm the Order on all grounds.

Dated: November 2, 2007
      Los Angeles, California

STUTMAN, TREISTER & GLATT
Professional Corporation

By:     /s/ Eric D. Winston
ISAAC M. PACHULSKI (*admitted pro hac vice*)
ERIC D. WINSTON (*admitted pro hac vice*)
NATHAN A. SCHULTZ
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone (310) 228-5600
Facsimile (310) 228-5788

ATTORNEYS FOR APPELLEES ABRAMS CAPITAL, LLC AND THE BAUPOST GROUP, LLC

465885v3