# APPELLEES' APPENDIX

## TAB A

## LOAN AGREEMENT

LOAN AGREEMENT, dated as of November 15, 1993, between Enron Corp., a Delaware corporation ("Enron"), and Enron Capital LLC, a limited life company organized under the laws of the Turks and Caicos Islands ("Capital").

WHEREAS, Capital intends to issue its common shares (the "Common Shares") to Enron, and receive related capital contributions, in an aggregate amount of $56,819,621 (the "Common Share Payments") and to issue and sell 8,550,000 shares of its 8% Cumulative Guaranteed Monthly Income Preferred Shares (the "Preferred Shares"), with a liquidation preference equal to $25 per Preferred Share (the "Liquidation Preference").

WHEREAS, Enron is guaranteeing the payment of dividends on the Preferred Shares if and when declared to the extent that there are sufficient funds legally available therefor, the Redemption Price (as defined in the Guarantee Agreement) and the Liquidation Distribution (as defined in the Guarantee Agreement) on the Preferred Shares all to the extent set forth in the Payment and Guarantee Agreement, dated as of November 15, 1993 (the "Guarantee Agreement");

WHEREAS, Enron has asked Capital to make a loan to Enron in an aggregate principal amount equal to the sum of the aggregate Common Share Payments and the aggregate Liquidation Preference of the Preferred Shares issued and sold by Capital; and

WHEREAS, Capital is willing to make the aforementioned loans to Enron, on the terms and conditions hereinafter stated.

NOW THEREFORE, Enron and Capital hereby agree as follows:

### ARTICLE I

### THE LOANS

Section 1.01  The Loans.  Subject to the terms and conditions herein, Capital agrees to make loans to Enron on the date hereof in an aggregate principal amount of $270,569,621 in next day funds.  Such loans shall be referred to herein as the "Loans".

Section 1.02.  Term of the Loans; Mandatory Prepayment.  (a)  If Capital redeems Preferred Shares in

2308.RRR

401

accordance with the terms thereof, the Loans shall become due and payable in a principal amount equal to the aggregate stated Liquidation Preference of the Preferred Shares so redeemed, together with any and all accrued interest thereon.  Any payment pursuant to this Section 1.02(a) shall be made in next-day funds prior to 12:00 noon, New York time, on the date fixed for such redemption or at such other time on such earlier date as Capital and Enron shall agree.

(b)  The entire principal amount of the Loans shall become due and payable, together with any accrued and unpaid interest thereon, including Additional Interest as defined below, if any, on the earliest of November 30, 2043 or the date upon which Enron is dissolved, wound-up or liquidated or the date upon which Capital is dissolved, wound-up or liquidated.

Section 1.03.  <u>Optional Prepayment</u>.  Enron shall have the right to prepay the Loans, without premium or penalty,

(i)  in whole or in part (together with any accrued but unpaid interest, including Additional Interest, if any, on the portion being prepaid) at any time on or after November 30, 1998; and

(ii)  in whole (together with all accrued and unpaid interest, including Additional Interest thereon) at any time if Enron is or would be required to pay any Additional Interest on the Loans or in part (together with all accrued and unpaid interest, including Additional Interest on the portion being prepaid) at any time if Enron is or would be required to pay Additional Interest with respect to only a portion of the Loans, *provided* that if a partial prepayment would, through the corresponding partial redemption required under the terms of the Preferred Shares, result in a delisting of the Preferred Shares, Enron may only prepay the Loans in whole.  In no event, however, shall Enron have the right to prepay the Loans, or a portion thereof, under this clause (ii) based on (a) a technical obligation to pay Additional Interest because of a withholding obligation to the extent Enron would not incur any penalties, interest or tax under the Internal Revenue Code or applicable law if Enron did not withhold, or (b) a *de minimis* obligation to pay Additional Interest.  For purposes of the foregoing, in the event that Enron is advised by independent legal counsel that more than an

insubstantial risk exists that Enron will incur penalties, interest or tax under the Internal Revenue Code or other applicable law if it does not withhold, Enron shall have the right to repay the Loans, or a portion thereof, under this clause (ii) unless the obligation to pay Additional Interest if Enron does so withhold is a *de minimis* obligation.

## ARTICLE II

### INTEREST

Section 2.01.  <u>Interest on the Loans</u>.  The Loans shall bear interest at an annual rate equal to 8% from the date they are made until maturity.  Such interest shall be payable on the last day of each calendar month of each year, commencing November 30, 1993.  In the event that any date on which interest is payable on the Loans is not a Business Day, then payment of the interest payable on such date will be made on the next succeeding day which is a Business Day (and without any interest or other payment in respect of any such delay), except that, if such Business Day is in the next succeeding calendar year, such payment shall be made on the immediately preceding Business Day, in each case with the same force and effect as if made on such date.  A "Business Day" shall mean any day other than a day on which banking institutions in The City of New York are authorized or required by law to close.

