```
 1              Proceedings
 2   simply a method of financing.  I think that
 3   is something that has been lost in the
 4   various arguments.  This is not a case where
 5   you have individual obligations that are kind
 6   of floating around.  What you have in place
 7   is facilities Enron can draw on every time a
 8   letter of credit is issued.  Even if the
 9   letter of credit is not drawndown, it reduces
10   the credit limit, and there is no question
11   that Enron is directly obligated each time a
12   letter is issued and ultimately for a
13   drawdown.
14              So in that context, Baupost
15   basically has made two arguments in their
16   1987 Indenture.  The first is somehow that
17   the letter of credit is not an instrument
18   under the 1987 definition of "Senior
19   Indebtedness."  We have cited, Your Honor,
20   the cases on that.  It is just wrong.  A
21   Reimbursement Agreement is a contract and it
22   is an instrument.  There is a Second Circuit
23   case that discusses that, the Red Rock case
24   cited at page 18 of our objection.  Letters
25   of credits are instruments and are routinely
```

1                     Proceedings

2    seen as such.  Those cases are cited at page

3    19.  So I think that there is no intent in

4    this definition to somehow limit "instrument"

5    to negotiable instrument.  There is nothing

6    that would indicate that in anyway, shape, or

7    form.  An instrument is an instrument and

8    these clearly are.

9                     The argument that they press more

10   today and on reply deals with an exclusion to

11   the definition of indebtedness contained in

12   the 1987 Indenture.  I just want to look at

13   that briefly for a moment.  It is the

14   exclusion to the term of what indebtedness

15   is, where it excludes indirect guarantees or

16   other contingent obligations in connection

17   with the indebtedness of others.  Then it

18   gives some examples of what these kinds of

19   things would be:  agreements to purchase or

20   repurchase obligations of such other persons,

21   agreements to advance or supply funds to or

22   invest in such other persons, take-or-pay,

23   keep-well, make-whole, cash deficiency,

24   maintenance of working capital or earnings or

25   similar agreements.

```
 1              Proceedings
 2              A Reimbursement Agreement simply
 3    doesn't fall within any of that class of
 4    exclusion.  It is a direct obligation by
 5    Enron to the Banks.  It is not guaranteeing
 6    other third parties' performances.  It is in
 7    no way other third parties' beneficiary.  It
 8    is basically a financing tool used by Enron,
 9    one to which their obligation to payback is
10    absolute, unconditional and irrevocable.
11              I just wanted to give one example,
12    which I think is helpful.  In essence, under
13    the reasoning that Baupost gives, a revolving
14    line of credit would be a contingent
15    obligation.  Because you have the same thing.
16    You have a line of credit of $1 billion
17    hypothetically, and at any point in time half
18    of it can be drawn down and half of it may
19    not be drawn down.  It may be used for third
20    party purposes or not.  It really doesn't
21    matter.  The fact of the matter is you have
22    got a commitment out there and the Banks have
23    to honor it, and if Enron draws on it, the
24    obligator then has to pay back.  So I think
25    clearly the letters of credit under the 1987
```

