Case Nos. 07-7757 (CM) and 07-7941 (CM)

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

*In re:* ENRON CREDITORS RECOVERY CORP., f/k/a Enron Corp., *et al.*,

*Debtors.*

---

JPMORGAN CHASE BANK, N.A., CREDIT SUISSE FIRST BOSTON, DEUTSCHEBANK TRUST COMPANY AMERICAS, FARALLON CAPITAL MANAGEMENT, LLC, KING STREET CAPITAL L.P., REDWOOD PARTNERS, SILVER POINT CAPITAL L.P.,

*Appellants,*

–against–

THE BAUPOST GROUP, LLC, ABRAMS CAPITAL, LLC, ENRON CREDITORS RECOVERY CORP., f/k/a Enron Corp., *et al.*,

*Appellees.*

---

*Appeal from the United States Bankruptcy Court for the Southern District of New York, Case No. 01-16034 (Jointly Administered)*

**APPELLANTS' CORRECTED REPLY BRIEF**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of Americas
New York, New York 10036
(212) 715-9100
P. Bradley O'Neill, Esq.
Amy Caton, Esq.
Daniel M. Eggermann, Esq.

*Counsel for Appellants JPMorgan Chase Bank, N.A. and Choctaw/Zephyrus Appellants*

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
Sarah L. Reid, Esq.
Alison L. MacGregor, Esq.

*Counsel for Appellants JPMorgan Chase Bank, N.A.*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .......................................................................................................................2

I.   Appellees Concede that the Bankruptcy Court's Interpretation of the TOPRS
     Indentures was Incorrect ................................................................................2

     A.   The Rule of the Last Antecedent is a Grammatical Rule and Applies
          to the Interpretation of Contracts Under New York Law ...........................3

     B.   The Rule of the Last Antecedent Applies to the Definition of "Senior
          Indebtedness" Under the TOPRS Indentures ...............................................6

          1.   Appellees Misapply the Interpretive Principles of
               Ejusdem Generis and Noscitur A Sociis .........................................7

          2.   Appellees' Textual Analysis of the Definition of "Senior
               Indebtedness" is Also Fundamentally Flawed ................................9

     C.   Failure to Apply the Rule of the Last Antecedent Would Lead to
          Absurd Results ...........................................................................................15

II.  The EFP Claims are "Senior Indebtedness" Under the 1987 Indenture ...............18

     A.   The EFP Claims Became Senior Indebtedness Upon Payment Default ....19

     B.   The EFP Claims Were Not Held by a "Subsidiary" Because EFP
          Was Not a "Corporation" for Purposes of the 1987 Indenture .................22

CONCLUSION ..................................................................................................................25

i

## TABLE OF AUTHORITIES

**Page**

**Cases**

Bankers Life Co. v. Manufacturers Hanover Trust Co. (In re Kingsboro Mortgage Corp.),
514 F.2d 400 (2d Cir. 1975)...................................................................................5

Barnhart v. Thomas, 540 U.S. 20, 124 S. Ct. 376 (2003) ................................ 4, 6-7, 10

Coffin v. Bowater Inc., 501 F.3d 80 (1st Cir. 2007)..............................................4

Coker v. Coker, 650 S.W.2d 391 (Tex. 1983) ...................................................20

Doe v. Bridgeport Police Dep't, No. 00-2167,
2000 U.S. Dist. LEXIS 19329 (D. Conn. Nov. 15, 2000) ......................... 10-12

In re Enron Creditors Recovery Corp., 370 B.R. 64 (Bankr. S.D.N.Y. 2007) ..................... *passim*

Federal Trade Comm'n v. Mandel Bros., 359 U.S. 385, 79 S. Ct. 818 (1959) ............................10

Finest Invs. v. Sec. Trust Co. of Rochester, 468 N.Y.S.2d 256 (N.Y. App. Div. 1983) ............. 5-6

Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132 (Tex. 1994)...........................................22

Gudgeon v. County of Ocean, N.J., 342 A.2d 553 (N.J. Super. Ct. App. Div. 1975) .................13

Gullett v. Van Dyke Constr. Co., 111 P.3d 220 (Mont. 2005) ........................................4

HSBC Bank USA v. Branch (In re Bank of New England Corp.),
364 F.3d 355 (1st Cir. 2004) ..................................................................5

Johnson & Johnson v. Guidant Corp., No. 06-7685,
2007 U.S. Dist. LEXIS 64114 (S.D.N.Y. Aug. 29, 2007)...................................8

Kucher v. DaimlerChrysler Corp., 802 N.Y.S.2d 298 (N.Y. App. Term 2005)...........................3

Marriott Family Rests., Inc. v. Lunan Family Rests. (In re Lunan Family Rests.),
194 B.R. 429 (Bankr. N.D. Ill. 1996) ...................................................5, 23

In re Maureen G., 426 N.Y.S.2d 384 (N.Y. Fam. Ct. 1980).............................. 3, 10-12

Maurice Goldman & Sons, Inc. v. Hanover Ins. Co., 607 N.E.2d 792,
592 N.Y.S.2d 645 (1992)................................................................4

McCullagh v. Dean Witter Reynolds, Inc., 177 F.3d 1307 (11th Cir. 1999).............................4

National Surety Corp. v. Midland Bank, 551 F.2d 21 (3d Cir. 1977) ............................ 12-13

Nat'l Union Fire Ins. Co. of Pittsburgh v. Ins. Co. of N. Am.,
955 S.W.2d 120 (Tex. App. 1997).......................................................20

Natwest USA Credit Corp. v. Alco Standard Corp., 858 F. Supp. 401 (S.D.N.Y. 1994) ............18

Norton v. S. Utah Wilderness Ass'n, 542 U.S. 55, 124 S. Ct. 2373 (2004) ..................................8

People v. Illardo, 399 N.E.2d 59, 423 N.Y.S.2d 470 (N.Y. 1979) ..................................7

Popkin v. Sec. Mut. Ins. Co. of N.Y., 367 N.Y.S.2d 492 (N.Y. App. Div. 1975)........................7

Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d 1206 (9th Cir. 1994) .............................5, 23

<u>Russell v. Boston Wyman, Inc.</u>, 574 N.E.2d 379 (Mass. 1991) .................................................11, 12

<u>San Antonio v. Heath & Stich, Inc.</u>, 567 S.W.2d 56 (Tex. Civ. App. 1978)................................22

<u>Sefzik v. Mady Dev., L.P.</u>, 231 S.W.3d 456 (Tex. App. 2007)......................................................21

<u>Smith v. Carter & Burgess, Inc.</u>, No. 2-03-313,
    2005 Tex. App. LEXIS 1140 (Tex. App. Feb. 10, 2005) ..................................................20