Section 2.02.  <u>Additional Interest</u>.  If at any time (a) Capital shall be required to pay any additional amounts ("Additional Amounts") in respect of the Preferred Shares pursuant to the terms thereof, (b) Enron shall be required to withhold or deduct any amounts, for or on account of any taxes, duties or governmental charges of whatever nature imposed by the United States of America (or any political subdivision thereof or therein), from the interest payments to be made by Enron on the Loans or (c) Capital shall be required to pay, with respect to its income derived from the interest payments on the Loans, any amounts for or on account of any taxes, duties or governmental charges of whatever nature imposed by the Turks and Caicos Islands (or any political subdivision thereof or therein) or any other taxing authority, then, in any such case, Enron will pay as interest such additional amounts ("Additional Interest") as may be necessary in order that the net amounts received and retained by Capital after paying such Additional Amounts, or after such withholding or deduction or the payment of such taxes, duties, assessments

42

or governmental charges, as the case may be, shall result in
Capital's having such funds as it would have had in the
absence of the obligation to pay such Additional Amounts, or
such withholding or deduction or the payment of such taxes,
duties, assessments or governmental charges, as the case may
be.  The obligation to pay Additional Interest under (b)
above shall be reduced proportionately to the extent that
(x) Enron or Capital has notified holders of Preferred
Shares of the obligation to withhold taxes and requested but
not received from such holders declarations of nonresidence
or other claims for exemption and (y) such withholding or
deduction would not have been required had such declarations
or claims been received.

Section 2.03.  Extension of Interest Payment
Period.  Notwithstanding the provisions of Section 2.01,
Enron shall have the right at any time during the term of
the Loans, so long as Enron is not in default in the payment
of interest on the Loans, to extend the interest payment
period to up to 18 months, at the end of which period Enron
shall pay all interest then accrued and unpaid (together
with interest thereon at the rate specified for the Loans to
the extent permitted by applicable law); and provided that,
during any such extended interest payment period, neither
Enron, nor any majority-owned subsidiary of Enron, shall
declare or pay any dividend on, or redeem, purchase, acquire
or make a liquidation payment with respect to, any of its
capital stock or make any guarantee payments with respect to
the foregoing (other than (i) payments under the Guarantee
Agreement, (ii) dividends or guarantee payments to Enron by
a majority-owned subsidiary or (iii) dividends paid by Enron
Oil & Gas Company on its common stock).  Prior to the
termination of any such extended interest payment period,
Enron may further extend the interest payment period,
provided that such extended interest payment period together
with all such further extensions thereof may not exceed
18 months.  Enron shall give Capital notice of its selection
of such extended interest payment period one Business Day
prior to the earlier of (i) the date Capital declares the
related dividend or (ii) the date Capital is required to
give notice of the record or payment date of such related
dividend to the New York Stock Exchange or other applicable
self-regulatory organization or to holders of the Preferred
Shares, but in any event not less than two Business Days
prior to such record date.  Enron shall cause Capital to
give such notice of Enron's selection of such extended
interest payment period to the holders of the Preferred
Shares.

2306.RRR                        -4-

## ARTICLE III

### PAYMENTS

Section 3.01. <u>Method and Date of Payment</u>. Each payment by Enron of principal and interest (including Additional Interest, if any) on the Loans shall be made to Capital in lawful money of the United States, in next-day funds for principal payments and in same day funds for interest payments, at such place and to such account as may be designated by Capital.

Section 3.02. <u>Set-off</u>. Notwithstanding anything to the contrary herein, Enron shall have the right to set-off any payment it is otherwise required to make hereunder with and to the extent Enron has theretofore made, or is concurrently on the date of such payment making, a payment under the Guarantee Agreement.