1              Proceedings
2    Indenture are Senior Indebtedness.
3              Just briefly as to the TOPRS
4    Indentures, again, TOPRS definition requires
5    or deals with debt evidenced by notes, bonds,
6    or other securities sold by the Company and
7    capitalized leases, unless subordinated or
8    unless a trade credit.  The letters of credit
9    are clearly not trade credit.  By their
10   terms, they are not to be subordinated.  They
11   constitute a written promise to pay, which is
12   the equivalent of a bond, and clearly fall
13   within the scope of the definition of "Senior
14   Indebtedness."
15             So in conclusion, Your Honor, using
16   the plain meaning within the four corners of
17   these various contracts, it is I think
18   crystal clear these claim were all properly
19   classified by the Debtors as senior debt on
20   Amended Schedule S.
21             If Your Honor has no further
22   questions, I would respectfully ask that you
23   overrule the Objection.
24             MS. KRIEGER:  Good morning, Your
25   Honor.  Arlene Krieger from Stroock & Stroock

```
 1                    Proceedings
 2   & Lavan on behalf of Bayerische Hypo-Und
 3   Vereinsbank AG, which I will refer to as
 4   "HVB" in this presentation.
 5               Just to give a little bit of
 6   background, prior to the Petition Date, Enron
 7   and HVB entered into a Master Letter of
 8   Credit and Reimbursement Agreement, which was
 9   amended from time to time.  Pursuant to this
10   Reimbursement Agreement, Enron had the
11   ability to request and did request that HVB
12   issue a number of letters of credit to
13   support the performance of obligations of
14   Enron or its subsidiaries to various
15   third-party beneficiaries.  Like Chase, it is
16   a way of providing credit support, a kind of
17   financing tool.
18               Three of the letters of credit were
19   fully drawn prior to the Petition Date, and
20   HVB paid the respective beneficiaries of
21   those LLCs.  The result, Your Honor, is that
22   HVB advanced $81 million for the benefit of
23   Enron and has claims for that principal
24   amount, plus claims for outstanding fees and
25   other obligations under the Reimbursement
```

```
 1              Proceedings
 2   Agreement.  One letter of credit in the
 3   principal amount of $32.5 million remains
 4   outstanding and, if drawn, would further
 5   increase the amount of HVB's claims against
 6   Enron in their Reimbursement Agreement.
 7              JUDGE GONZALEZ:  Speak louder,
 8   please.
 9              MS. KRIEGER:  Sorry, Your Honor.  I
10   will try.
11              Your Honor, as has been indicated,
12   the Schedule S initially, as put forward by
13   Enron, provided for Letter of Credit Claims,
14   claims arising from and relating to the
15   issuance of letters of credit to be entitled
16   to the subordination provisions of each of
17   the Subordination Agreements at issue.  Then
18   in the interim, between the time that they
19   filed their initial Schedule S and they filed
20   the Amended Schedule S, they had spent a
21   great deal of time, one assumes, looking
22   through that list and decided, again, that
23   Letter of Credit Claims or at least certain
24   Letter of Credit Claims, including HVB's
25   claims, were entitled to all of those
```

```
 1              Proceedings
 2   subordination benefits.  HVB will only
 3   address the Letter of Credit Claims.  It does
 4   not have any Intercompany Claim issues here.
 5              I will join with the arguments that
 6   have already been made and won't reiterate
 7   those by John Hancock and Chase with respect
 8   to the burden of proof that was argued by
 9   Baupost.  We think that that is not correct
10   and not supported.  This is a different
11   circumstance, and I would argue as well, Your
12   Honor, that the Best Products case that was
13   cited to by Baupost does not stand for that
14   proposition.  In fact, in that case there was
15   no disagreement or issue with respect to the
16   interpretation of the Subordination
17   Agreement.
18              Your Honor, we believe that we
19   belong on Schedule S.  When Baupost filed
20   their objection, obviously, we filed a
21   response challenging those issues.  They only
22   filed a pleading which challenged the HVB
23   claims with respect to the 1987 Indenture and
24   the TOPRS Indentures.  They did not challenge
25   the senior position of the HVB claims with
```

1                    Proceedings

2    respect to the 1993 Loan Agreement nor the

3    1994 Loan Agreement.

4                    With respect to the 1987 Indenture,

5    Your Honor, we disagree with Baupost's

6    arguments.  You have heard a lot of this

7    already, Your Honor, so forgive me.  But two

8    of the arguments that they make are:  that

9    the LLC claims are indirect guarantees or a

10   contingent obligation.  Our Reimbursement

11   Agreement, which was annexed to our pleading,

12   clearly reflects the fact that Enron's

13   indebtedness to HVB for the amount of any

14   draw on a letter of credit is direct and

15   unconditionally payable.  Again, there is no

16   contingency here.  Once the Bank issues a

17   letter of credit, the commitment is there.

18   There is no contingent obligation.  There is

19   an absolute obligation to pay.  The only

20   thing that is uncertain is what the amount

21   is, if any, that will have to be paid.