<u>Smith v. Whitney</u>, 273 N.Y.S. 822 (N.Y. Sup. Ct. 1934) ................................................................4

<u>State v. Laemoa</u>, 533 P.2d 370 (Or. Ct. App. 1975).................................................................11, 12

<u>State v. Webb</u>, 927 P.2d 79 (Or. 1996) ..........................................................................................13

<u>Taylor v. Prudential Ins. Co. of Am.</u>, 253 N.Y.S. 55 (N.Y. Sup. Ct. 1931) ..................................4

<u>Tesmer v. Charter Films, Inc.</u>, 396 F. Supp. 2d 969 (W.D. Wisc. 2005) .......................................4

<u>United States v. Bass</u>, 404 U.S. 336, 92 S. Ct. 515 (1971).....................................................13, 14

<u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 109 S. Ct. 1026 (1989) ................ 11-12

<u>Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp. (In re McKenna)</u>,
    238 F.3d 186 (2d Cir. 2001).............................................................................................7

**<u>Statutes</u>**

N.Y.U.C.C. Law § 1-209 ................................................................................................................6

**<u>Other Sources</u>**

<u>Black's Law Dictionary</u> (8th ed. 2004).................................................................................8, 9, 14

<u>The Chicago Manual of Style</u>, (15th ed. 2003).............................................................................12

2A Norman J. Singer, <u>Sutherland Statutory Construction</u>, § 47:33 (6th rev. ed. 2000) ...........6, 13

William Strunk, Jr. & E.B. White, <u>The Elements of Style</u> (4th ed. 2000)....................................12

## PRELIMINARY STATEMENT[1]

This Appeal does not involve a dispute between a senior creditor and a junior creditor over the proper scope of subordination.  Under the terms of Enron's plan of reorganization, parties holding claims under Enron's various subordinated indentures have already been subordinated and the distributions to which they would otherwise be entitled set aside for distribution for senior creditors.  This appeal arises out of efforts by two senior creditors – The Baupost Group and Abrams Capital – to remove certain senior claims from Schedule S to the plan that Enron considered "Senior Indebtedness" and thereby limit the amount of senior claims entitled to the benefits of subordination under Enron's subordinated indentures. It is, in short, a dispute among two groups of senior creditors, the resolution of which will increase or decrease their respective shares of money that, but for contractual subordination, would otherwise have been paid to the holders of subordinated debt.

Notwithstanding the presence of more than $10 billion in senior claims listed on Schedule S and potentially hundreds of senior holders of those claims, Appellees are the only senior claimants to have challenged Enron's judgment and sought removal of the Cherokee and EFP Claims from Schedule S.  The reason for this is straightforward:  the Cherokee and EFP Claims are patently Senior Indebtedness of Enron.  In response to Appellants' straightforward and well-supported demonstration that the Bankruptcy Court had erroneously failed to apply a well-recognized rule of interpretation and otherwise misinterpreted the terms of the relevant indentures, Appellees offer an avalanche of rhetoric and argument, but little real substance. Careful examination of their contentions reveals that Appellees ignore relevant caselaw and misunderstand basic principles of grammar and legal interpretation.

---

[1]     Capitalized terms not defined herein have the meanings set forth in Appellants' Opening Brief.

For the reasons set forth in Appellants' Opening Brief and for the additional reasons set forth below, the Bankruptcy Court's Order should be reversed to the extent that it provides that (i) the Cherokee and EFP Claims do not constitute "Senior Indebtedness" under the TOPRS Indentures and (ii) the EFP Claims do not constitute "Senior Indebtedness" under the 1987 Indenture.

<u>**ARGUMENT**</u>

## I.    Appellees Concede that the Bankruptcy Court's Interpretation of the TOPRS Indentures was Incorrect

The Bankruptcy Court concluded that the Cherokee and EFP Claims – claims evidenced by notes – did not constitute "Senior Indebtedness" under the TOPRS Indentures because it interpreted the phrase "sold for money borrowed" to modify not only the term "other securities," but also prior terms in the definition, including the term "notes." <u>In re Enron Creditors Recovery Corp.</u>, 370 B.R. 64, 79 (Bankr. S.D.N.Y. 2007). In reaching this conclusion, the Bankruptcy Court agreed with the Appellants that, as ordinarily applied, the rule of the last antecedent would require the phrase "sold for money borrowed" to be interpreted as modifying only "other securities" and not extended back to "notes, bonds and debentures." <u>Id</u>. at 78-79. However, the Court expressly declined to apply the rule of the last antecedent to the TOPRS Indentures because it concluded that the presence of the word "other" before the last antecedent term "securities" rendered the rule inapplicable. <u>Id</u>.

In their opening brief, Appellants demonstrated that the central holding of the Bankruptcy Court – that the inclusion of the word "other" requires a departure from the rule of the last antecedent – had been expressly rejected by two separate unanimous decisions of the United States Supreme Court. Thus, the Bankruptcy Court erred in its conclusion that, in order to constitute Senior Indebtedness under the TOPRS Indentures, indebtedness evidenced by

"notes" must be "sold for money borrowed."  In their response, Appellees do not address the Appellants' argument that the Bankruptcy Court misinterpreted the rule of the last antecedent. Instead, Appellees launch into several convoluted and baseless arguments as to why the rule of the last antecedent does not apply in the first instance.

First, Appellees contend that the rule of the last antecedent does not apply to subordination agreements that, like the TOPRS Indentures, are governed by New York law. Second, Appellees argue that, even if it applies in New York, the rule of the last antecedent is limited to issues of statutory interpretation and does not apply to issues of contractual interpretation.  Third, Appellees argue, for a variety of grammatical reasons, that the rule should not be applied to the TOPRS Indentures.  Fourth, Appellees argue that the result of their interpretation of the TOPRS Indentures − the exclusion of bank debt from the definition of "Senior Indebtedness" – is somehow not an absurd outcome.

For the reasons set forth below, each of these arguments lacks merit and should be rejected.  Accordingly, to the extent that it held that the Cherokee and EFP Claims did not constitute "Senior Indebtedness" under the TOPRS Indentures, the Bankruptcy Court's decision should be reversed.

### A.   The Rule of the Last Antecedent is a Grammatical Rule and Applies to the Interpretation of Contracts Under New York Law

Appellees first assert that Appellants fail to discuss New York law and fail to address whether, under New York law, the rule of the last antecedent would apply to the interpretation of the TOPRS Indentures.  (Appellees' Br. 7)  Nevertheless, Appellants admit, as they must, that New York courts have applied the rule in cases involving statutory interpretation. See, e.g., Kucher v. DaimlerChrysler Corp., 802 N.Y.S.2d 298, 301 (N.Y. App. Term 2005) (applying rule to construe New York "lemon law"); In re Maureen G., 426 N.Y.S.2d 384, 388

3

(N.Y. Fam. Ct. 1980) (applying rule to construe New York Family Court Act); <u>Smith v. Whitney</u>, 273 N.Y.S. 822, 825 (N.Y. Sup. Ct. 1934) (applying rule to construe civil procedure code).