## ARTICLE IV

### SUBORDINATION

Section 4.01. <u>Subordination</u>. Enron and Capital covenant and agree, and the holders of the Preferred Shares (and any trustee appointed by such holders) by their acceptance of such Preferred Shares likewise agree, that the Loans are subordinate and junior in right of payment to all Senior Indebtedness as provided herein. The term "Senior Indebtedness" shall mean the principal, premium, if any, and interest on (i) all indebtedness of Enron, whether outstanding on the date hereof or hereafter created, incurred or assumed, which is for money borrowed, or evidenced by a note or similar instrument given in connection with the acquisition of any business, properties or assets, including securities, (ii) any indebtedness of others of the kinds described in the preceding clause (i) for the payment of which Enron is responsible or liable (directly or indirectly, contingently or non-contingently) as guarantor or otherwise, (iii) any indebtedness secured by a lien upon property owned by Enron and upon which indebtedness Enron customarily pays interest, even though Enron has not assumed or become liable for the payment of such indebtedness and (iv) amendments, renewals, extensions and refundings of any such indebtedness, unless in any instrument or instruments evidencing or securing such indebtedness or pursuant to which the same is outstanding, or in any such amendment, renewal, extension or refunding, it is expressly provided that such indebtedness is not superior in right of payment to the Loans. Senior

44

Indebtedness shall continue to be Senior Indebtedness and
entitled to the benefits of these subordination provisions
irrespective of (i) any amendment, modification or waiver of
any term of the Senior Indebtedness or extension or renewal
of the Senior Indebtedness, (ii) any exchange or release of,
or non-perfection of any lien on or security interest in,
any collateral, or any release from, amendment or waiver of
or consent to departure from any guaranty, for all or any of
the Senior Indebtedness, (iii) any other circumstance which
might otherwise constitute a defense available to or
discharge of Capital to the holders of the Preferred Shares
(or any trustee appointed by such holders) in respect of the
provisions of this Section 4.01, or (iv) any act or failure
to act on the part of Enron or by any act or failure to act,
in good faith, by any holder of Senior Indebtedness, or by
any noncompliance by Enron with the terms of this Agreement,
regardless of any knowledge thereof which any person may
have or be otherwise charged with.

Upon the maturity of any Senior Indebtedness by
lapse of time, acceleration (unless waived) or otherwise
(including all installments of principal and interest), all
Senior Indebtedness then due and owing shall first be paid
in full, or such payment duly provided for in cash (or in
securities or other property satisfactory to all of the
holders of such Senior Indebtedness), before any payment is
made on the account of the Loans.

In the event that (i) Enron shall default in the
payment of any principal, or premium, if any, or interest on
any Senior Indebtedness when the same becomes due and
payable, whether at maturity or at a date fixed for
prepayment or declaration or otherwise or (ii) an event of
default occurs with respect to any Senior Indebtedness, then
unless and until such default in payment or event of default
shall have been cured or waived or shall have ceased to
exist, no direct or indirect payment (in cash, property,
securities, by set-off or otherwise) shall be made or agreed
to be made on account of the Loans or interest thereon or in
respect of any repayment, redemption, retirement, purchase
or other acquisition of the Loans.  Enron will give prompt
written notice to Capital of any default in the payment of
any Senior Indebtedness and of any dissolution, winding up
or reorganization of Enron.

In the event of (i) any insolvency, bankruptcy,
receivership, liquidation, reorganization, composition or
other similar proceeding relating to Enron or its property
or for the benefit of its creditors, (ii) any proceeding for
the liquidation, dissolution or other winding up of Enron,
voluntary or involuntary, whether or not involving

2301.RRR

insolvency or bankruptcy proceedings, (iii) any assignment
by Enron for the benefit of creditors, or (iv) any other
marshalling of the assets of Enron, all Senior Indebtedness
(including, without limitation, interest accruing after the
commencement of any such proceeding, assignment or
marshalling of assets) shall first be paid in full before
any payment or distribution, whether in cash, securities or
other property, shall be made on the Loans.  Any payment or
distribution, whether in cash, securities or other property,
which would otherwise (but for these subordination provi-
sions) be payable or deliverable in respect of the Loans
(including any such payment or distribution which may be
payable or deliverable by reason of the payment of any other
indebtedness of Enron being subordinated to the payment of
the Loans) shall be paid or delivered directly to the
holders of Senior Indebtedness or to their representative,
or to the trustee under the indenture or agreement (if any)
pursuant to which such Senior Indebtedness may have been
issued, in accordance with the priorities then existing
among such holders until all Senior Indebtedness shall have
been paid in full.  No present or future holder of any
Senior Indebtedness shall be prejudiced in the right to
enforce subordination of the indebtedness constituting the
Loans by any act or failure to act on the part of Enron.

          Senior Indebtedness shall not be deemed to have
been paid in full unless the holders thereof shall have
received cash (or securities or other property satisfactory
to such holders) in full payment of such Senior Indebtedness
then outstanding.  Upon the payment in full of all Senior
Indebtedness, Capital shall be subrogated to all the rights
of any holders of Senior Indebtedness to receive any further
payments or distributions applicable to the Senior
Indebtedness until the Loans shall have been paid in full,
and such payments or distributions of cash, securities or
other property received by Capital, by reason of such
subrogation, which otherwise would be paid or distributed to
the holders of Senior Indebtedness, shall, as between Enron
and its creditors other than the holders of Senior
Indebtedness, on the one hand, and Capital, on the other, be
deemed to be a payment by Enron on account of Senior
Indebtedness, and not on account of the Loans.