22                    Your Honor, if Enron's indebtedness

23   to HVB was contingent, for example, on XYZ

24   Corp. not satisfying a payment obligation to

25   HVB, in that instance Enron's obligation to

```
 1                    Proceedings
 2    HVB would be contingent.  But that is not the
 3    circumstance that we have here.
 4               I would further join with Chase's
 5    argument.  If you look at subsection (4) of
 6    the indebtedness provision of the 1987
 7    Indenture, there are specific types of
 8    agreements which are indicated as being those
 9    kinds of conditional obligations and
10    contingent guaranty circumstances and an
11    obligation under a reimbursement obligation
12    for repayment of amounts, which are drawn
13    under a letter of credit, just don't fit into
14    that scenario.
15               So, Your Honor, we think that there
16    is no basis to find that HVB's claims fall
17    within the exclusion and, thereby, precludes
18    HVB from constituting indebtedness for
19    purposes of the Senior Indebtedness
20    definition.
21               With respect to its being an
22    instrument, Your Honor, Baupost, as you have
23    heard, proffered other definitions and looked
24    to the UCC.  It looked to a commercial law
25    definition in Black's Law Dictionary.  While
```

1              Proceedings
2    those things just are not applicable, the
3    commercial law definition, Your Honor, is
4    applicable to UCC sale of goods situations.
5    That is not what we have here, again.  So
6    that is not of relevance.  Rather, the
7    Reimbursement Agreement is what Black's Law
8    says as its plain, ordinary meaning
9    definition of the word "instrument."  "A
10   written legal document that defines rights,
11   duties, entitlements or liabilities, such as
12   a contract."  The Reimbursement Agreement is
13   clearly a contract.
14              Your Honor, we think on the third
15   prong, although Baupost has not raised that
16   today, of what is required to meet the
17   "indebtedness" or "Senior Indebtedness"
18   definitions for the 1987 Indenture, is that
19   it is for the repayment of money borrowed.
20   We think that there is no argument here with
21   respect to that.  Obviously, letters of
22   credit are regarded as the functional
23   equivalent of loans.  When HVB issues the
24   LOCs, the loan commitment is made.  When LOCs
25   are drawn and HVB had to make payment, the

```
 1                    Proceedings
 2    actual loan is issued, and Enron has an
 3    absolute obligation under the terms of the
 4    Reimbursement Agreement to repay that loan.
 5             So in sum, Your Honor, we think
 6    that the HVB claims under the 1987 Indenture
 7    properly meet the definition of "Senior
 8    Indebtedness."
 9             We will further point out, not to
10    get into extrinsic evidence, but the
11    Reimbursement Agreement itself reflects in
12    the subordinated debt definition that is in
13    that agreement that Enron's obligations to
14    HVB are superior to Enron's obligations to
15    the Subordinated Debentures issued under the
16    1987 Indenture.
17             Moving to the TOPRS Indentures,
18    Your Honor, we also think quite clearly that
19    HVB meets the "Senior Indebtedness"
20    definitions here.  The key terms are that its
21    principal due, all indebtedness of Enron,
22    other than any obligations to trade creditors
23    evidenced by notes, debentures, and bonds,
24    unless in the case of any particular
25    indebtedness, it says it is subordinated to
```

```
 1                    Proceedings
 2   or is pari passu with the securities.
 3              Your Honor, we believe that the
 4   type of financial obligation created was
 5   intended to qualify as Senior Indebtedness
 6   under the TOPRS.  Black's Law Dictionary
 7   defines a bond to mean, in relevant part, an
 8   obligation, or promise, or a written promise
 9   to pay money if certain circumstances occur.
10   The Reimbursement Agreement squarely falls
11   within this definition, as that agreement
12   evidences Enron's written obligation to pay
13   money to HVB when a letter of credit is
14   drawn.
15              The TOPRS Indentures, the "Senior
16   Indebtedness" definition in that indenture,
17   specifically excludes, as I said,
18   indebtedness to trade creditors and
19   indebtedness for those financial obligations
20   where the instrument provides otherwise.  The
21   indebtedness created under the Reimbursement
22   Agreement is financial.  It is not trade
23   debt, and there are no provisions in the
24   Reimbursement Agreement either subordinating
25   such indebtedness to the TOPRS or stating
```

1                    Proceedings

2    that such indebtedness under the

3    Reimbursement Agreement is pari passu with

4    the TOPRS Debentures.