In the face of this precedent, Appellees argue that, even if New York has adopted the principle, it has done so only for purposes of statutory construction, but not for purposes of contractual interpretation. (Appellees' Br. 8) This assertion, however, is also wrong. New York courts, including the New York Court of Appeals, have also applied the rule to resolve contract disputes. <u>See</u>, <u>e.g.</u>, <u>Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.</u>, 607 N.E.2d 792, 793, 592 N.Y.S.2d 645 (N.Y. 1992) (applying principles underlying rule of the last antecedent to interpret exclusion contained in insurance policy); <u>Taylor v. Prudential Ins. Co. of Am.</u>, 253 N.Y.S. 55, 60-61 (N.Y. Sup. Ct. 1931) (applying rule of the last antecedent to interpret exclusion in insurance contract).[2] Even if this were not the case − and it plainly is − there is no plausible basis to limit the application of the rule of the last antecedent to statutory interpretation. The rule is one of English grammar. <u>See</u>, <u>e.g.</u>, <u>Barnhart v. Thomas</u>, 540 U.S. 20, 26, 124 S. Ct. 376, 380 (2003) (referring to the rule as "grammatical"); <u>Coffin v. Bowater Inc.</u>, 501 F.3d 80, 94 (1st Cir. 2007) (same); <u>Taylor</u>, 253 N.Y.S. at 60-61 (same). As such, it is plainly applicable to contracts which are subject to the same rules of grammar as statutes.

---

[2]     New York, moreover, is hardly alone in applying the rule of the last antecedent to construe contracts. <u>See</u>, <u>e.g.</u>, <u>Coffin v. Bowater Inc.</u>, 501 F.3d 80, 94 (1st Cir. 2007) (applying rule of last antecedent to interpret employee benefit plan); <u>McCullagh v. Dean Witter Reynolds, Inc.</u>, 177 F.3d 1307, 1309 (11th Cir. 1999) (applying rule of last antecedent to interpret AMEX Constitution); <u>Tesmer v. Charter Films, Inc.</u>, 396 F. Supp. 2d 969, 975-76 (W.D. Wis. 2005) (applying rule of last antecedent to stock repurchase agreement); <u>Gullett v. Van Dyke Constr. Co.</u>, 111 P.3d 220, 224 (Mont. 2005) (applying rule of last antecedent to real property purchase contract). Appellees' citations to a Kansas case and a Maryland case offer them no support. As Appellees themselves admit, the TOPRS Indentures are governed by New York law.

Appellees cannot salvage their position by arguing that the rule of the last antecedent does not apply to the interpretation of the TOPRS Indentures because "contractual subordination provisions are strictly construed against the beneficiary." (Appellees' Br. 8)  As an initial matter, even if such a principle existed, it would not benefit Appellees, who are themselves "beneficiaries of subordination" – i.e., senior creditors seeking to prevent other senior creditors from sharing in the benefits of subordination.

More importantly, no case cited by Appellees even considers the application of the rule of the last antecedent to subordination agreements, let alone holds that the rule does not apply to such agreements.   Indeed, Appellees' cases merely stand for the unremarkable proposition that the parties' rights under a subordination agreement are defined by the express terms of the agreement – not that such contracts are construed strictly against subordination.  In fact, several of those decisions actually construe the underlying subordination agreements in favor of the senior creditor.[3]

Moreover, none of the cases cited by Appellees construe New York law or suggest that such a presumption exists in this state.  In fact, New York courts have not developed any rules of interpretation applicable specifically to subordination agreements.  See, e.g., HSBC Bank USA v. Branch (In re Bank of New England Corp.), 364 F.3d 355, 364 (1st Cir. 2004)

---

[3]     See, e.g., Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d 1206, 1214-15 (9th Cir. 1994) (holding in favor of the senior creditor and stating that rights of priority under subordination agreement "are limited strictly by the express terms and conditions of the agreement"); Marriott Family Rests., Inc. v. Lunan Family Rests. (In re Lunan Family Rests.), 194 B.R. 429, 445 (Bankr. N.D. Ill. 1996) (ruling in favor of senior creditor and refusing to hear extrinsic evidence because rights of priority under subordination agreement were "limited strictly by the express terms and conditions of the agreement").   The last, Bankers Life Co. v. Manufacturers Hanover Trust Co. (In re Kingsboro Mortgage Corp.), merely holds that junior creditors were not subordinated to senior creditors' rights to payment of post petition interest where the terms of the subordination agreement did not expressly provide for such subordination. 514 F.2d 400, 401 (2d Cir. 1975).

(noting that New York courts have not developed special rules of interpretation for subordination agreements); <u>Finest Invs. v. Sec. Trust Co. of Rochester</u>, 468 N.Y.S.2d 256, 257-58 (N.Y. App. Div. 1983) (applying general contract law principles to subordination dispute); <u>cf</u>. N.Y.U.C.C. Law § 1-209 off'l cmt. 4 (stating that the enforcement of subordination agreements is left to supplemental principles under section 1-103, which codifies the application of general contract principles).  As such, general rules of contract construction, including rules of grammar such as the rule of the last antecedent, apply to the interpretation of subordination agreements governed by New York law.

**B.    The Rule of the Last Antecedent Applies to the Definition of "Senior Indebtedness" Under the TOPRS Indentures**

Unable to demonstrate that the rule of the last antecedent does not apply to issues of contractual interpretation under New York law, Appellees next argue that the rule does not apply to the language contained in the definition of "Senior Indebtedness" under the TOPRS Indentures.  By its terms, the rule of the last antecedent provides that a limiting clause or phrase should be read as modifying <u>only</u> the noun or phrase that it immediately follows, and not all preceding nouns or phrases in a sequence.  <u>See</u>, <u>e.g.</u>, <u>Barnhart</u>, 540 U.S. at 26, 124 S. Ct. at 380; 2A Norman J. Singer, <u>Sutherland Statutory Construction</u>, § 47:33 (6th rev. ed. 2000) ("The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.  Thus a proviso usually is construed to apply to the provision or clause immediately preceding it.") (footnotes and quotations omitted).  Applied to the definition of "Senior Indebtedness" in the TOPRS Indentures, the rule of the last antecedent would, as the Bankruptcy Court correctly held, dictate that the qualifying phrase "sold for money borrowed" applies only to the immediately preceding antecedent "other securities," and not to the preceding nouns in the sequence, including "notes."  <u>Enron</u>, 370 B.R. at 78.