          In the event that notwithstanding the provisions
of this Section 4.01 Enron shall make any payment on the
Loans to Capital or Capital receives any payment or
distribution of assets of Enron (other than securities of
Enron or any other corporation provided for by a plan of
reorganization, the payment of which is subordinate, at
least to the extent provided in these subordination pro-
visions with respect to the indebtedness evidenced by the

Loans, to the payment of all Senior Indebtedness at the time outstanding and to any securities issued in respect thereof under any such plan of reorganization), at any time before all Senior Indebtedness is paid in full, then such payment shall be held by Capital, in trust for the benefit of, and shall be paid forthwith over and delivered to, the holders of Senior Indebtedness or their representative or the trustee under the indenture or other agreement (if any) pursuant to which Senior Indebtedness may have been issued, in accordance with the priorities then existing among such holders, for application to the payment of all Senior Indebtedness remaining unpaid to the extent necessary to pay all Senior Indebtedness in full accordance with its terms, after giving effect to any concurrent payment or distribution to or for the holders of Senior Indebtedness.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES

Section 5.01. <u>Representations and Warranties</u>. Enron represents and warrants to Capital that:

(a) <u>Good Standing</u>. Enron is a corporation duly incorporated and validly existing under the laws of the State of Delaware, with power and authority (corporate and other) to own its properties and conduct its business as now being conducted.

(b) <u>Power and Authority</u>. Enron has full power and authority to enter into this Agreement and to incur and perform the obligations provided for herein, all of which have been duly authorized by all proper and necessary action.

(c) <u>No Conflict</u>. The execution and delivery of this Agreement and the performance by Enron of all its obligations hereunder will not conflict with or result in a breach or violation of any of the terms or provisions of, or constitute a default under, any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which Enron is a party or by which Enron is bound or subject, nor will this Agreement result in a violation of the provisions of Enron's Restated Certificate of Incorporation or by-laws.

(d) <u>Binding Agreement</u>. This Agreement constitutes the valid and legally binding obligation of Enron enforceable in accordance with its terms, subject

47

.to bankruptcy, insolvency, fraudulent transfer,
reorganization, moratorium and similar laws of general
applicability relating to or affecting creditors'
rights and to general equity principles.

## ARTICLE VI

### COVENANTS

Section 6.01.  Covenants.  (a)  Enron agrees
(i) that neither it, nor any of its majority-owned
subsidiaries, shall declare or pay any dividend on, or
redeem, purchase, acquire or make a liquidation payment with
respect to, any of its capital stock, or make any guarantee
payments with respect to the foregoing (other than
(i) payments under the Guarantee Agreement, (ii) dividends
or guarantee payments to Enron by a majority-owned
subsidiary or (iii) dividends paid by Enron Oil & Gas
Company on its common stock) if at such time (a) there shall
have occurred any event that, with the giving of notice or
the lapse of time or both, would constitute an Event of
Default hereunder or (b) Enron shall be in default with
respect to its payment or other obligations under the
Guarantee Agreement or under the Agreement as to Expenses
and Liabilities, dated as of November 15, 1993, between
Enron and Capital, (ii) to maintain direct or indirect 100%
ownership of the Common Shares and any other shares of
Capital other than the Preferred Shares, (iii) to cause at
least 21% of the total value of Capital and at least 21% of
all interests in the capital, income, gain, loss, deduction
and credit of Capital to be represented by Common Shares,
(iv) not to voluntarily dissolve, wind-up or liquidate
Capital, (v) to remain the Manager of Capital and to timely
perform all of its duties as Manager of Capital (including
the duty to declare and pay dividends on the Preferred
Shares); provided that any permitted successor of Enron
under this Agreement may succeed to Enron's duties as
Manager, and (vi) to use its reasonable efforts to cause
Capital to remain a limited life company and otherwise
continue to be treated as a partnership for United States
federal income tax purposes.

(b)  Enron agrees that its obligations under this
Agreement will also be for the benefit of the holders from
time to time of Preferred Shares, and Enron acknowledges and
agrees that such holders will be entitled to enforce this
Agreement directly against Enron.