5                    We would also join with the

6    arguments that Chase made in connection with

7    distinguishing the "or other securities sold

8    by Enron for money borrowed" language.  We

9    don't think that that qualifies the term

10   "notes or bonds" and, therefore, is not at

11   issue here to disqualify HVB's Reimbursement

12   Agreement.

13                   We, therefore, argue, Your Honor,

14   and submit that HVB's claims constitute

15   Senior Indebtedness under the TOPRS

16   Indentures and are entitled to the benefits

17   of that indenture's contractual subordination

18   provisions.

19                   Your Honor, we don't believe that

20   we need to address the 1993 and 1994 Loan

21   Agreements, because Baupost has not put in

22   any Objection to those.  So we think that

23   those are properly on Schedule S as senior

24   debt.

25                   Thank you.

```
 1              Proceedings
 2              JUDGE GONZALEZ:  Is there anyone
 3    else responding?
 4              All right.  Mr. Winston, you have
 5    five minutes for your response.
 6              MR. WINSTON:  Thank you, Your
 7    Honor.  I will try to keep it even shorter
 8    than that.
 9              Unless Your Honor has an objection,
10    I am just going to go by indenture on the
11    open issues and just highlight some of the
12    flaws in the arguments that I have heard
13    today.
14              With respect to the 1987 indenture,
15    the first open issue is what is meant by
16    "corporation," and counsel for JPMorgan cited
17    to what the indenture says.  But the
18    interesting thing is the definition of
19    "corporation" (1) uses the word "includes."
20    It doesn't say "it is limited to."  It uses
21    the word "includes," and it says
22    "corporations, voluntary associations, joint
23    stock companies, and business trusts."  So by
24    that term alone, it is already broader than
25    just a corporation and it uses the word
```

```
 1                    Proceedings
 2    "includes."
 3               The next step from that is a
 4    limited liability company.  So for purposes
 5    of understanding what is meant by the term
 6    "corporation," Enron Finance, a limited
 7    liability company, should count.
 8               The next question is the change in
 9    voting control.  If I understand the argument
10    correctly, if voting control passes to a
11    third party of an Enron affiliate, for all
12    purposes in the future that affiliate does
13    not count as a Subsidiary for the 1987
14    Indenture.  So any time in the past, where
15    someone had voting control of that Enron
16    affiliate, and it was able to vote to put a
17    director on, it will never become a
18    Subsidiary, even though Enron may end up
19    having full voting control.  That makes no
20    sense.  If at some point voting control
21    passes back into the hands of Enron, it
22    should be counted as a Subsidiary for
23    purposes of that indenture.  That was the
24    intent of the exclusion, and I have heard
25    nothing to suggest otherwise.
```

```
 1                   Proceedings
 2            Now, for Cherokee, it never
 3      happened.  Cherokee always had a third party
 4      controlling or having voting control of that
 5      entity.  So I have no argument there.  But
 6      with respect to EEC, which was not included
 7      on Schedule S for the 1987 Indenture and for
 8      purposes of Enron Finance, it should be the
 9      same result.
10            With respect to the letter of
11      credit arguments on the 1987 Indenture, after
12      arguing that you should look to the entire
13      intent of the document or look at the entire
14      document, HVB and Chase want you to ignore
15      the actual language where it says "notes,
16      bonds, debentures, or other instruments."
17      They use a definition of "bond" taken from
18      Black's Law Dictionary, which does not have
19      any connection to the context of the
20      definition of Senior Indebtedness in the 1987
21      Indenture.  "Notes, bonds, debentures or
22      other instruments," doesn't include
23      contracts.  This is a contract to reimburse
24      an obligation owed to a third party.  If it
25      wanted to include contracts, it certainly
```

```
 1                    Proceedings
 2    could have said that.  But it is very limited
 3    in what it is using.  So to suggest that just
 4    because a contract may in certain
 5    circumstances be called an "instrument" or
 6    may be called a "bond," it is not what was
 7    intended in this document based upon the
 8    plain language of the document.  But even if
 9    the Court disagrees with me, I don't
10    understand how the conditional obligation
11    exclusion doesn't apply here.
12                    At the moment the Letter of Credit
13    Reimbursement Contract was executed, there
14    was a condition to it.  The condition is the
15    letter of credit has to be drawn.  Listening
16    to HVB's argument, she skipped over that
17    step, knowing that that is the flaw in the
18    argument.  The commission may never come to
19    pass.  The letter of credit may never have
20    been drawn, or it may be drawn only
21    partially, which I think is the case for some
22    of these letters of credit.  They may be
23    fully drawn.  But at the moment that
24    obligation is created, it is a conditional
25    obligation.  What else was intended by that
```

```
1                    Proceedings
2    provision?
3               With respect to the TOPRS, with
4    respect to the Intercompany Claims, it turns
5    on what was meant by "sold by."  They have
6    argued that the "sold by Enron" applies only
7    to the term "securities."  That, again, is
8    taking the language out of context.  It says
9    "notes, bonds, debentures or other securities
10   sold by Enron."  The use of the term "other
11   securities" suggests, under the principles
12   that we have cited, that the "notes, bonds,
13   and debentures" are meant to be "other types
14   of securities" -- they just didn't say them
15   all -- and they have to be sold by Enron.
16   These weren't.  I agree.  This an atypical
17   indenture, but I have to go with what the
18   language says.  I am a little surprised at
19   it.  I also am surprised it wasn't an
20   expressed exclusion of Intercompany Claims,
21   like there was in the 1987 Indenture.  I
22   don't think most indentures have that, but
23   this one is atypical.  It still has to be
24   sold by Enron.  It has to be the type of
25   thing sold by Enron.  There were many
```