6

While the rule of the last antecedent is not absolute, the Supreme Court has made clear that the rule applies unless it is "overcome by other indicia of meaning." Barnhart, 540 U.S. at 26, 124 S. Ct. at 380. In an attempt to overcome the application of the rule here, Appellees argue that (i) other canons of construction (as opposed to indicia of other meaning), specifically the rules of ejusdem generis and noscitur a sociis, as well as (ii) the language and punctuation of the definition of Senior Indebtedness, indicate that the phrase "sold for money borrowed" was intended to apply to the term "notes." Neither of these arguments is supportable.

1. Appellees Misapply the Interpretive Principles
of Ejusdem Generis and Noscitur A Sociis

Appellees assert that the interpretive principles of ejusdem generis and noscitur a sociis dictate that, contrary to the rule of the last antecedent, the term "notes" must have been intended to be modified by the phrase "sold for money borrowed."[4] (Appellees' Br. 10) This argument, however, misstates the operation of those doctrines.

The principles of ejusdem generis and noscitur a sociis require that the meaning of a general term in a series is determined "by the company it keeps." People v. Illardo, 399 N.E.2d 59, 63, 423 N.Y.S.2d 470, 474 (N.Y. 1979); see also Popkin v. Sec. Mut. Ins. Co. of N.Y., 367 N.Y.S.2d 492, 495-96 (N.Y. App. Div. 1975) (holding that noscitur a sociis and ejusdem generis are rules of construction "whereby the meaning of a word in a provision may be ascertained by a consideration of the company in which it is found and the meaning of the words associated with it"). Thus, where several specific terms in a sequence are followed by a more

---

[4]    Significantly, although Appellees argued below that the phrase "sold for money borrowed" applied to the term "notes," Appellees never raised the doctrines of ejusdem generis and noscitur a sociis or the other textual arguments set forth at pages 10-16 of the Appellees' Opening Brief. Accordingly, those arguments have been waived. See, e.g., Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp. (In re McKenna), 238 F.3d 186, 187 (2d Cir. 2001) (failure to raise argument below waives issue on appeal).

general term, the general term is deemed to share the characteristics of the specific terms that precede it.  See Norton v. S. Utah Wilderness Ass'n, 542 U.S. 55, 63, 124 S. Ct. 2373, 2379 (2004) (the "interpretive canon of ejusdem generis would attribute to the last item . . . the same characteristic of discreteness shared by all the preceding items"); Johnson & Johnson v. Guidant Corp., No. 06-7685, 2007 U.S. Dist. LEXIS 64114, at *17-18 (S.D.N.Y. Aug. 29, 2007) (applying doctrine to limit "broad catch-all terms 'other advisor' and 'agent'" to mean parties representing a bidder's interest in a transaction, consistent with other listed terms "investment banker, financial advisor, attorney, accountant").

Applied here, this doctrine would require a characteristic of the specific terms in the definition (i.e., "notes," "bonds" and "debentures") to be attributed to the last, general term in the series (i.e., "other securities") which may, but need not necessarily, share that characteristic. Here, the characteristic shared by all of these terms (including "securities") is that they are all evidence of indebtedness.  See Black's Law Dictionary 1385 (8th ed. 2004) (defining "security" in pertinent part as "any interest or instrument relating to finances, including a note, stock, treasury stock, bond, debenture, [or] evidence of indebtedness") (emphasis added).

But, far from arguing that the characteristics of the specific terms "notes," "bonds," and "debentures" are attributable to the general term "other securities,"  Appellees argue just the opposite:  that the phrase "sold for money borrowed" following the general term "other securities" somehow must be read to apply to the more specific terms "notes," "bonds" and "debentures."  (Appellees' Br. 11)  Neither the principles of ejusdem generis nor noscitur a sociis, however, even arguably authorize such a result.

Appellees try to buttress their fundamental misapplication of the principles of ejusdem generis and noscitur a sociis by arguing that it is appropriate to treat the term "notes" as

8

modified by the phrase "sold for money borrowed" because "'[b]onds' and 'debentures' are typically viewed as debt securities that are sold by a debtor, usually to public investors." (Appellees' Br. 10)  Not only is this assertion totally unsupported by the record – it is wrong.  In fact, "bonds" and "debentures" are typically "issued" by an obligor (even if they may be subsequently "sold" by an underwriter or a third-party to public investors).  See, e.g., Black's Law Dictionary 190, 430 (8th ed. 2004) (defining "bond" as a "long-term, interest-bearing debt instrument issued by a corporation or governmental entity" and  "debenture" as a "bond that is backed only by the general credit and financial reputation of the corporate issuer") (emphasis added).

Appellees are similarly incorrect when they argue that the separation of the term "capitalized lease obligations" from "notes," "bonds," "debentures" and "other securities" in the definition of "Senior Indebtedness" somehow indicates that the term "notes" must be modified by "sold for money borrowed."  (See Appellees' Br. 10-12)  Capitalized lease obligations are not securities and certainly not purely obligations for money borrowed.  Rather, they are obligations under a lease that transfers title to the leased property at the end of its term.  Black's Law Dictionary 910 (8th ed. 2004) (defining "capital lease" (through the definition of "lease-purchase agreement") as "a lease of property . . . by which ownership of the property is transferred to the lessee at the end of the lease term").  Accordingly, it is entirely proper for the TOPRS Indentures to list "capitalized lease obligations" separately and this in no way bolsters the contention that "notes," "bonds," "debentures" and "other securities" were required to be "sold."

2.    Appellees' Textual Analysis of the Definition of
      "Senior Indebtedness" is Also Fundamentally Flawed

In addition to misapplying the interpretive principles of ejusdem generis and noscitur a sociis, Appellees also advance a series of textual arguments to support their contention

that the rule of the last antecedent should not apply in this case.  Each of these arguments is baseless.

First, Appellees go to great lengths to distinguish the language of the statutes at issue in the two Supreme Court decisions cited by Appellants in their opening brief – <u>Barnhart v. Thomas</u>, 540 U.S. 20, 124 S. Ct. 376 (2003) and <u>Federal Trade Commission v. Mandel Bros.</u>, 359 U.S. 385, 79 S. Ct. 818 (1959) – from the language contained in the definition of "Senior Indebtedness" in the TOPRS Indentures.  (Appellees Br. 12-14)  These efforts, however, miss the point.  Appellants did not argue that the language at issue in <u>Barnhart</u> and <u>Mandel</u> exactly paralleled that at issue here.  Instead, they relied on <u>Barnhart</u> and <u>Mandel</u> for their holdings that the presence of the word "other" does not render the rule of the last antecedent inapplicable.  Appellees do not contest this proposition.  Moreover, the Court's holdings in those cases was not driven in any way by the language that Appellees highlight as distinguishable.