(c)  Enron agrees not to merge with or into
another entity, or permit another entity to merge with or

7308.RRR                          -9-

48

into it, and agrees not to sell, transfer or lease all or substantially all of its assets to another entity unless: (i) at such time no Event of Default hereunder has occurred and is continuing, or would occur as a result of such merger, sale, transfer or lease, and (ii) Enron is the survivor of such merger or the survivor of such merger or entity to which Enron's assets are sold, transferred or leased is an entity organized under the laws of the United States or any state thereof, assumes all of Enron's obligations under this Agreement and becomes the Manager.

## ARTICLE VII

## EVENTS OF DEFAULT

Section 7.01. **Events of Default**. If one or more of the following events (each an "Event of Default") shall occur and be continuing:

(a) default in the payment of interest on the Loans, including any Additional Interest in respect of the Loans, when due for 10 days (whether by virtue of the provisions described under Article IV hereof or otherwise); provided that a valid extension of the interest payment period by Enron pursuant to Section 2.03 hereof shall not constitute a default in the payment of interest for this purpose; or

(b) default in the payment of principal on the Loans when due; or

(c) the dissolution, winding up or liquidation of Capital; or

(d) the bankruptcy, insolvency or liquidation of Enron; or

(e) breach of any covenants contained herein continued for 30 days after notice to Enron from any Preferred Shareholder;

then, in every such event, and at any time thereafter during the continuance of such event, Capital will have the right to declare the principal of and the interest on the Loans (including any Additional Interest and any interest subject to an extension of the interest payment period) and any other amounts payable on the Loans to be forthwith due and payable, whereupon the same shall become and be forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly

49

waived, anything in this Agreement to the contrary notwith-
standing.  Enron expressly acknowledges that under the terms
of the Preferred Shares, the holders of the outstanding
Preferred Shares shall have the right to appoint a trustee,
which trustee shall be authorized to exercise Capital's
creditor rights under this Agreement, and Enron agrees to
cooperate with such Trustee.

ARTICLE VIII

**MISCELLANEOUS**

Section 8.01.  **Notices**.  All notices hereunder
shall be deemed given by a party hereto if in writing and
delivered personally or by telegram or facsimile
transmission or by registered or certified mail (return
receipt requested) to the other party at the following
address for such party (or at such other address as shall be
specified by like notice):

If to Capital, to:

Enron Capital LLC
c/o Enron Corp., as Manager
1400 Smith Street
Houston, Texas 77002
Fax No.:  (713) 853-3920

Attention:  Treasurer

If to Enron, to:

Enron Corp.
1400 Smith Street
Houston, Texas 77002
Fax No.:  (713) 853-3920

Attention:  Treasurer

Any notice given by mail or telegram or facsimile
transmission shall be effective when received.

Section 8.02.  **Binding Effect**.  Enron shall have
the right at all times to assign any of its rights or
obligations under this Agreement to a direct or indirect
wholly-owned subsidiary of Enron; **provided that**, in the
event of any such assignment, Enron shall remain jointly and
severally liable for all such obligations.  Capital may not
assign any of its rights hereunder without the prior written
consent of Enron.  Subject to the foregoing, this Agreement

2301.RRR

50

shall be binding upon and inure to the benefit of Enron and Capital and their respective successors and assigns. This Agreement may not otherwise be assigned by Enron or Capital.

Section 8.03. <u>Governing Law</u>. EXCEPT AS TO MATTERS RELATING TO THE AUTHORIZATION, EXECUTION AND DELIVERY OF THIS AGREEMENT BY CAPITAL, WHICH SHALL BE GOVERNED BY THE LAWS OF THE TURKS AND CAICOS ISLANDS, THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

Section 8.04. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

Section 8.05. <u>Amendments</u>. This Agreement may be amended by mutual consent of the parties in the manner the parties shall agree; *provided that*, so long as any of the Preferred Shares remain outstanding, no such amendment shall be made that adversely affects the Holders, and no termination of this Agreement shall occur, and no Event of Default or compliance with any covenant under this Agreement may be waived by Capital, without the prior approval of the holders of at least 66-2/3% of the outstanding Preferred Shares, unless and until the Loans and all accrued and unpaid interest thereon (including Additional Interest, if any) shall have been paid in full.

2301.RRR

51

   IN WITNESS WHEREOF, the parties hereto have caused
this Agreement to be executed by their respective officers
thereunto duly authorized as of the day and year first above
written.

                              ENRON CORP.


                              By: _____
                              Name: Kurt S. Huneke
                              Title: Vice President, Finance and Treasurer


                         ENRON CAPITAL LLC

                         By:  Enron Corp. as Manager


                              By: _____
                              Name: E.P. SEGNER, III
                              Title: EXECUTIVE V.P. and CHIEF OF STAFF


2308.RRR                          -13-