1                    Proceedings

2    obligations that were, in fact, sold by

3    Enron, one of which we have conceded today,

4    the Enron Equity Corporation Notes were, in

5    fact, sold by Enron.

6            Again, with respect to the Letter

7    of Credit Claims, it does not make sense to

8    even paint these things as "notes, bonds,

9    debentures, or other securities." Under any

10   circumstances, a letter of credit is not a

11   security. That makes no sense whatsoever and

12   it clearly wasn't sold by Enron.

13           I can't understand why they used

14   this language in the TOPRS Indentures, but it

15   is not ambiguous. Therefore, as my opposing

16   counsel have already articulated, if the

17   language is unambiguous, you must follow it.

18           After saying that, I go to the 1993

19   and 1994 Loan Agreements. I still submit

20   that the term "indebtedness" is ambiguous as

21   used in that document. As we have already

22   seen in the two other indentures, the term

23   "indebtedness" is not universal for every

24   obligation Enron has. There are exclusions

25   to it.

1          Proceedings

2              Now, unfortunately, the documents

3     that were executed between Enron and its

4     affiliate don't have any express exclusions

5     or express inclusions.  This Court can't

6     conclude that "all indebtedness" means

7     literally everything -- trade claims, to the

8     extent that someone could argue they

9     constitute money borrowed; the Intercompany

10    Claims; and even the Letter of Credit Claims,

11    because we have not objected to them, because

12    we didn't want to go through the brain damage

13    of trying to figure all of that stuff out.

14    But I have got to believe that, because that

15    term is subject to other interpretations, it

16    is possible that, as a counsel for Chase

17    argued, the holder of the obligation is what

18    matters.  They intended to exclude

19    Intercompany Claims.

20              I would submit to Your Honor that

21    under most indentures, Intercompany Claims

22    are excluded.  This one didn't expressly do

23    it.  I can see that point.  But that

24    provision or that term is subject to more

25    than one reasonable interpretation, and parol

1                     Proceedings

2     evidence will tell us what is really meant by

3     it.

4               That is all I have to say, Your

5     Honor.

6               JUDGE GONZALEZ:  All right.  Thank

7     you.  I will take it under advisement.

8               I am going to take a brief recess.

9     Those of you who haven't given your

10    appearances for the balance of the calendar,

11    please do so.

12              (Whereupon, from 11:59 a.m. to

13    12:06 p.m. a recess was taken.)

14              JUDGE GONZALEZ:  Let me just check

15    what remains on the calendar.

16              All right.  Mr. Smith, you are here

17    on the various settlements?

18              MR. SMITH:  I am, Your Honor, on

19    two groups.  Thirteen uncontested 9019s and

20    the California settlement is on at 11:55 as

21    well.

22              JUDGE GONZALEZ:  All right.  Let's

23    skip that.  I apologize for those matters

24    that were skipped over, but if we are going

25    to get these Orders entered today, I need