In any event, courts have routinely applied the rule of the last antecedent to language much like that at issue here.  For example, in <u>In re Maureen G.</u>, the New York Family Court was confronted with a statute defining "respondent" in a child abuse statute as "any parent or <u>other</u> <u>person</u> legally responsible for a child's care who is alleged to have abused or neglected such child."  426 N.Y.S.2d 384, 387 (N.Y. Fam. Ct. 1980) (emphasis added).  Applying the rule of the last antecedent, the <u>Maureen G.</u> court easily concluded that "[t]he phrase 'other person legally responsible' should be treated as an independent phrase, with none of its modifiers being applicable to 'parent.'"  <u>Id</u>. at 388.  Similarly, in <u>Doe v. Bridgeport Police Department</u>, the court was confronted with a statute containing the phrase "hypodermic syringes, needles and other objects used, intended for use or designed for use in parenterally injecting controlled substances into the human body."  No. 00-2167, 2000 U.S. Dist. LEXIS 19329, at *3-4 (D. Conn. Nov. 15,

2000). Applying the rule of the last antecedent, the <u>Doe</u> court concluded that the phrase "used, intended for use or designed for use" modified only "other objects" and did not modify the terms "hypodermic syringes" or "needles." <u>Id</u>. at *23.

Likewise, in <u>Russell v. Boston Wyman, Inc.</u>, the relevant statute provided that the following parties were deemed to have waived rights in certain circumstances: "the employee's spouse, children, parents and any other member of the employee's family or next of kin who is wholly or partly dependent upon the earnings of such employee." 574 N.E.2d 379, 380 (Mass. 1991). The Court applied the rule of the last antecedent to hold that the phrase "who is wholly or partly dependent upon the earnings of such employee" modified only "any other member of the employee's family or next of kin" and not the preceding terms. <u>Id</u>.; <u>see also</u> <u>State v. Laemoa</u>, 533 P.2d 370, 372-73 (Or. Ct. App. 1975) (holding that underscored clause in "parent, lawful guardian or other person <u>lawfully charged with the care or custody of a child . . .</u>" modified only "other person" and did not qualify the term "parent").

Second, Appellees argue that the absence of a comma after "debentures" – the penultimate term in the relevant series – in the definition of "Senior Indebtedness" precludes the application of the rule of the last antecedent. (Appellees' Br. 11) Appellees are simply incorrect. Courts routinely apply the rule of the last antecedent even where the penultimate word in a series of potential antecedents is not followed by a comma.[5] <u>See</u>, <u>e.g.</u>, <u>Maureen G.</u>, 426

---

[5] Appellees strain to construe <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 109 S. Ct. 1026 (1989), as supporting their position, but the case is plainly inapposite. Not only does it fail to address the rule of the last antecedent, but the rationale of the Court's decision is not applicable here. There, the Court considered Section 506(b) of the Bankruptcy Code which provides that "there shall be allowed to the holder of [an oversecured] claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement." 11 U.S.C. § 506(b). Because the phrase "interest on such claim," was entirely set off by commas and separated from the series "fees, costs, or charges" by the word "and any," the Court concluded that the phrase "provided for under the agreement" modified only "fees, costs, or charges." <u>Ron</u>

N.Y.S.2d at 387; <u>Doe</u>, 2000 U.S. Dist. LEXIS 19329, at *3-4; <u>Russell</u>, 574 N.E.2d at 380;

<u>Laemoa</u>, 533 P.2d at 372-73.  Moreover, adding a comma after the penultimate term in the

definition – so that it reads "notes, bonds, debentures, and other securities sold for money

borrowed" – would not have any grammatical impact on the application of the modifying phrase

"sold for money borrowed."  Rather, the inclusion of a comma in that location is simply the

preferred usage of a comma in a series of nouns separated by a conjunction.  William Strunk, Jr.

& E.B. White, <u>The Elements of Style</u> 2 (4th ed. 2000) ("In a series of three or more terms with a

single conjunction, use a comma after each term except the last."); <u>The Chicago Manual of Style</u>,

§ 6.19 (15th ed. 2003) ("When a conjunction joins the last two elements of a series, a comma . . .

should appear before the conjunction.").  Although grammatically correct, the inclusion of that

comma would not change the substantive meaning of the sentence nor would it have any impact

on the applicability of the rule of the last antecedent.

   In fact, if the drafters of the TOPRS Indentures had intended that the qualifying

phrase "sold for money borrowed" modify the other antecedents (<u>i.e.</u>, "notes," "bonds" and

"debentures"), they would have placed a comma <u>after</u> "other securities."  Thus, in <u>National</u>

<u>Surety Corp. v. Midland Bank</u>, the court interpreted a statute that authorized banks "to issue

letters of credit authorizing holders thereof to draw drafts upon it or upon its correspondents at

sight or on time not exceeding one year."  551 F.2d 21, 26 (3d Cir. 1977).  The Third Circuit

held that "[c]ommon English usage, let alone the last antecedent rule of statutory construction,

requires that ['not exceeding one year'] be read to modify 'time,' rather than the more remote

phrase 'letters of credit.'"  <u>Id</u>. at 34.  The Third Circuit noted that the legislature, had it intended

---

<u>Pair</u>, 489 U.S. at 241-42, 109 S. Ct. at 1030-31.  Contrary to what Appellees contend, the Court's
holding was not based solely on the presence of a comma separating "interest on such claim"
from "fees, costs, or charges."

the one year time limit to modify letters of credit, could have added a comma after the term "time."  Id.; see also State v. Webb, 927 P.2d 79, 83-85 (Or. 1996) (stating that rule of last antecedent applies where modifying phrase not set off from antecedents with a comma); Gudgeon v. County of Ocean, N.J., 342 A.2d 553, 555-56 (N.J. Super. Ct. App. Div. 1975) ("Where a comma is used to set a modifying phrase off from previous phrases, the modifying phrase applies to all the previous phrases, not just the immediately preceding phrase."); 2A Norman J. Singer, Sutherland Statutory Construction, § 47:33 (6th ed. rev. 2000) ("Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.").

Accordingly, for the phrase "sold for money borrowed" to modify the term "notes" as well as "other securities," the TOPRS Indentures would have to read "notes, bonds, debentures and other securities, sold by [Enron] for money borrowed."  That they do not do so compels the conclusion that the phrase "sold by [Enron] for money borrowed" modifies only "other securities."

Appellees' reliance on United States v. Bass, 404 U.S. 336, 92 S. Ct. 515 (1971) is misplaced.  At issue in Bass, was a federal criminal statute which made it a federal crime for convicted felons to "receive[], possess[], or transport[] in commerce or affecting commerce . . . any firearm."  Id. at 337, 92 S. Ct. at 517.  The issue before the Court was whether the phrase "in commerce or affecting commerce" modified only "transport" or also applied to the other antecedents "receive" and "possess."  Id. at 339, 92 S. Ct. at 518.  Although the Court ultimately did not apply the rule of the last antecedent in Bass, it did not do so because there was overwhelming indicia of contrary intent.  Most importantly, the Supreme Court held that any other construction would effect a Congressional intrusion into state jurisdiction by making it a

13

federal offense merely to possess firearms – a crime traditionally enforced under state law.  Id. at 349-50, 92 S. Ct. at 523-24.  Accordingly, the Court held that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance."[6] Id. at 349, 92 S. Ct. at 523.

Lastly, simple common sense undercuts Appellees' interpretation of the definition of "Senior Indebtedness."  The terms "notes," "bonds" and "debentures" all inherently evidence "money borrowed," but "other securities" does not necessarily do so.  The phrase "sold for money borrowed" is therefore only necessary to limit the definition of "other securities" to exclude indebtedness evidenced by equity securities (e.g., preferred stock dividends) from benefiting from subordination.  Appellees are simply incorrect that this construction neglects the "sold" qualifier. (Appellees' Br. 20-21)  Rather, it ensures that other debt securities were, in any event, sold for money borrowed.   Appellees (and the Bankruptcy Court) attach too much significance to the term "sold," thereby drawing a distinction between instruments that are "sold" and those that are "issued."   For purposes of this dispute, this is a distinction without a difference.  The key element of any sale is an exchange of property for value.[7]  Here, there is no allegation that the "notes" underlying the Cherokee and EFP Claims were gifted or otherwise given without value.  The notes were issued for consideration, and accordingly, are entitled to the benefits of subordination under the TOPRS Indentures, whether denominated as a "sale" or "issuance."

---

[6]    The Bass Court also underscored a federal policy that, given the seriousness of criminal penalties, ambiguities in criminal statutes should be resolved in favor of lenity.  404 U.S. at 347-48, 92 S. Ct. at 522-23.  Contrary to what Appellees suggest, no such policy exists with respect to subordination agreements (see discussion supra at pp.4-5).

[7]    Black's Law Dictionary defines "sale" as "[t]he transfer of property or title for a price." Black's Law Dictionary 1364 (8th ed. 2004).

C.    **Failure to Apply the Rule of the Last**
      <u>**Antecedent Would Lead to Absurd Results**</u>

Appellants demonstrated in their opening brief that the Bankruptcy Court's interpretation would essentially exclude bank debt from the definition of "Senior Indebtedness" – an absurd and unusual result that underscores the error of the Bankruptcy Court's construction. In response, Appellees assert several arguments in an attempt to explain why the Bankruptcy Court's Opinion would not lead to absurd or unusual results. As discussed below, none of those arguments have any merit whatsoever.

<u>First</u>, Appellees contend that subordinated indentures contain wide variations in how "Senior Indebtedness" is defined. (Appellees' Br. 16-17)  In support of this argument, Appellees improperly rely on extrinsic evidence and refer to the definitions of "Senior Indebtedness" contained in some of Enron's other indentures.  (<u>Id</u>.)  Although there is undoubtedly variation in the way those indentures define senior debt, and some do so more narrowly than others, Appellees cite to no indenture excluding bank debt.  Nor do any of the indentures cited to by Appellees exclude from "Senior Indebtedness," indebtedness that is evidenced by notes, bonds, and debentures that are said to be "issued" and not "sold."  The Bankruptcy Court's interpretation of "Senior Indebtedness" under the TOPRS Indentures is not absurd and unusual simply because it is more restrictive.  It is absurd and unusual because it would remove from that definition the entire category of bank debt – a result that no party-in-interest, including the Debtors and Appellees, ever imagined.

<u>Second</u>, Appellees disingenuously argue that there is no basis to conclude that the Bankruptcy Court's construction of the TOPRS Indentures would exclude Enron's bank debt from the definition of "Senior Indebtedness." (Appellees' Br. 18-19)  While no party in interest has objected to the inclusion of bank debt on Schedule S, the Bankruptcy Court itself, however,

recognized that Enron's bank debt would be excluded under its interpretation.  Enron, 370 B.R. at 81 n.8 ("Under the TOPRS Indenture, existing bank debt would not be considered Senior Indebtedness.").     Significantly, Enron itself understood that the Bankruptcy Court's interpretation would exclude its bank debt from Schedule S.  Indeed, after the Bankruptcy Court issued its Opinion, Enron filed a motion seeking clarification in which it indicated that approximately $3 billion in bank debt was implicated by the Bankruptcy Court's interpretation. (AA Tab 22 at 5)  Notably, Appellees admit, as they must, that they did not believe that the bank debt could be excluded from "Senior Indebtedness" under the TOPRS Indentures.  (Appellees' Br. 18 n.12)  That is not surprising – excluding the bank debt, as the Bankruptcy Court's interpretation undoubtedly would do, would be unusual, if not absurd.

Third, Appellees assert that Appellants "grossly overstate the purported 'unusualness' that results from the Bankruptcy Court's conclusion."  (Appellees' Br. 19)  That is so, Appellees reason (without any factual support whatsoever), because the claims included on Schedule S were all "sold" by Enron.  If that were the case, the Bankruptcy Court would not have concluded that, under its interpretation of the TOPRS Indentures, Enron's existing bank debt would not be considered Senior Indebtedness.  Likewise, Enron would not have sought to remove the bank debt after the Bankruptcy Court issued its Opinion.

Fourth, Appellees argue that JPMC knows the difference between a note "sold" and a note "issued" because it purchased notes in connection with the "so called Sequioa Transactions."  (Appellees' Br. 19)  Appellants are at a loss to understand how JPMC's purchase of notes somehow negates the absurdity or unusualness of the Bankruptcy Court's interpretation.  Besides, the distinction between a note that is "issued" and one that is "sold" is one without a difference for these purposes.  (See supra p.14)

Fifth, Appellees assert that the inclusion or exclusion of bank debt as Senior Indebtedness can vary. (Appellees' Br. 20) Again, Appellees fail to cite to a single example of an indenture excluding bank debt. Appellees then question why there would ever be a need to expressly include bank debt within a definition of Senior Indebtedness as the 1987 Indenture does.[8] (Id.) However, Appellees are not suggesting that the TOPRS Indentures exclude bank debt from the definition of Senior Indebtedness (even though it is not expressly included). (Appellees Br. 18 n.12) It is the Appellees' contention that bank debt is Senior Indebtedness while the Cherokee and EFP Claims are not. Not even the Bankruptcy Court agreed with that interpretation. Enron, 370 B.R. at 81 n.8 ("Under the TOPRS Indenture, existing bank debt would not be considered Senior Indebtedness"). Why the 1987 Indenture expressly included bank debt within the definition of "Senior Indebtedness" is a question for the drafters of the 1987 Indenture. The fact is that the definition of "Senior Indebtedness" in the TOPRS Indentures is sufficiently broad enough to include bank debt in addition to the Cherokee and EFP Claims. The Bankruptcy Court simply erred as a matter of law in concluding otherwise.

Finally, Appellees suggest that because JPMC did not appeal from the Bankruptcy Court's Order as it relates to certain letter of credit claims, that to accept Appellants' position would create inconsistencies in the implementation of the Order. (Appellees' Br. 20) Appellees ignore the fact that JPMC is a party to this dispute in a representative capacity. The fact that JPMC was not directed to appeal from the aspect of the Order as it relates to the letter of credit claims cannot be used as a basis for affirming the Bankruptcy Court's Order. To rule otherwise

---

[8]    Notably, neither the 1993 nor the 1994 Loan Agreements (Appellees' App. Tabs A and B) expressly included senior bank debt within their definition of "Senior Indebtedness." Notwithstanding this, nobody, not even the Bankruptcy Court, interpreted those agreements to exclude bank debt from Senior Indebtedness. Enron, 370 B.R. at 82 (noting that 1993 and 1994 Loan Agreements define Senior Indebtedness broadly to include all indebtedness).

would turn appellate practice on its head. Indeed, if Appellees were correct, any decision adversely affecting multiple parties would be affirmed unless <u>all</u> parties appealed. In addition, through the motion to clarify (AA Tab 22), Enron actually sought to implement the Bankruptcy Court's Order on a more consistent basis by removing additional claims based on the Bankruptcy Court's interpretation of the various indentures. Appellees, however, opposed those efforts, showing little concern about the consistent implementation of the Order. (App. Supp. App. Tab 1)[9]

For the reasons set forth above and in Appellants' Opening Brief, the Bankruptcy Court erred by failing to apply the rule of the last antecedent and interpreting the TOPRS Indentures in such a way that would lead to absurd and unusual results. <u>See</u> <u>Natwest USA Credit Corp. v. Alco Standard Corp.</u>, 858 F. Supp. 401, 413 (S.D.N.Y. 1994) ("A contract must be construed, if possible to avoid an interpretation that will result in an absurdity, an injustice or have an inequitable or unusual result."). Accordingly, to the extent that it held that the Cherokee and EFP Claims did not constitute "Senior Indebtedness" under the TOPRS Indentures, the Bankruptcy Court's decision should be reversed.

## II.    The EFP Claims are "Senior Indebtedness" Under the 1987 Indenture

As stated in Appellants' Opening Brief, the Bankruptcy Court further erred when it concluded that the EFP Claims were not "Senior Indebtedness" under the 1987 Indenture because (i) Enron did not own all of the voting shares of EFP at the time the subordination obligations arose and (ii) EFP was organized as a limited liability company and thus fell outside the definition of "Subsidiary."

---

[9]  References to "App. Supp. App." refers to Appellants' Supplemental Appendix filed contemporaneously herewith.

As set forth in the Appellants' Opening Brief, contrary to the Bankruptcy Court's decision, Section 1302 of the 1987 Indenture provides that the holders of debt under the 1987 Indenture become subordinated creditors <u>at</u> <u>the</u> <u>time</u> <u>of</u> <u>default</u> under any Senior Indebtedness, and remain subordinated under Section 1302 until such default is cured or waived.  Appellees do not dispute the meaning of Section 1302 of the 1987 Indenture, nor do Appellees attempt to argue that any default was cured or waived.  Rather, in clear contradiction to the terms of the 1987 Indenture, Appellees assert that the provisions of Section 1303 require that subordination rights be measured as of the date of distribution, rather than as of the date of default, and that the provisions of Section 1303 "trump" Section 1302, as the two provisions conflict.  (Appellees' Br. 21-28)  Section 1303 says no such thing – it is silent as to the date on which subordination should be measured, and nothing in its terms requires that Section 1302 must be disregarded once Enron defaults and then attempts to dissolve, liquidate or reorganize.  The subordination provisions contained in Article 13 of the 1987 Indenture must be read as a whole and in conjunction with each other <u>unless</u> those provisions conflict.  There is no such conflict here. Section 1302 is not, as Appellees contend, a general rule that has no application in the event of a bankruptcy.   Rather, as discussed below, Section 1302 is a separate and independent subordination provision unaffected by Enron's bankruptcy filing.

Appellees next contend that the definition of "corporation" under the 1987 Indenture is sufficiently broad enough to include limited liability companies.  (Appellees' Br. 28-31)  However, Appellees ignore the fact that limited liability companies are more akin to partnerships, which are not included in the definition of "Subsidiary."

### A.    The EFP Claims Became Senior Indebtedness Upon Payment Default

Section 1302(b) of the 1987 Indenture provides that

> [u]pon the happening of any default in payment of any Senior Indebtedness, then, unless and until such default shall have been cured or waived or shall have ceased to exist, no payment shall be made by the Company with respect to any [1987 indebtedness].

(AA Tab 7 at 79)  Appellees do not dispute that a payment default occurred with respect to the ECIC Note and ENA Note.  (AA Tabs 10 and 11, respectively)  Appellees also do not dispute that such default was never cured, waived, or ceased to exist.  Nevertheless, and without citing to any provision in the 1987 Indenture that so provides, Appellees assert that Section 1302 ceased to apply once Enron filed for bankruptcy and later distributed its assets through a liquidation, dissolution or reorganization, even though such proposed distribution did not cure the default with respect to the ENA and ECIC Notes.  The Appellees' interpretation of the 1987 Indenture requires this Court to disregard altogether Section 1302(b) of the 1987 Indenture, and is an incorrect interpretation.

In construing a written contract, the primary concern of the court is to ascertain the intentions of the parties.  Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  "To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Id. (emphasis in original).  No single provision taken alone is controlling.  Id.  In harmonizing contractual provisions, "terms stated earlier in an agreement must be favored over subsequent terms."  Id.; see also Smith v. Carter & Burgess, Inc., No. 2-03-313, 2005 Tex. App. LEXIS 1140, at *4-5 (Tex. App. Feb. 10, 2005); Nat'l Union Fire Ins. Co. of Pittsburgh v. Ins. Co. of N. Am., 955 S.W.2d 120, 129 (Tex. App. 1997).

A review of Article 13 of the Indenture as an integrated document shows the following: Section 1301 sets forth the general premise that the 1987 Indenture indebtedness is subordinated.  (AA Tab 7 at 78)  Section 1302 then provides, among other things, that if there is

a payment default with respect to Senior Indebtedness, then 1987 Indenture indebtedness may not be paid until such default is cured or waived.  (AA Tab 7 at 79)  Section 1303 then provides a further cumulative protection that if Enron's assets are distributed (whether by Enron or a third party) in any dissolution, wind-up or reorganization, that holders of Senior Indebtedness are entitled to be paid first out of such distributions.  (AA Tab 7 at 80-81)

Section 1302 and Section 1303 are two separate and independent provisions, neither of which preclude the application of the other.  Section 1303 simply provides that upon distribution of assets in a reorganization proceeding, holders of Senior Indebtedness shall be entitled to payment in full before holders of subordinated debt are paid.  Nothing in Section 1303 addresses <u>when</u> the subordination obligation arises.  More importantly, <u>nothing</u> in Section 1303 suggests that the subordination provisions of Section 1302 would not apply in the event of an Enron bankruptcy proceeding.[10]

Appellees cite to two Texas cases for the proposition that, when a contract contains both general and specific provisions dealing with the same subject, the specific provision will control.  (Appellees' Br. 22)  That interpretive principle, however, applies where, unlike here, a court is faced with resolving a conflict between two contractual provisions.  <u>See</u> <u>Sefzik v. Mady Dev., L.P.</u>, 231 S.W.3d 456, 462 (Tex. App. 2007).  Accordingly, the cases cited by Appellees are inapposite because they involved the interpretation of conflicting provisions

---

[10]    Appellees' argument, if correct, would mean that a subordination effected by Section 1302 would be nullified by a bankruptcy filing.  Indeed, if the holders of subordinated debt were paid, for example, an interest payment after a default on senior debt, the subordinated debtholders would no longer be required to hold such funds in trust for the benefit of holders of Senior Indebtedness if the Company subsequently filed for bankruptcy.  Such a result has no basis in law, fact or logic and would conflict with Section 1302(d).  If a payment default occurs and remains outstanding, holders of junior debt are and remain subordinated as of the payment default date until such default is cured or waived, whether or not the Company ultimately commences insolvency proceedings.

within a contract that could not be reconciled or harmonized with one another.  See San Antonio v. Heath & Stich, Inc., 567 S.W.2d 56, 60 (Tex. Civ. App. 1978) (contractor could only get paid at either the general "street excavation" rate or the specific "concrete removal" rate); Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994) (either insurance benefits were payable under specific provision or not payable under general provision of insurance policy).

Here, however, there is no inherent conflict between Section 1302(b) and Section 1303.  Section 1302(b) effects a payment subordination on the date of a payment default until such default is cured, while Section 1303 requires Enron or a third party to distribute assets in an insolvency proceeding in accordance with the subordination provisions of Article 13.  Neither provision creates an inherent conflict with the other and both are intended to, and do in fact, exist in harmony.  Accordingly, Appellees' argument that Section 1302 should be disregarded is incorrect.

Contrary to what the Bankruptcy Court concluded, the subordinated entities' obligations did not arise on the effective date of the Plan.  Those obligations had already arisen on or prior to the Petition Date when Enron defaulted on the payment of its senior debt.

### B.    The EFP Claims Were Not Held by a "Subsidiary" Because EFP Was Not a "Corporation" for Purposes of the 1987 Indenture

Under the 1987 Indenture, only a "corporation" can qualify as a "Subsidiary." (AA Tab 7 at 9)  Notably absent from the definition of "corporation" are limited liability companies such as EFP.  Appellees argue though that (i) the definition of "corporation" is inclusive and not intended to exclude organizational structures that have attributes similar to partnerships and (ii) that the organizational from of limited liability companies did not exist in Texas when the 1987 Indenture was drafted.  (Appellees' Br. 29)

The simple fact of the matter is that limited liability companies are not expressly included within the definition of "corporation" and therefore not included within the definition of "Subsidiary." As cases cited by Appellees make clear, subordination agreements are interpreted in accordance with their express terms. Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d 1206, 1214 (9th Cir. 1994); Marriott Family Rests., Inc. v. Lunan Family Rests. (In re Lunan Family Rests.), 194 B.R. 429, 445 (Bankr. N.D. Ill. 1996). The Bankruptcy Court, however, went beyond the express terms of the 1987 Indenture and speculated that the definition of "Subsidiary" was intended to include limited liability companies – an organizational form that Appellees admit did not even exist in Texas at the time the 1987 Indenture was drafted.

Appellees do not argue that the definition of "corporation" within the 1987 Indenture includes "partnerships." Therefore the universe of entities qualifying as "Subsidiaries" is narrow as it does not include partnerships in which Enron and its affiliates own 100% of the partnership interests. It is therefore reasonable to assume that limited liability companies – which have attributes of partnerships – would likewise not be included within the definition of Subsidiary.

As a result, given the clear intention of the drafters to narrow the scope of entities considered "Subsidiaries," the Bankruptcy Court erred by going beyond the express terms of the 1987 Indenture and concluding that the definition of "corporation" includes limited liability companies (i.e., entities that have attributes in common with partnerships). Such a judicial rewriting of the terms of the 1987 Indenture should not be affirmed by this Court.

Finally, Appellees argue that the payee on the ECIC Note (upon which the EFP Class 4 Claim is based), is ECIC, which is and was at all times a corporation wholly-owned by Enron and its affiliates. (Appellees' Br. 30) However, what the Appellees ignore is that the face

23

of the ECIC Note itself provides that EFP would be the holder of the ECIC Note.  (AA Tab 10)
It is therefore clear from the face of the ECIC Note that the indebtedness evidenced thereby was
intended to be paid to EFP.  Because EFP was not a "Subsidiary" of Enron for purposes of the
1987 Indenture, the ECIC Note constitutes "Senior Indebtedness" and is entitled to the benefits
of subordination under the 1987 Indenture.

## CONCLUSION

For the foregoing reasons, the Order should be reversed to the extent it provides that (i) the Cherokee and EFP Claims do not constitute "Senior Indebtedness" under the TOPRS Indentures and (ii) the EFP Claims do not constitute "Senior Indebtedness" under the 1987 Indenture.

Dated: November 20, 2007

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By  /s/ P. Bradley O'Neill
    P. Bradley O'Neill, Esq.
    Amy Caton, Esq.
    Daniel M. Eggermann, Esq.
    1177 Avenue of the Americas
    New York, New York 10036
    Tel:  (212) 715-9100

*Counsel to JP Morgan Chase Bank, N.A. and Choctaw/Zephyrus Appellants*

and

KELLEY DRYE & WARREN LLP
Sarah L. Reid, Esq.
Alison L. MacGregor, Esq.
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800

*Counsel to JPMorgan Chase Bank, N.A.*